1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

HON. RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CASCADE YARNS, INC., a Washington
Corporation,

                    Plaintiff,

    vs.

KNITTING FEVER, INC., a New York
Corporation, DESIGNER YARNS, LTD., a
corporation of England, FILATURA
PETTINATA V.V.G. DI STEFANO
VACCARI & C. (S.A.S.), and entity organized
or existing under the laws of Italy, SION
ELALOUF, an individual, DIANE ELALOUF,
an individual, JAY OPPERMAN, an individual,
DEBBIE BLISS, an individual, DAVID
WATT, an individual and DOES 1-50

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:10-cv-00861 RSM

**FIRST AMENDED COMPLAINT
FOR UNFAIR COMPETITION,
FALSE ADVERTISING AND
BUSINESS INJURY BY A
RACKETEER INFLUENCED AND
CORRUPT ORGANIZATION**

**JURY DEMAND**

    COMES NOW Cascade Yarns, Inc. ("Cascade"), by and through counsel, and files this

Complaint and in support thereof alleges as follows:

## INTRODUCTION

    1.    To better "compete" in the importation, marketing, distribution and sale of high-

end designer handknitting yarn, defendants KNITTING FEVER, INC. ("KFI"), DESIGNER

YARNS, LTD. ("Designer Yarns"), FILATURA PETTINATA V.V.G. DI STEFANO

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 1
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

VACCARI & C. (S.A.S.) ("VVG"), SION ELALOUF, DIANE ELALOUF, JAY OPPERMAN, DAVID WATT and DEBBIE BLISS (collectively, "Defendants") engaged in a concerted scheme, beginning nearly a decade ago, to defraud consumers and injure their competitors by making literally false representations regarding the fiber content of certain yarn products, including but not necessarily limited to the *Noro Silk Garden*, *Debbie Bliss Cashmerino*, *Elsebeth Lavold Silky Wool* and *Louisa Harding Cashmere* brands. Defendants' conduct caused harm to its competitors, including Cascade, by driving customers away from purchasing Cascade's products in the false belief the KFI's competing products were of similar content and of equal quality.

2.      Cascade is one of the nation's finest purveyors of yarns and sells its products through specialty retailers and boutiques throughout the United States. Cascade is one of KFI's chief competitors in the wholesale yarn marketplace. Cascade's products include many yarns containing a mix of wool and other natural fibers such as kid mohair, silk and cashmere. KFI similarly sells its products through retailers and boutiques throughout the United States.

3.      On information and belief, in order to make an unreasonable profit and to undercut its competitors' (including Cascade's) business, beginning sometime in the early 2000s and certainly no later than 2006, KFI began selling products that had literally false labels misrepresenting the products' cashmere, kid mohair and/or silk content. The literally false labels allowed KFI to sell their products for a significantly lower price than Cascade's products, thereby damaging Cascade in the form of lost profits and business injury.

## THE PARTIES

4.      **Cascade** is a Washington corporation having a principal place of business at 1224 Andover Park East, Tukwila, Washington 98188.

5.      **KFI**, on information and belief, is a corporation organized and/or existing since 1980 under the laws of the State of New York. On information and belief, KFI has its principal place of business at 315 Bayview Avenue, Amityville, New York, 11701-2801.

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 2
Case No. 2:10-cv-00861 RSM

6.      **Designer Yarns**, on information and belief, is a closely held corporation organized under the laws of England with a principal place of business at Unit 8-10 Newbridge Industrial Estate, Pitt Street, Keighly, West Yorkshire, United Kingdom, BD21 4PQ.  On information and belief, Designer Yarns holds a license for the international marketing of handknitting yarns bearing the Debbie Bliss brand name and has a distributorship agreement with KFI by which KFI is the exclusive U.S. importer and distributor of yarns marketed by Designer Yarns.  On information and belief, defendant Sion Elalouf and/or KFI control Designer Yarns.

7.      **VVG**, on information and belief, is a closely held entity organized or held under the laws of Italy with a principal place of business at 11 Via Gianasso, 13871 BENNA (BI) ITALIA.  On information and belief, VVG brokered (*i.e.*, identified and arranged for manufacture) yarns for the KFI and Debbie Bliss brand names, including but not necessarily limited to the mislabeled yarns described in this Complaint.  On information and belief, Sion Elalouf exerts significant, if not complete, control over VVG.

8.      **Sion Elalouf** is a natural person and, on information and belief, resides at 22 Longwood Road, Port Washington, New York 11050-1260.  On information and belief, since 1980, Mr. Elalouf has been the sole or controlling shareholder and chief executive of KFI and has been and continues to be responsible for setting KFI's trade policies and practices.  On information and belief, except where explicitly stated otherwise, Mr. Elalouf has actively participated in the tortious, fraudulent and wrongful conduct that is the subject of this Complaint, including but not limited to falsely advertising and labeling goods distributed in interstate and/or foreign commerce, committing predicate acts of racketeering (including wire fraud and mail fraud), conspiring with the other defendants to engage in acts to further the racketeering scheme and causing harm to Cascade's business by the acts of that racketeering enterprise.  On information and belief, Mr. Elalouf operates KFI as his alter ego.

9.      **Diane Elalouf** is a natural person and, on information and belief, resides at 22 Longwood Road, Port Washington, New York 11050-1260.  On information and belief, at times

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 3
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

material to this Complaint, Mrs. Elalouf was and continues to be a KFI officer, director or shareholder.  On information and belief, Mrs. Elalouf has access to and responsibility for reviewing, approving and paying invoices from KFI's foreign suppliers.

10.     **Jay Opperman** is a natural person and, on information and belief, resides at 78 Clinton Avenue, Montclair, New Jersey 07042-2116.  On information and belief, as recently as 2002, Mr. Opperman has held himself out as an independent sales representative of KFI, and more recently as KFI sales manager responsible for managing a national sales force tasked with "pushing" sales of handknitting yarn products to retailers.  On information and belief, since 2001, Mr. Opperman is a director of, and one of the registered owners of, the shares of Designer Yarns, Ltd.  On information and belief, at all time relevant to this Complaint, Mr. Opperman actively participated in the wrongful conduct that is the subject of this Complaint, including but not limited to making false representations of the fiber content of KFI's yarn products and thereby causing injury to Cascade.

11.     **Debbie Bliss** is a natural person and, on information and belief, is a subject of the United Kingdom residing at 9 Folkestone Road, Walthamstow, London, United Kingdom, E17 9SD.  On information and belief, in late 1999, and no later than June 2000, Ms. Bliss desired to create her own handknitting yarn brand name that would sell a range of value-priced yarns for sale in her retail yarn business.  On information and belief Ms. Bliss has licensed her name to Designer Yarns for the development and marketing of a series of yarns branded under her name.  On information and belief, under the terms of that license, Ms. Bliss has reserved the responsibility for assuring the quality for handknitting yarns branded with her name.  Since 2001, Ms. Bliss has regularly traveled to the U.S. for the purpose of promoting yarn products with her brand name.  On information and belief, Ms. Bliss has participated and facilitated the wrongful conduct described in this Complaint.

12.     **David Watt** is a natural person and, on information and belief is a subject of the United Kingdom.  On information and belief, Mr. Watt's business address is Designer Yarns,

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 4
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

1  Ltd., Unit 8-10 Newbridge Industrial Estate, Pitt Street, Keighly, West Yorkshire, United

2  Kingdom, BD21 4PQ.  Mr. Watt is actively involved in the management of Designer Yarns, and,

3  on information and belief, at all time material to this Complaint, was an active participant in the

4  scheme alleged herein.

5        13.    Cascade does not know the true names and capacities of Does 1 through 50 and

6  will seek to amend this complaint to set forth their true names and capacities when ascertained.

7  Cascade is informed and believes and on that basis, alleges that each of these fictitiously named

8  defendants is responsible in some manner for the acts and damages alleged below.

9  **JURISDICTION AND VENUE**

10        14.    This Court has subject matter jurisdiction over counts one and four pursuant to 28

11  U.S.C. §§ 1331 and 1338, based upon the federal causes of action asserted.  This Court has

12  supplemental jurisdiction over the remaining counts pursuant to 28 U.S.C. § 1367.

13        15.    Personal jurisdiction and venue are proper in this Court pursuant to 28 U.S.C.

14  § 1391 and 18 U.S.C. § 1965 because Defendants transact business in this district, are found in

15  this district, and/or directed conduct at this forum.  In addition, the Alien Venue Act, 28 U.S.C.

16  § 1391(d) provides that "an alien may be sued in any district."  Designer Yarns is an alien

17  corporation organized under the laws of England, VVG is an alien entity organized and/or

18  existing under the laws of Italy and Ms. Bliss is an alien natural person.

19  **FACTUAL BACKGROUND**

20  I.    **KFI DISCOVERS CASHMERINO -- A YARN THAT HAS THE SAME LOOK AND FEEL AS A
21  CASHMERE-CONTAINING YARN BUT CONTAINS NO CASHMERE**

22        16.    KFI is a participant in the U.S. wholesale market for handknitting yarns.  In 2005,

23  KFI claimed to be the leading wholesale supplier to specialty retailers.

24        17.    During the 1990s, a KFI competitor experienced success with a premium

25  "designer" line of premium, natural fiber handknitting yarn that, while branded with a specific

26  designer's name, was controlled by the wholesaler-importer.

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 5
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

1    18.    On information and belief, upon seeing the success of its competitor, KFI began

2    investigating creating its own KFI-controlled designer labeled handknitting yarn.

3    19.    On information and belief, in the late 1990s, Ms. Bliss was also attempting to

4    develop her own line of value-priced yarns that would be sold under her brand name.

5    20.    On information and belief, sometime between 1999 and 2001, and certainly by

6    June 2001, Ms. Bliss became aware of KFI, Mr. Elalouf and an Italy-based yarn, supplier and/or

7    manufacturer, VVG .

8    21.    On information and belief, sometime between late 1999 and 2001, and certainly by

9    June 2001, Mr. Elalouf and/or KFI entered into an agreement with Ms. Bliss whereby Ms. Bliss

10    agreed to hold herself out as the creative source of the Debbie Bliss brand of yarns, Ms. Bliss

11    would promote the sale of products bearing the Debbie Bliss brand name and Ms. Bliss would

12    design handknitting patterns that would be sold in connection with the Debbie Bliss branded yarn.

13    22.    On information and belief, to implement the plan to develop a designer yarn that

14    Mr. Elalouf and KFI could control, Mr. Elalouf and Mr. Opperman, possibly with the help of

15    others whose identities not yet known to Cascade, created a company, Designer Yarns, to hold the

16    brand names and distribution rights to the to-be-created designer yarn product.  On information

17    and belief, on or around April 12, 2001, a certificate of incorporation was issued to Designer

18    Yarns in England.

19    23.    On information and belief, Designer Yarns entered into an agreement whereby

20    KFI is the sole U.S. importer-wholesaler of its products.

21    24.    On information and belief, Designer Yarns entered into an agreement whereby

22    Debbie Bliss has licensed her name to Designer Yarns to be used as a brand name on yarn

23    products marketed as Debbie Bliss yarns.  Debbie Bliss agreed to further promote these products

24    by regularly attending trade shows in the United States and by making numerous sales and

25    marketing appearances in the United States at the direction of Mr. Elalouf and KFI.  Upon

26    information and belief, Plaintiff understands that Ms. Bliss will travel to Columbus, Ohio in June

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 6
Case No. 2:10-cv-00861 RSM

1    2010, Philadelphia, Pennsylvania in June 2010 and Seattle, Washington in August 2010 to

2    promote KFI's products and/or her branded products.

3        25.    On information and belief, to avoid the U.S. Customs scrutiny of transactions

4    between related parties, Mr. Elalouf is not disclosed as a shareholder, director or participant in

5    Designer Yarns.

6        26.    On information and belief, despite the lack of an official status as a shareholder,

7    director or participant in Designer Yarns, Mr. Elalouf maintains access to Designer Yarns though

8    Mr. Opperman's equity and directorship roles.  On information and belief, Mr. Elalouf maintains

9    intimate involvement and ultimate control over Designer Yarns' products, including the Debbie

10   Bliss brand.

11       27.    On information and belief, Mr. Elalouf determines, among other things, (1) the

12   specific products marketed internationally as manufactured for Designer Yarns; (2) the fiber

13   content of Designer Yarns' products; (3) the pricing of Designer Yarns' products; (4) the

14   promotion and advertising of Designer Yarns' products; and (5) personally represents Designer

15   Yarns in negotiations with its Canadian distributor and at tradeshows in Germany, Italy and other

16   European countries.

17       28.    On information and belief, between July 2000 and June 2001, Mr. Elalouf

18   discovered two versions of a yarn called Cashmerino -- one of which contained cashmere and the

19   one which did not contain any cashmere.

20       29.    The discovery of the two versions of Cashmerino was significant because, on

21   information and belief, Mr. Elalouf, who was extensively experienced in the yarn trade, was

22   unable to distinguish between the cashmere and non-cashmere versions of the yarn.  Indeed,

23   without expert fiber analysis -- something to which the majority of KFI's and Cascade's

24   customers do not have access -- it is virtually impossible to confirm the presence of cashmere is a

25   spun yarn.

26

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 7
Case No. 2:10-cv-00861 RSM

1    30.    On information and belief and through processes currently unknown to Cascade,

2    no later than October 2001 and continuing through the present, among the many legitimate

3    employees and/or contractors at KFI, only Mr. and Mrs. Elalouf had access to documents

4    concerning the yarns imported and wholesaled by KFI.  On information and belief, Mrs. Elalouf

5    had sole responsibility to scrutinize, approve and pay manufacturers' and suppliers' invoice and,

6    therefore, had sole access to the information regarding the attendant fiber content of the yarns

7    made by KFI's suppliers and manufacturers.  On information and belief, this allowed Mrs.

8    Elalouf to prevent regular KFI employees from learning the invoiced purchase values of goods

9    imported and eventually resold by KFI, from learning the true source of the products imported

10    and eventually resold by KFI, and from learning the actual fiber content of goods imported and

11    eventually resold by KFI.

12    **II.    KFI DECIDES TO CASH IN ON NON-CASHMERE CASHMERINO**

13    31.    On information and belief, following his discovery of the two versions of the

14    Cashmerino Yarn, on a date presently unknown to Cascade but believed to be before June 9,

15    2001, Mr. Elalouf and Designer Yarns entered into an agreement to substitute the 0% cashmere

16    version of the product for the Cashmerino spun of 12% cashmere.

17    32.    On information and belief, following the agreement described above, Alberto

18    Oliaro, VVG's principal officer, was directed by Mr. Elalouf to and actually did manufacture the

19    0% cashmere yarn but nevertheless labeled the finished product as containing 12% cashmere.

20    33.    On information and belief, on a date presently unknown to Cascade but believed to

21    be before June 9, 2001, the 0% cashmere Cashmerino (labeled as containing 12% cashmere) was

22    included in the new line of Debbie Bliss yarns to be launched by Designer Yarns.

23    34.    The 0% cashmere version of Cashmerino was subsequently imported into the U.S.

24    by KFI and was sold, using means of interstate and/or foreign commerce, to retailers throughout

25    the U.S. under the Debbie Bliss brand name from Designer Yarns.

26

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 8
Case No. 2:10-cv-00861 RSM

1    35.    On information and belief, the non-cashmere Cashmerino was formally introduced

2 at a June 9-11, 2001 U.S. trade show for the yarn industry.

3    36.    On information and belief, even prior to its formal introduction Mr. Opperman, in

4 his role as an independent sales representative for KFI, represented that a new KFI product, called

5 Cashmereno DK, contained 55% merino wool, 33% microfiber and 12% cashmere.

6    37.    On information and belief, based on Mr. Opperman's representations as to the

7 fiber content of the Cashmereno DK product, certain of Cascade's customers bought the

8 Cashmereno DK instead of comparable Cascade products.

9    38.    On information and belief, between August 2001 and continuing at through the

10 present, KFI regularly used the United States Mail and interstate wires to issue to as many as

11 2,000 specialty yarn retailers throughout the U.S. price and product lists identifying the KFI and

12 Debbie Bliss Cashmerino products as spun of a fiber content consisting of 55% merino wool,

13 33% microfiber and 12% cashmere.

14    39.    On information and belief, based on the representations contained in KFI's price

15 and products list, certain of Cascade's customers bought the KFI and Debbie Bliss Cashmerino

16 products listed as being spun of a fiber content consisting of 55% merino wool, 33% microfiber

17 and 12% cashmere instead of comparable Cascade products.

18 **III.    TRUE CONTENT OF KFI'S FALSELY LABELED CASHMERINO COMES TO LIGHT**

19    40.    In early 2006, Cascade became aware of the extent of KFI's enormous success

20 with its Cashmerino line of yarn products.

21    41.    Cascade then contacted the Cashmere and Camel Hair Manufacturers Institute

22 ("CCMI") and submitted a sample of KFI's Cashmerino yarn purportedly containing 12%

23 cashmere for fiber testing.  CCMI informed Cascade that it had submitted the sample to K.D.

24 Langley Fiber Services ("K.D. Langley") for testing.  On May 26, 2006, Langley issued a report

25 and concluded that "[n]o cashmere fibers were observed."

26

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 9
Case No. 2:10-cv-00861 RSM

42.     As noted above, because it is impossible to determine the true fiber content of spun yarn without expert fiber test results, Cascade was ignorant of the true fiber content of the mislabeled KFI products until the release of the May 26, 2006 test results.

43.     At The National Needlework Association trade show, which took place on June 10 through June 12, 2006 in Indianapolis, Indiana, test results showing that KFI's Cashmerino yarn products did not contain any cashmere became known.

44.     On June 22, 2006, Mr. Elalouf contacted Cascade by telephone and left a message for Robert Dunbabin, Sr. to call.  Robert Dunbabin, Jr., of Cascade, returned this call by cellular telephone.  During the course of the conversation Mr. Elalouf represented to Mr. Dunbabin that he was not surprised that the test results did not show cashmere because, according to Mr. Elalouf, the type of cashmere that KFI uses will not show up in fiber tests.  In an effort to further his scheme, Mr. Elalouf threatened Mr. Dunbabin, Jr. with litigation if Cascade did not seek to dispel "rumors" about the lack of cashmere content in the Cashmerino yarns.

45.     On June 27, 2006, Roy A. Klein, an attorney working on behalf of KFI, Designer Yarns and Ms. Bliss sent a letter by U.S. mail and facsimile to Cascade.  In that letter, Mr. Klein accused Cascade of misrepresenting the fiber content of Debbie Bliss Cashmerino.  Mr. Klein's letter also represented that KFI had independent lab reports showing that KFI's yarn "indeed has the cashmere content indicated on its label."  Mr. Klein's letter further demanded a public apology, to be approved by KFI in advance, and that should Cascade refuse to issue such an apology, KFI, Ms. Bliss and Designer Yarns would "not hesitate to pursue all appropriate rights and remedies to recover compensatory and punitive damages for [Cascade's] tortious and illegal conduct."  On information and belief, Mr. Elalouf directed Mr. Klein to send the June 27, 2006 letter and to make the representations contained therein.

46.     On June 28, 2006, counsel for Cascade responded to Mr. Klein's letter and explained that Cascade had not made any misrepresentation.  Cascade's counsel's June 28 letter further requested information regarding KFI's test results.

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 10
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

1    47.    On July 11, 2006, Mr. Klein responded to Cascade's counsel via facsimile and,

2  while asserting that fiber tests for cashmere content in spun yarn are inherently unreliable,

3  attached copies of test results purporting to show that Debbie Bliss Cashmerino yarns contained

4  cashmere.  On information and belief, Mr. Elalouf directed Mr. Klein to send the July 11, 2006

5  letter and to make the representations contained therein.

6    48.    On July 17, 2006, Cascade's counsel responded to Mr. Klein.  Cascade's counsel

7  challenged the assertion that it is difficult to test for cashmere content and explained that K.D.

8  Langley used a reliable testing protocol approved by the American Association of Textile

9  Chemists and Colorists when he examined the fiber content of Debbie Bliss Cashmerino yarn.

10    49.    On July 20, 2006, KFI distributed by electronic mail and by U.S. mail, an open

11  letter to its customers in which it represented that Debbie Bliss Cashmerino yarn contains

12  cashmere.  On information and belief, the July 20, 2006 letter was authored by Mr. Elalouf and

13  Mr. Klein.

14    50.    On July 22, 2006, David Watt wrote to Sion Elalouf via email and suggested that

15  Mr. Elalouf take a different approach to quieting the rumors about Debbie Bliss Cashmerino.  Mr.

16  Watt suggested that attacking Mr. Langley's expertise of testing for cashmere would be

17  counterproductive, but that KFI should criticize the fact that Cascade had based its disclosure

18  solely upon one test.  Mr. Watt expressed that this strategy would allow KFI to take the "moral

19  high ground."

20    51.    On July 25, 2006, Sion Elalouf wrote to VVG in an effort to obtain a "test report"

21  that would placate A.C. Moore over concerns that the Luxury Cashmere Aran products that KFI

22  supplied to them actually contained cashmere.  Mr. Watt was copied in this letter and actively

23  involved in this and the cover-up regarding the fiber content of the other Cashmerino products.

24    52.    Sometime in the Summer of 2006, an industry publication known as Yarn

25  Marketing News contacted Cascade and offered to publish a retraction and public apology on

26  Cascade's behalf, for any claims about the cashmere content of KFI's products.  Yarn Marketing

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 11
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

1  News indicated that this was being arranged by KFI and that KFI would bear the costs associated

2  with this purported retraction and apology.  Cascade declined this offer.

3  53.    On or around September 26, 2006, amidst the growing controversy in the hand

4  knitting yarn community, Debbie Bliss sent a letter, on information and belief by U.S. mail, to a

5  number of yarn stores throughout the United States.  In the September 26 letter, Ms. Bliss

6  represents that the Debbie Bliss branded yarns contain cashmere.  On information and belief, Mr.

7  Elalouf directed Ms. Bliss to send the September 26 letter and to make the representations therein.

8  54.    KFI responded to the growing controversy regarding its yarns, and the increase of

9  retailer testing of its products by liquidating its intentionally mislabeled yarns, without correcting

10 the labels or informing the purchasers of the problem.  For example, on information and belief in

11 or around August 2006, one of KFI's customers, A.C. Moore, raised concerns regarding the

12 cashmere content of certain KFI-supplied products, whose labels stated that the product contained

13 6% cashmere.  KFI, despite its repeated criticism of results from CCMI-approved fiber testing

14 laboratories, advised A.C. Moore to engage a testing facility recommended by CCMI.  On

15 information and belief, A.C. Moore then had the suspect product tested and the test results

16 revealed that the product had 0% cashmere.  On information and belief, when Mr. Elalouf was

17 informed of these results, and with knowledge of those results, stated that the product was fine

18 and that A.C. Moore should sell through its current inventory and the inventory that KFI was

19 holding for A.C. Moore.

20 55.    On information and belief, Mr. Elalouf, with the advice of Mr. Klein, contacted

21 VVG and reformulated a number of the "cashmerino" type products.  On information and belief,

22 this led to a letter from VVG to Mr. Watt and Mr. Elalouf outlining VVG's view of the situation.

23 On information and belief, in this letter, VVG stated that "if everybody start[s] testing everything

24 on the market the consequences would be big war and everybody will only get problems."  On

25 information and belief, VVG further sated that "there is no need to use the best cashmere qualities

26 because nobody would feel the difference."  On information and belief, VVG nevertheless noted

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 12
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

1  that "if there are these kind of risks, we need to seriously think how to proceed in the future."  On

2  information and belief, VVG advised that there were three possibilities, "a) we continue so as

3  done so far, if were think the risks are not too big.  b) we stop this kind of blend.  c) we change

4  the blend and use the best possible cashmere quality, which will be easier to find in case of lab

5  check.  Of course the price would change."

6      56.    On information and belief, the communications between VVG, Mr. Watt and Mr.

7  Elalouf led to a reformulation of certain of Defendants' products.  On information and belief,

8  prior to this, Cashmere was wholly absent and was replaced by surplus acrylic: dyelots of this

9  type contained no letter.  After this dyelots with a "B" or a "C" were introduced.  On information

10  and belief, these dyelots contained some cashmere, but materially less than the amount stated on

11  the label.  On information and belief, these dyelots "B" and "C" had surplus wool, unlike surplus

12  acrylic in the pre-June 2006 "no letter in dyelot" versions of the yarn.  On information and belief,

13  the purpose for this change was to make detection more difficult by including some cashmere and

14  keeping the easily detectable acrylic fiber content consistent with the labeling.  On information

15  and belief, Mr. Klein advised Mr. Elalouf that this change would make charges of intentional

16  mislabeling more difficult to establish.  Upon information and belief, and despite knowledge of

17  the mislabeling, Defendants continued to market, sell and ship mislabeled product through at least

18  December 2008.  Upon information and belief, those customers who had previously complained

19  about the lack of cashmere received product that contained some amount of cashmere, identified

20  as dyelots "B" and "C."  Upon information and belief, for a short period of time KFI placed the

21  "no letter in dyelot" product on closeout for liquidation but stopped that course of action because

22  of inquiries it received from the customers as to why the product was on closeout and, thereafter,

23  continued to sell and ship the "no letter in dyelot" product as described herein.

24

25

26

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

**IV.    WHEN KFI'S CUSTOMERS COMPLAIN ABOUT THE LACK OF CASHMERE, KFI RESPONDS BY BRINGING LAWSUITS**

57.    On information and belief, in 2006 certain of KFI's customers began complaining about the fiber content of certain of its yarn products.  On information and belief, when KFI received complaints from its customers, it actively discouraged the customers from having independent testing of the yarns' fiber content conducted.  On information and belief, KFI offered to sign "letters of guarantee" that were drafted by Mr. Klein and would not have effectively insulated KFI's customers from liability from selling mislabeled products.  On information and belief these complaints led to disputes between KFI, on the one hand, and certain of its customers, on the other.

58.    On information and belief, in furtherance of the unlawful conduct that is the subject of this complaint, KFI instituted lawsuits against certain of its customer, including but not limited to the following yarn stores: Knit and Purl in Rochester New York; Red Needle in Savannah, Georgia; NY Knits in Victor, New York; Charlotte's Fiber, Brevard, North Carolina; and A.C. Moore in New Jersey.  On information and belief, Mr. Elalouf directed KFI to undertake these lawsuits to collect on debts incurred for purchases of yarn with labels that were literally false as to the fiber content of the yarn.

**V.    NUMEROUS INDEPENDENT TESTS CONFIRM THAT KFI HAS ATTACHED LITERALLY FALSE LABELS TO CERTAIN YARN PRODUCTS SINCE AT LEAST 2006 AND CONTINUING TO THE PRESENT**

59.    In addition to the May 26, 2006 test described above, numerous other independent test confirm that KFI has used literally false labels on certain of its yarn products.

60.    On July 18, 2006, K.D. Langley issued a fiber content test report to one of KFI's customers for Debbie Bliss baby cashmerino yarn.  The label for this product represented that it contained 12% cashmere.  K.D. Langley's test results state that "[n]o cashmere fibers were observed" in the yarn sample.  A true and correct copy of the results of the July 18 report is attached as **Exhibit A**.

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 14
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

1    61.    On July 18, 2006, K.D. Langley issued a fiber content test report to one of KFI's

2   customers for KFI Cashereno yarn.  The label for this product represented that it contained 12%

3   cashmere.  K.D. Langley's test results state that "[n]o cashmere fibers were observed" in the yarn

4   sample.  *See* **Ex. A**.

5    62.    On July 18, 2006, K.D. Langley issued a fiber content test report to one of KFI's

6   customers for Debbie Bliss cashmerino aran yarn.  The label for this product represented that it

7   contained 12% cashmere.  K.D. Langley's test results state that "[n]o cashmere fibers were

8   observed" in the yarn sample.  *See* **Ex. A**.

9    63.    On July 25, 2006, K.D. Langley issued a fiber content test report to one of KFI's

10   customers for Debbie Bliss cashmerino aran yarn.  The label for this product represented that it

11   contained 12% cashmere.  K.D. Langley's test results state that "[n]o cashmere fibers were

12   observed in the sample."  A true and correct copy of the results of the July 25 report is attached as

13   **Exhibit B**.

14    64.    On August 31, 2006, Specialized Technology Resources, Inc. ("STR") issued a

15   test report to one of KFI's customers for Debbie Bliss Baby Cashmereno.  The label for this

16   product represented that it contained 12% cashmere.  STR's test results state that "[t]here was no

17   cashmere" in the yarn sample.  A true and correct copy of the results of the August 31 report is

18   attached as **Exhibit C**.

19    65.    On August 31, 2006, STR issued a test report to one of KFI's customers for KFI

20   Cashmereno.  The label for this product represented that it contained 12% cashmere.  STR's test

21   results state that "[t]here was no cashmere" in the yarn sample.  *See* **Ex. C**.

22    66.    On August 31, 2006, STR issued a test report to one of KFI's customers for

23   Debbie Bliss Cashmereno Aran.  The label for this product represented that it contained 12%

24   cashmere.  STR's test results state that "[t]here was no cashmere" in the yarn sample.  *See* **Ex. C**.

25    67.    Despite these results -- and the results of other fiber tests conducted at the request

26   of the CCMI -- and in reliance upon the Defendants' representations made in Fall 2006 regarding

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 15
Case No. 2:10-cv-00861 RSM

**SQUIRE, SANDERS & DEMPSEY L.L.P.**
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

the accuracy of KFI's labels, Cascade took no further immediate actions in 2006.  Nevertheless, Cascade's lingering concerns remained and in 2010, it engaged Langley to conduct fiber tests of certain of KFI's yarns.  A true and correct copy of a May 15, 2010 report summarizing the results of K.D. Langley's tests of KFI yarns from April 10, 2010 through May 15, 2010, including copies of the labels of the yarns tested, is attached as **Exhibit D**.  As detailed below, certain of the yarns tested contained materially and literally false representations regarding the yarn products' true fiber content.

68.  On April 10, 2010, K.D. Langley issued a fiber content test report to Cascade for Debbie Bliss Cashmerino Aran yarn.  The label for this product represented that it contained 12% cashmere.  K.D. Langley's test results state that the yarn sample contained just 4.7% cashmere. *See* **Ex. D** at 1.

69.  On April 10, 2010, K.D. Langley issued a fiber content test report to Cascade for Debbie Bliss Cashmerino Astrakan yarn.  The label for this product represented that it contained 10% cashmere.  K.D. Langley's test results state that the yarn sample contained 0% cashmere. *See* **Ex. D** at 1.

70.  On April 10, 2010, K.D. Langley issued a fiber content test report to Cascade for Louisa Harding Kashmir Aran yarn.  The label for this product represented that it contained 10% cashmere.  K.D. Langley's test results state that the yarn sample contained 0% cashmere. *See* **Ex. D** at 1.

71.  On April 10, 2010, K.D. Langley issued a fiber content test report to Cascade for Noro Cash Iroha yarn.  The label for this product represented that it contained 20% cashmere.  K.D. Langley's test results state that the yarn sample contained only 13.1% cashmere. *See* **Ex. D** at 1.

72.  On April 10, 2010, K.D. Langley issued a fiber content test report to Cascade for Noro Silk Garden yarn.  The label for this product represented that it contained 45% Kid Mohair.

**SQUIRE, SANDERS & DEMPSEY L.L.P.**
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

1   K.D. Langley's test results state that the yarn sample contained only 30.0% Kid Mohair. *See* **Ex.**

2   **D** at 1.

3       73.    On April 20, 2010, K.D. Langley issued a fiber content test report to Cascade for

4   Debbie Bliss Cashmerino Aran yarn.  The label for this product represented that it contained 12%

5   cashmere.  K.D. Langley's test results state that the yarn sample contained just 4.4% cashmere.

6   *See* **Ex. D** at 2 and 22.

7       74.    On April 20, 2010, K.D. Langley issued a fiber content test report to Cascade for

8   Debbie Bliss Cashmerino Aran yarn.  The label for this product represented that it contained 12%

9   cashmere.  K.D. Langley's test results state that the yarn sample contained just 5.9% cashmere.

10   *See* **Ex. D** at 2 and 22.

11       75.    On April 27, 2010, K.D. Langley issued a fiber content test report to Cascade for

12   Debbie Bliss Cashmerino Superchunky yarn.  The label for this product represented that it

13   contained 12% cashmere.  K.D. Langley's test results state that the yarn sample contained just

14   7.6% cashmere.  *See* **Ex. D** at 2.

15       76.    On April 27, 2010, K.D. Langley issued a fiber content test report to Cascade for

16   Noro Silk Garden  yarn.  The label for this product represented that it contained 45% Kid Mohair.

17   K.D. Langley's test results state that the yarn sample contained just 28.3% Kid Mohair.  *See* **Ex.**

18   **D** at 2.

19       77.    On April 27, 2010, K.D. Langley issued a fiber content test report to Cascade for

20   Queensland Collection Big Wave yarn.  The label for this product represented that it contained

21   10% cashmere.  K.D. Langley's test results state that the yarn sample contained just 4.9%

22   cashmere.  *See* **Ex. D** at 2-3.

23       78.    On April 27, 2010, K.D. Langley issued a fiber content test report to Cascade for

24   Queensland Collection Katmandu Aran Tweed yarn.  The label for this product represented that it

25   contained 5% cashmere.  K.D. Langley's test results state that the yarn sample contained only a

26   trace (~.3%) amount of cashmere.  *See* **Ex. D** at 2-3.

**SQUIRE, SANDERS & DEMPSEY L.L.P.**
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

79.     On April 27, 2010, K.D. Langley issued a fiber content test report to Cascade for Queensland Collection Katmandu DK Tweed yarn.  The label for this product represented that it contained 5% cashmere.  K.D. Langley's test results state that the yarn sample contained only a trace (~.6%) amount of cashmere.  *See* **Ex. D** at 2-3.

80.     On April 29, 2010, K.D. Langley issued a fiber content test report to Cascade for Elizabeth Lavold Silky Cashmere yarn.  The label for this product represented that it contained 45% cashmere.  K.D. Langley's test results state that the yarn sample contained just 22.5% cashmere.  *See* **Ex. D** at 3.

81.     On April 30, 2010, K.D. Langley issued a fiber content test report to Cascade for Louisa Harding Kashmir Baby yarn.  The label for this product represented that it contained 10% cashmere.  K.D. Langley's test results state that the yarn sample did not contain cashmere.  *See* **Ex. D** at 3.

82.     On May 2, 2010, K.D. Langley issued a fiber content test report to Cascade for Debbie Bliss Cashmerino Chunky yarn.  The label for this product represented that it contained 12% cashmere.  K.D. Langley's test results state that the yarn sample did not contain cashmere.  *See* **Ex. D** at 4.

83.     On May 2, 2010, K.D. Langley issued a fiber content test report to Cascade for Debbie Bliss Baby Cashmerino yarn.  The label for this product represented that it contained 12% cashmere.  K.D. Langley's test results state that the yarn sample did not contain cashmere.  *See* **Ex. D** at 4.

84.     On May 2, 2010, K.D. Langley issued a fiber content test report to Cascade for Debbie Bliss Cashmerino Astrakhan yarn.  The label for this product represented that it contained 10% cashmere.  K.D. Langley's test results state that the yarn sample did not contain cashmere.  *See* **Ex. D** at 4.

85.     On May 4, 2010, K.D. Langley issued a fiber content test report to Cascade for Elsebeth Lavold Calm Wool yarn.  The label for this product represented that it contained 30%

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 18
Case No. 2:10-cv-00861 RSM

1  Camel hair.  K.D. Langley's test results state that the yarn sample contained just 15.7% Camel

2  hair.  *See* **Ex. D** at 4.

3          86.     On May 8, 2010, K.D. Langley issued a fiber content test report to Cascade for

4  Louisa Harding Kashmir Aran yarn.  The label for this product represented that it contained 10%

5  cashmere.  K.D. Langley's test results state that the yarn sample contained just 3.0% cashmere.

6  *See* **Ex. D** at 5.

7          87.     On May 8, 2010, K.D. Langley issued a fiber content test report to Cascade for

8  Louisa Harding Kashmir Aran yarn.  The label for this product represented that it contained 10%

9  cashmere.  K.D. Langley's test results state that the yarn sample contained just 2.4% cashmere.

10  *See* **Ex. D** at 5.

11          88.     On May 8, 2010, K.D. Langley issued a fiber content test report to Cascade for

12  Louisa Harding Kashmir DK yarn.  The label for this product represented that it contained 10%

13  cashmere.  K.D. Langley's test results state that the yarn sample contained just 1.0% cashmere.

14  *See* **Ex. D** at 5.

15          89.     On May 15, 2010, K.D. Langley issued a fiber content test report to Cascade for

16  Debbie Bliss Cashmerino Aran yarn.  The label for this product represented that it contained 12%

17  cashmere.  K.D. Langley's test results state that the yarn sample contained just 7.0% cashmere.

18  *See* **Ex. D** at 5.

19          90.     On May 15, 2010, K.D. Langley issued a fiber content test report to Cascade for

20  Debbie Bliss Cashmerino Aran yarn.  The label for this product represented that it contained 12%

21  cashmere.  K.D. Langley's test results state that the yarn sample contained only a trace (~.4%)

22  amount of cashmere.  *See* **Ex. D** at 6.

23          91.     On information and belief, all of the yarns tested by K.D. Langley were sold

24  throughout the U.S., since at least 2006 and continuing through the present, by one or more of

25  Defendants using means of interstate and/or foreign commerce.

26

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 19
Case No. 2:10-cv-00861 RSM

**SQUIRE, SANDERS & DEMPSEY L.L.P.**
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

92.    On information and belief, the representations contained on the labels of the yarn products tested by K.D. Langley were made by one or more of Defendants through the use of U.S. mail, since at least 2006 and continuing through the present, including, for example by mailing price lists and/or catalogues to its customers.

93.    On information and belief the representations contained on the labels of the yarn products tested by K.D. Langley were made by Defendants through the use of interstate wires, since at least 2006 and continuing through the present, including, for example by using electronic mail, the worldwide web, telephones, cellular telephones and/or facsimile machines to distribute price lists and/or catalogues to its customers.

## VI.    KFI PERSISTS IN UNDERTAKING OTHER MISLABELING OF WOOL PRODUCTS SCHEMES AND HAS CONTINUED TO UNDERTAKE NEW ONES.

94.    In the spring of 2006, Robert Dunbabin, Jr. telephoned Mr. Elalouf via cellular telephone, and alerted him to the discovery that the product called Elsabeth Lavold Silky Wool contained 20% or more of the synthetic fiber, Nylon, yet was labeled 65% wool and 35% silk. Mr. Elalouf indicated that he was not surprised and volunteered that this product was sourced from VVG, as if this fact alone would explain the discrepency.  When Mr. Dunbabin, Jr. informed Mr. Elalouf that he expected him to correct this mislabeling, Mr. Elalouf responded by asking if Cascade wanted KFI to test all of its yarns.  Mr. Dunbabin, Jr. responded that appropriate testing should be undertaken by KFI as soon as possible to ensure that its products were properly labeled.

95.    Less than two weeks later, Mr. Elalouf telephoned Mr. Dunbabin, Jr. and stated that the labeling issue would be publically corrected.  After KFI informed stores that what was sold to them as a natural fiber product was actually a synthetic fiber blend, KFI's sales of this product decreased precipitously.  Upon information and belief, KFI enjoyed a significant competitive advantage on this product before the mislabeling was corrected.

96.    In the Spring of 2010, KFI launched a new cashmere product for distribution entitled Louisa Harding Aimee.  Aimee is marketed and labeled as containing 90% cotton and

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 20
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

1    10% cashmere.  Similar to Elsebeth Lavold Silky Wool, Emiee contains significant amounts of a

2    fiber not listed on the label.  Notably, Aimee contains nearly 4% wool and has less than 7%

3    cashmere.  This discrepancy provides defendants with a significant savings over manufacture of

4    the yarn contents as labeled.

5                                    **COUNT ONE**

6                        **(Unfair Competition Under 15 U.S.C. § 1125(a))**

7           97.    Cascade hereby incorporates by reference all previous allegations of this

8    Complaint as if specifically set forth herein.

9           98.    As set forth above, Defendants have made and continue to make deceptive,

10   misleading and fraudulent statements the fiber content of yarn products sold throughout the U.S.

11   Such representations have been made through oral and written representations.

12          99.    Defendants are in competition with Cascade.

13          100.   Defendants past and ongoing harm of Cascade is continuing to the present and

14   foreseeable future, and is a serious and unmitigated hardship.

15          101.   As a direct and proximate cause of Defendants' conduct, Cascade has been

16   damaged in an amount to be proven at the time of trial.  Cascade will continue to suffer injury to

17   its goodwill, its rights and its business, unless and until Defendants are restrained from continuing

18   their wrongful acts.

19                                   **COUNT TWO**

20                        **(False Advertising Under 15 U.S.C. § 1125(a))**

21          102.   Cascade hereby incorporates by reference all previous allegations of this

22   Complaint as if specifically set forth herein.

23          103.   As set forth above, Defendants have made and continue to make deceptive,

24   misleading and fraudulent statements the fiber content of yarn products sold throughout the U.S.

25   Additionally, Defendants have made and continue to make deceptive, misleading and fraudulent

26   statements in marketing materials, on their website(s) and in promotional materials, and in the

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 21
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

1   visual look and feel of product packaging and labeling, regarding the true content of certain of its

2   yarn products, including but not necessarily limited to the mislabeled products identified in this

3   Complaint.  These statements are meant to influence customer into purchasing Defendants'

4   products to the exclusion of Cascade's products.

5          104.    Defendants' past and ongoing harm of Cascade is continuing to the present and

6   foreseeable future, and is a serious and unmitigated hardship.

7          105.    As a direct and proximate cause of Defendants' conduct, Cascade has been

8   damaged in an amount to be proven at the time of trial.  Cascade will continue to suffer injury to

9   its goodwill, its rights and its business, unless and until Defendants are restrained from continuing

10  their wrongful acts.

11                              **COUNT THREE**

12  **(Unfair Competition/Violation of the Washington Consumer Protection Act, RCW 19.86)**

13         106.    Cascade hereby incorporates by reference all previous allegations of this

14  Complaint as if specifically set forth herein.

15         107.    As set forth above, Defendants have made and continue to make deceptive,

16  misleading and fraudulent statements on labels of products sold throughout the U.S.

17  Additionally, Defendants have made and continue to make deceptive, misleading and fraudulent

18  statements marketing materials, on their website(s) and in promotional materials, and in the visual

19  look and feel of product packaging and labeling, regarding the true content of certain of its yarn

20  products, including but not necessarily limited to the mislabeled products identified in this

21  Complaint.

22         108.    Such conduct constitutes unfair or deceptive acts or practices in trade or commerce

23  affecting public interest, capable of repetition, and caused Cascade to suffer injury to its business,

24  goodwill and reputation as a result of those unfair or deceptive practices.

25

26

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 22
Case No. 2:10-cv-00861 RSM

## COUNT FOUR

### (Common Law Unfair Competition)

109.   Cascade hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

110.   Defendants are in competition with Cascade.

111.   As set forth above, Defendants have made and continue to make deceptive, misleading and fraudulent statements on labels of products sold throughout the U.S. Additionally, Defendants have made and continue to make deceptive, misleading and fraudulent statements in marketing materials, on their website(s) and in promotional materials, and in the visual look and feel of product packaging and labeling, regarding the true content of certain of its yarn products, including but not necessarily limited to the mislabeled products identified in this Complaint.  These statements are meant to influence customers to purchase Defendants' products to the exclusion of Cascade's products.

112.   Defendants' past and ongoing harm of Cascade continuing to the present and foreseeable future, and is a serious and unmitigated hardship.

113.   As a direct and proximate cause of Defendants' conduct, Cascade has been damaged in an amount not totally ascertainable at this time.  Cascade will continue to suffer injury to its goodwill, its rights and its business, unless and until Defendants are restrained from continuing their wrongful acts.

## COUNT FIVE

### (Injury to Business and Property Pursuant to Racketeer Influenced And Corrupt Organization Act)

114.   Cascade hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

115.   Pursuant to 18 U.S.C. § 1964(c) of the Racketeer Influenced And Corrupt Organization Act, Cascade brings this action against Defendant Sion Elalouf.

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 23
Case No. 2:10-cv-00861 RSM

1    116.    On information and belief, Mr. Elalouf is employed by or associated, directly or

2    indirectly, with the enterprise, as described in the Complaint, in the conduct of the enterprise's

3    affairs through the pattern of racketeering activity as described in this Complaint.

4    117.    Cascade is informed and believes that Defendants, individually and/or collectively,

5    constitute an enterprise as that term is defined in 18 U.S.C. § 1961.

6    118.    On information and belief, after 1998, and continuing through the present, Mr.

7    Elalouf has knowingly and willfully conducted the affairs of the enterprise described by this

8    Complaint, including but not necessarily limited to directing the actions of KFI, through a pattern

9    of racketeering activities specified by 18 U.S.C. § 1961.  This pattern of racketeering activity

10    consists of a least two racketeering acts, including without limitation, the following:

11    a)  **Mail Fraud:**

12    1.  Cascade hereby incorporates by reference all previous allegations of

13    this Complaint as if specifically set forth herein.

14    2.  Mr. Elalouf participated in the fraudulent conduct that is the subject of

15    this Complaint knowing, or in reckless disregard of, the true fiber

16    content of certain of Defendants' yarn products, including but not

17    necessarily limited to the mislabeled products identified in this

18    Complaint.  On information and belief, this conduct began in or around

19    2001, and certainly by 2006, and continues through the present.

20    3.  In furtherance of this scheme, at different times, Mr. Elalouf caused to

21    be placed with, for delivery by, the U.S. Mail or other commercial

22    interstate carrier various documents wherein the fiber content of

23    Defendants' yarn products, including but not necessarily limited to the

24    mislabeled products identified in this Complaint, was materially

25    misstated.

26

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 24
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

4.  For example, on July 20, 2006, under circumstances more particularly known to Defendants, Mr. Elalouf caused the U.S. Postal Service to deliver to as many as 2,000 yarn shops, a general letter addressing the fiber contents of certain of KFI's yarn products.  On information and belief, the letter was sent with the purpose and intent of having these yarn shops rely on the representations regarding the yarn's fiber content and to induce the shops to purchase KFI products to the exclusion of Cascade's products.

5.  The July 20 letter, contained numerous material misleading statements as well as misstatements of fact, including but not necessarily limited to the following:

i.  "a disgruntled competitor maliciously publish[ed] false and defamatory statements that . . . Cashmerino . . . does not contain cashmere" is materially misleading because the report was based upon independent, objective and generally accepted testing methods that determined the cashmere content of the Debbie Bliss Cashmerino yarn tested to be 0%;

ii.  the "Debbie Bliss's Cashmerino yarn contains cashmere" is materially false in two ways: first, tested samples drawn from retail inventories indicated the yarn contains 0% cashmere and, second, KFI has yet to produce any test reporting contrary findings based on samples drawn from stocks in any retail store as of June 10, 2006;

iii.  "TFT Limited . . . confirmed all six ...Cashmerino samples ... contain cashmere" is materially misleading because TFT's test

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 25
Case No. 2:10-cv-00861 RSM

1          report could state no more than "a quantity of cashmere" was

2          found and TFT did not say the quantity was the labeled 12%;

3      iv.  "it is difficult to test accurately for cashmere content" is

4          materially false because, while fiber content analysis is a

5          specialized scientific endeavor, the fiber analysis field has

6          developed generally accepted procedures to assure the accuracy

7          and uniformity of testing results;

8      v.  "when one uses a projection microscope to examine . . .

9          cashmere . . . blended with extrafine merino wool – both of

10          which have the same micron of approximately 18/19 – there

11          will be some fibers . . . identified as wool, some as cashmere

12          and others that are indeterminate" is materially false because,

13          on information and belief, expert fiber analysis distinguishes

14          fiber types by scale patterns (analogous to fingerprints) and not

15          micron count, which measures only fiber diameter and because

16          micron count is non-determinative of the fiber's species of

17          origin; and

18      vi.  "Stated simply, it is virtually impossible to differentiate

19          between Iranian cashmere and extrafine merino wool [as] the

20          two fibers have virtually the same characteristics" is materially

21          and recklessly false because the fiber analysis field functions for

22          the very purpose of identifying the animal species which

23          produced the fiber.

24     6.  Additionally, on or around September 2006, under circumstances more

25          particularly known to Defendants, Mr. Elalouf caused the U.S. Postal

26          Service to deliver to as many as 2,000 yarn shops, a general letter,

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA 94111-3492
415.954.0200 FAX: 415.393.9887

1    signed by Ms. Bliss, addressing the fiber contents of certain of KFI's

2    Debbie Bliss branded yarn products.  On information and belief, the

3    letter was sent with the purpose and intent of having these yarn shops

4    rely on the representations regarding the yarn's fiber content and to

5    induce the shops to purchase KFI products to the exclusion of

6    Cascade's products.

7    7.   The September 2006 letter, contained numerous material, misleading

8         statements as well as misstatements of fact, including but not

9         necessarily limited to the following:

10             i.   Designer Yarns "have initiated the most stringent state of the art

11                  tests, including DNA, every one of which confirms the presence

12                  of cashmere in the yarn" is a materially and recklessly

13                  misleading statement in two respects.  First, on information and

14                  belief, DNA testing, as it existed in 2006, could only determine

15                  the genus of animal which produced the fiber spun into yarn (

16                  *e.g.*, goat as opposed to sheep ) and cannot distinguish the

17                  specific species producing the fiber (*e.g.*, angora goat as

18                  opposed to cashmere goat ) – a fact known, or which should

19                  have been known, to Ms. Bliss and Mr. Elalouf.  Second, the

20                  results of testing "initiated" by Designer Yarns on samples not

21                  drawn from retailers' shelves is irrelevant to the fiber content of

22                  yarns already sold to retailers for resale to consumers, a fact

23                  known, or which should have been known, to Ms. Bliss and Mr.

24                  Elalouf.

25   8.   On information and belief, Mr. Elalouf has continuously and regularly

26        used the U.S. Postal Service and/or commercial carriers to deliver price

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 27
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

1    lists knowingly, or with reckless disregard for the truth,

2    misrepresenting the fiber content of certain of Defendants' yarn

3    products, including but not necessarily limited to the mislabeled

4    products identified in this Complaint.  On information and belief, Mr.

5    Elalouf made these uses of the U.S. Postal Service and/or commercial

6    carriers with the intent of causing Yarn retailers to purchase

7    Defendants' yarn products to the exclusion of Cascade's products.  On

8    information and belief, Mr. Elalouf has made these uses since 2001,

9    and certainly since 2006, and continuing to the present.

10    b)  **Wire Fraud:**

11    1.  Cascade hereby incorporates by reference all previous allegations of

12    this Complaint as if specifically set forth herein.

13    2.  Mr. Elalouf participated in the fraudulent conduct that is the subject of

14    this Complaint knowing, or in reckless disregard of, the true fiber

15    content of certain of Defendants' yarn products, including but not

16    necessarily limited to the mislabeled products identified in this

17    Complaint.  On information and belief, this conduct began in or around

18    2001, and certainly by 2006, and continues through the present.

19    3.  In furtherance of this scheme, at different times, Mr. Elalouf materially

20    misrepresented the fiber content of certain of Defendants' yarn

21    products, including but not necessarily limited to the mislabeled

22    products identified in this Complaint, through the use of wire, radio, or

23    television communication in interstate or foreign commerce.

24    4.  For example, on June 22, 2006, Mr. Elalouf represented to Robert

25    Dunbabin, Jr., in a cellular telephone conversation, that the type of

26    cashmere that he uses will not show up in tests and threatened litigation

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 28
Case No. 2:10-cv-00861 RSM

**SQUIRE, SANDERS & DEMPSEY L.L.P.**
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

if Cascade did publicly state that Debbie Bliss Cashmerino contained the requisite amount of cashmere stated upon the label..

5. Additionally, on July 11, 2006, Mr. Klein, on information and belief at the direction of Mr. Elalouf and in furtherance of the scheme described in this Complaint, sent a letter by facsimile to Cascade's counsel containing material factual misrepresentations or misleading statements. Specifically, the July 11 fax contained misrepresentations that certain of KFI's yarns contained cashmere.

6. Additionally, on information and belief, on July 20, 2006, to further the scheme described in this Complaint, Mr. Elalouf caused the letter discussed in ¶¶ 112(a)(4-5), which are incorporated herein, to be transmitted by electronic mail to yarn retailers for which KFI posses e-mail addresses.

7. Additionally, on information and belief, on July 20, 2006, in furtherance of the scheme described in this Complaint, Mr. Elalouf directed a KFI employee Jeffrey Denecke to publish on the Internet through the use of interstate wires the letter discussed in ¶¶ 112(a)(4-5), which are incorporated herein, on the online *Knitter's Review* forum.

8. Additionally, on October 19, 2006, on information and belief, Mr. Elalouf directed and caused Mr. Denecke to publish on the online *Knitters Review* forum a letter addressing one of KFI's customer's, The Knit With, decision to recall KFI yarn products due to their misleading and/or false labels.

9. The October 19 online posting contained numerous material misleading statements as well as misstatements of fact, including but not necessarily limited the following:

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 29
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

i.   "[T]here was never any reason for The Knit With to recall these
     products in the first place" is materially false because, on
     information and belief, as known to KFI in advance of the
     recall, fiber analyses of Cashmerino samples drawn from The
     Knit With's inventory show the products supplied to The Knit
     With contain a 0% cashmere content rendering such
     Cashmerino stocks unsalable as labeled;

ii.  Recent "*[t]ests . . . performed for KFI . . . confirm what KFI
     has been saying all along – the products contain cashmere*"
     (emphasis in original) is, on information and belief, a materially
     false statement for two reasons:  (1) none of the tests
     'performed for KFI' were performed on samples drawn from
     The Knit With's inventory or from stocks of any KFI-supplied
     retailer and (2) tests performed on product samples available
     only after the absence of cashmere content was detected can
     hardly confirm the presence of cashmere in stocks supplied to
     retailers by KFI before July, 2006 and as early as Fall 2001.

iii. "So KFI continues to stand behind the products, even issuing
     . . . guarantees (sic) in the form prescribed by the FTC" is, on
     information and belief, materially false statement vis-à-vis The
     Knit With because KFI refused to provide Plaintiff a twice-
     requested Guaranty of Compliance;

iv.  The Knit With's recall is a purposeful "smear campaign
     targeting KFI's products" is, on information and belief,
     materially false because KFI had notice the recalled yarns in
     question were found, at great expense to The Knit With, to not

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 30
Case No. 2:10-cv-00861 RSM

1    be spun with the labeled quantity of cashmere and therefore

2    should never have been sold to consumers as labeled.

3    v.   On information and belief, Mr. Elalouf has continuously and

4    regularly used interstate wires to deliver price lists knowingly,

5    or with reckless disregard for the truth, misrepresenting the

6    fiber content of certain of Defendants' yarn products, including

7    but not necessarily limited to the mislabeled products identified

8    in this Complaint, for example by representing the products'

9    fiber content on KFI's website, by sending out pricelists

10    through electronic mail and/or by sending out pricelists by

11    facsimile.  On information and belief, Mr. Elalouf made these

12    uses of the interstate wires with the intent of causing yarn

13    retailers to purchase Defendants' yarn products to the exclusion

14    of Cascade's products.  On information and belief, Mr. Elalouf

15    has made these uses since 2001, and certainly since 2006, and

16    continuing to the present.

17  c)  **Money Laundering:**

18    1.   Cascade hereby incorporates by reference all previous allegations of

19    this Complaint as if specifically set forth herein.

20    2.   On information and belief, as a result of the scheme described in this

21    Complaint, Mr. Elalouf received payments for the sale of mislabeled

22    products.

23    3.   On information and belief, beginning in or around 2001, and certainly

24    by 2006, and continuing through the present, subsequent to receiving

25    those payments, Mr. Elalouf attempted to and/or did conduct a financial

26    transactions involving those payments.

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 31
Case No. 2:10-cv-00861 RSM

**SQUIRE, SANDERS & DEMPSEY L.L.P.**
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

4. On information and belief, at the time Mr. Elalouf made or attempted to make those financial transactions involving those payments, he knew that the money involved in the transaction represented the proceeds of the unlawful activity described in this Complaint.

5. On information and belief, Mr. Elalouf made or attempted to make those financial transactions, with the intent of promoting the unlawful conduct that is the subject of this Complaint.

d) **Travel**:

1. Cascade hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

2. On information and belief, beginning in or around 2001, and certainly by 2006, and continuing through the present, in connection with and in furtherance of the scheme describe in this Complaint, Mr. Elalouf traveled domestically and internationally to locations including but not limited to Columbus, Ohio, Indianapolis, Indiana, the United Kingdom and Italy to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the scheme described in this Complaint.

3. On information and belief, at the time Mr. Elalouf engaged in interstate travel within the United States or internationally, he was engaging in such travel in furtherance of the unlawful activity described in this Complaint.

4. On information and belief, Mr. Elalouf engaged in interstate travel within the United States or internationally, with the intent of promoting the unlawful conduct that is the subject of this Complaint.

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 32
Case No. 2:10-cv-00861 RSM

**SQUIRE, SANDERS & DEMPSEY L.L.P.**
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

119.    The numerous acts of racketeering activities particularized in ¶ 112 constitute a pattern of racketeering activity beginning, on information and belief, in 2001 and continuing though the present.

120.    The numerous acts of racketeering activities particularized in ¶ 112 are related in that they were all in furtherance of the fraudulent and misleading sale of deceptively and/or falsely labeled yarn products.

121.    The activities particularized in ¶ 112 illustrate Mr. Elalouf's regular way of conducting the affairs of KFI.  KFI's business, and the business of Defendants, which relate to the creation, importation and wholesale distribution of hand knitting products, involves business activities ordinarily distinct from racketeering acts.

122.    The pattern of continuous racketeering activity particularized in ¶ 112 indicates that Mr. Elalouf conducts, operates and/or manages KFI and/or the other Defendants as a racketeering enterprise.

123.    Cascade, on information and belief, alleges that Defendants' business affects interstate and/or interstate commerce.

124.    Cascade's business has been injured by reason of Mr. Elalouf's violation of section 1962(c) as alleged in this Complaint because, as a result of the racketeering activities, Cascade's customers were deceived into purchasing KFI's products to the exclusion of Cascade's similar products.

125.    The harms resulting to Cascade by reason of Defendants' conducting or participating in the conduct of KFI as a racketeering enterprise entitle Cascade, pursuant to 18 U.S.C. § 1964(c), to recover the full measure of statutory damages: threefold enhancement of damages, litigation costs and attorney's fees.

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 33
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

**COUNT SIX**

**(Conspiracy to Cause Injury to Business and Property Pursuant to Racketeer Influenced And Corrupt Organization Act)**

126.    Cascade hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

127.    On a date more certainly known to Defendants, Defendants came to a mutual understanding to accomplish the unlawful plan to sell yarn products with false representations as to the products' fiber content as described in this Complaint ("Defendants' mutual understanding").

128.    At the time of Defendants' mutual understanding, Defendants were employed by or associated with the enterprise as described by this Complaint.

129.    At the time of Defendants' mutual understanding, Defendants were engaged in activities that affected interstate and/or foreign commerce.

130.    Defendants knowingly and willfully entered into Defendants' mutual understanding by indicating, through their words and/or actions, their agreement to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise described in this Complaint through a pattern of racketeering activity.

131.    As described in this Complaint, Defendants committed overt acts to accomplish the goal of Defendants' mutual understanding.

**PRAYER FOR RELIEF**

WHEREFORE, Cascade respectfully request the Court enter judgment in their favor as follows:

(1)    awarding damages for all injuries suffered as a result of Defendants' conduct, including from any Defendant, which is not a natural person but whose "corporate veil" is pierced;

(2)    awarding treble damages pursuant to 18 U.S.C. §1964(c);

FIRST AMENDED COMPLAINT FOR UNFAIR COMPETITION AND CIVIL RICO - 34
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887

1        (3)      awarding the reasonable costs of this suit, including attorneys' fees pursuant to 18

2   U.S.C. §1964(c) or any other applicable law;

3        (4)      awarding disgorgement of wrongfully obtained profits in an amount to be

4   determined at trial;

5        (5)      awarding exemplary damages in an amount to be determined at trial;

6        (6)      awarding prejudgment interest in an amount to be determined at trial;

7        (7)      awarding injunctive relief prohibiting Defendants from engaging in the conduct

8   described herein, including but not limited to prohibiting Defendants from misrepresenting the

9   fiber content of their yarn products; and

10        (8)      such other and further relief to which Plaintiffs may be entitled.

11                                        SQUIRE, SANDERS & DEMPSEY L.L.P.
    Dated: June 9, 2010
12

13                                        By:____s/  Robert J. Guite_____
                                                Robert J. Guite, WSBA No. 25753
14
                                          Attorneys for Plaintiff
15                                        CASCADE YARNS, INC.

16

17

18

19

20

21

22

23

24

25

26

FIRST AMENDED COMPLAINT FOR UNFAIR
COMPETITION AND CIVIL RICO - 35
Case No. 2:10-cv-00861 RSM

SQUIRE, SANDERS & DEMPSEY L.L.P.
ONE MARITIME PLAZA, SUITE 300
SAN FRANCISCO, CALIFORNIA  94111-3492
415.954.0200 FAX: 415.393.9887