UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASCADE YARNS, INC., | CASE NO. C10-861 RSM |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS |
| v. | |
| KNITTING FEVER, INC., a New York corporation, et al., | |
| Defendant. | |

I. **Introduction**

This matter is before the Court for consideration of defendants' motions to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(2) and 12(b)(6). Dkt. ## 34, 37. Plaintiff Cascade Yarn, Inc. (Cascade), a Washington corporation, brought this action under the Lanham Act section 43(a), 15 U.S.C. § 1125; the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, *et. seq.* (RICO); and for unfair competition in violation of the Washington Consumer Protection

1 Act, RCW 19.86; against defendants Knitting Fever, Inc. (KFI) et al.[1] Dkt. # 4. In the motion to
2 dismiss for lack of personal jurisdiction, the non-KFI defendants argue that this Court may
3 exercise neither specific nor general personal jurisdiction. Dkt. # 34. In the motion to dismiss for
4 failure to state a claim, defendants allege that Cascade failed to plead adequate facts against each
5 defendant to support a claim for a civil RICO conspiracy, 18 U.S.C. § 1961(d). Dkt. # 37.

6       On November 17, 2010, the Court set a tentative date for January 11, 2011 to hear oral
7 argument on these motions and directed the parties to submit supplemental briefing regarding
8 two narrow issues. Dkt. # 110. Having reviewed the parties' original and supplemental
9 memoranda, declarations, and supporting documentation, the Court now deems oral argument
10 unnecessary, and STRIKES the oral argument. The Court shall grant in part, and deny in part,
11 defendants' motions to dismiss, for the reasons stated below.

## II. Background

13       Cascade sells luxury yarns that contain mixes of wool with other natural fibers, including
14 kid mohair, silk, and cashmere, through retailers and boutiques around the country. Dkt. # 4, p. 2.
15 KFI is one of Cascade's chief competitors. *Id.* Cascade alleges that since at least 2006 and
16 continuing through the present, KFI falsely labeled the quantities of natural fibers in its yarns. *Id.*
17 Specifically, Cascade alleges that KFI's "Cashmerino" brand yarns contain no cashmere or less
18 cashmere than the cashmere quantity listed on the yarn labels. *Id.* at 9.

---

[1] The other defendants include the following: Designer Yarns Ltd. (Designer Yarns), a closely held corporation organized under the laws of England; Filatura Pettinata V.V.G. Di Stefano Vaccari (V.V.G.), a yarn manufacturing company organized under the laws of Italy; Sion Elalouf, chief executive of KFI; Diane Elalouf, an officer, director, or shareholder of KFI; Jay Opperman, sales manager at KFI; Debbie Bliss, creator of brand name yarns licensed to Designer Yarns; and David Watt, active participant in the management of Designer Yarns. Dkt. # 4.

1    In 2006, Cascade became aware of KFI's success with its Cashmerino lines. *Id.* Cascade
2 then sent a sample of a KFI Cashmerino brand yarn to the Cashmere and Camel Hair
3 Manufacturers Institute (CCMI) for fiber content analysis. *Id.* CCMI sent the sample to K.D.
4 Langley Fiber Services (Langley) to conduct the testing. *Id.* On May 26, 2006, Langley's report
5 concluded that the sample contained no cashmere. *Id.* Soon after the release of these results, they
6 became generally known in the industry. *Id.* Sion Elalouf, KFI's chief executive, contacted
7 Cascade's legal counsel concerning the test results soon after their industry release. *Id.* at 10. A
8 series of communications followed between KFI, the other defendants, and Cascade
9 representatives contesting the test report. *See id.* at 10-13. Although Cascade and KFI customers
10 sent more samples of KFI yarns to testing facilities in 2006, and those reports were consistent in
11 finding no cashmere fibers, Cascade did not pursue legal action until this suit. *See id.* at 14-16.
12 Additionally, in 2008, a local Pennsylvania yarn store, The Knit With, filed a similar suit against
13 KFI in Pennsylvania. Dkt. # 38, p. 13.  Cascade was subpoenaed to testify in that case in late
14 2009. *Id.* The case is still pending.
15    In the spring of 2010, Cascade again sent numerous KFI yarn samples for fiber content
16 analysis. Dkt. # 4, pp. 16-19.  This time, according to Langley's analysis, although various
17 amounts of cashmere were present in the samples, the samples contained less cashmere than the
18 amount listed on KFI's labels. *See* Dkt. # 4, Ex. D.  Both the 2006 and 2010 fiber content tests
19 form the basis of Cascade's allegations in the amended complaint.
20    Defendants challenge Cascade's Amended Complaint on two grounds.  First, the non-
21 KFI defendants challenge this Court's exercise of personal jurisdiction.  Second, all defendants
22 challenge Count VI of Cascade's Amended Complaint, which alleges that defendants entered
23 into a conspiracy to cause injury to business and property in violation of RICO. Dkt. # 4, ¶¶ 126-
24

1  131.  The Court shall briefly review the relevant facts, organized by individual defendant, as
2  alleged by Cascade.

#### KFI

KFI is the sole U.S. importer/wholesaler of Designer Yarn products.  Designer Yarns is a British company incorporated in 2001 for the purpose of holding the brand-name and distribution rights to the Debbie Bliss line of designer yarns. *Id.* ¶¶ 21-24.  Cascade alleges that KFI distributed and sold throughout the U.S. a 0% cashmere version of the Cashmerino blend labeled 12% cashmere.  The non-cashmere yarn was introduced at a hand-knitting yarn trade show on June 9-11, 2001. *Id.* at ¶¶ 34, 35.  KFI regularly used United States Mail and interstate wires to issue product and price lists to some 2,000 U.S. retailers for its mislabeled yarns. *Id.* at ¶ 38.

On June 27, 2006, after the first fiber content test results were released, KFI attorney Roy A. Klein sent a letter to Cascade accusing it of misrepresenting the fiber content of the Debbie Bliss yarn.  The letter stated that KFI had independent lab reports showing the yarn "indeed has the cashmere content on its label." *Id.* at ¶ 45.  Roy Klein worked on behalf of KFI, Designer Yarns, and Debbie Bliss. *Id.*  The letter stated that should Cascade refuse to issue an apology, then KFI, Designer Yarns, and Ms. Bliss would "not hesitate to pursue all appropriate rights and remedies to recover compensatory and punitive damages for [Cascade's] tortuous and illegal conduct." *Id.*

During the summer of 2006, Yarn Marketing News contacted Cascade, at the behest of KFI, to offer Cascade the opportunity to publish a public retraction and apology.  KFI offered to cover the costs.  Cascade refused the offer. *Id.* at ¶ 52.  Amidst growing controversy, in 2008,

KFI Cashmerino lines were manufactured with some cashmere, but not the 12% cashmere still listed on the labels. *Id.* at ¶ 56.

### Sion Elalouf

Mr. Elalouf is controlling shareholder and chief executive for KFI. In additional, although not a shareholder, director, or participant in Designer Yarns, he determines which Designer Yarn products will be sold and marketed, the fiber content for the yarn, and the yarn's price. He also determines Designer Yarns' promotional and advertising materials, and he represents Designer Yarns in negotiations with its Canadian distributor and at European trade shows. *Id.* at ¶¶ 25-27.

Mr. Elalouf entered into an agreement with Debbie Bliss sometime between 1999 and 2001. The agreement named Ms. Bliss as the creative source for the Debbie Bliss designer yarn brand. *Id.* at ¶ 21. Mr. Elalouf directed Ms. Bliss to promote her yarn brand at sales and marketing appearances in the U.S. *Id.* at ¶ 24.

According to the Amended Complaint, Mr. Elalouf entered into an agreement with Designer Yarns to substitute the 0% Cashmerino blend for 12% cashmere-labeled yarn sometime prior to June 9, 2001. He then directed V.V.G.'s[2] principal officer to label the manufactured yarn product as 12% cashmere. This yarn was included in the new Debbie Bliss brand products and sold to retailers throughout the U.S. *Id.* at ¶¶ 31-34.

---

[2] The Court notes that it will address the October 29, 2010, 12(b)(2) motion filed by defendant Filatura Pettinata V.V.G. Di Stefano Vaccari (V.V.G.) by separate order.

After the results of the fiber content analysis became public, on June 22, 2006, Mr. Elalouf called Cascade's in-house counsel and represented that he was not surprised by the test results because the type of cashmere used does not show up in fiber content testing. He then threatened Cascade with litigation should it refuse to dispel the fiber content rumors. *Id.* at ¶ 44. Mr. Elalouf directed Mr. Klein to send the above mentioned June 27, 2006 letter. Mr. Elalouf authored a letter to KFI customers on July 17, 2006 assuring that Debbie Bliss Cashmerino yarns actually contained cashmere. *Id.* at ¶¶ 45, 49. Mr. Elalouf directed Ms. Bliss to send her September 26, 2010 letter to reassure customers. Id. at ¶ 53.

Mr. Elalouf contacted V.V.G. to discuss reformulating several Cashmerino products. In June of 2006, the Cashmerino brand was reformulated to contain some, but not all of the cashmere content identified by the yarn labels. *Id.* at ¶¶ 55-56.

<u>Diane Elalouf</u>

Mrs. Elalouf is a KFI officer, director, or shareholder. *Id.* at ¶ 9. Mrs. Elalouf was responsible for scrutinizing, approving, and paying manufacturer's and supplier's invoices. In this capacity, she was able to keep other KFI employees from learning the actual yarn fiber content and the invoiced value of imported yarn products. Id. at ¶ 30.

<u>Designer Yarns</u>

Designer Yarns is a closely held corporation organized under the laws of England and incorporated in 2001. Dkt. # 4, ¶ 6. It holds a license for the international marketing rights to the Debbie Bliss brand and has an exclusive U.S. distributorship agreement with KFI for the importation and distribution of Designer Yarns's handknitting yarns. *Id.* Designer Yarns was created by Mr. Elalouf, Mr. Opperman, and others for the sole purpose of holding the brand name and distribution rights to a designer yarn. *Id.* at ¶ 22.

### Jay Opperman

Mr. Opperman is a sales representative of KFI. Furthermore, he is a director and shareholder of Designer Yarns. *Id.* at ¶ 10. Both Mr. Opperman and Mr. Elalouf were involved in the creation of Designer Yarns. *Id.* at ¶ 22. As a KFI sales representative, Mr. Opperman represented to KFI customers that several yarns contained 12% cashmere.

### Debbie Bliss

Debbie Bliss entered into an agreement with Mr. Elalouf whereby she would hold herself out as the creative source of Debbie Bliss brand yarns and promote the sales of such yarns. *Id.* at ¶ 21. On or around September 26, 2006, Ms. Bliss sent a letter to several U.S. yarn retailers representing that her yarns contained cashmere. *Id.* at 53. Ms. Bliss was scheduled to promote her brand at U.S. promotional appearances in Columbus, Philadelphia, and Seattle during the summer of 2010. Id. at ¶ 24.

### David Watt

Mr. Watt is a British citizen and is actively involved in the management of Designer Yarns. Id. at ¶ 12. V.V.G. communicated by letter to both Mr. Watt and Mr. Elalouf voicing concerns over how to proceed with its yarn manufacture. *Id.* at ¶ 55. Mr. Watt and Mr. Elalouf reformulated the yarn content in 2006 such that it contained some, but not all of the 12% cashmere listed on the yarn labels. *Id.* at ¶ 56.

### III. Discussion

*A. 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction*

When a defendant moves to dismiss for lack of personal jurisdiction, plaintiff bears the burden to show that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). A plaintiff's complaint withstands a motion to dismiss when it makes "only a prima facie

1 showing of jurisdictional facts." *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001) (internal

2 citations omitted). Moreover, "[u]ncontroverted allegations in the plaintiff's complaint must be

3 taken as true." *Boschetto*, 539 F.3d at 1015.

4     Personal jurisdiction over a non-resident defendant is proper if permitted by a long-arm

5 statute. *Fireman's Fund Ins. Co. v. Nat. Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). In

6 addition, the exercise of jurisdiction must comport with federal due process. *Id.* Here, because

7 Washington's long-arm statute is co-extensive with federal due process requirements, the Court

8 need engage only in the due process analysis. *See Unocal*, 248 F.3d at 922. Federal due process

9 is satisfied when (1) the defendant has "minimum contacts" with the forum state and (2) the

10 exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial

11 justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945). In the Ninth Circuit,

12 the due process analysis comprises the following three part test: (1) the non-resident defendant

13 either purposefully directed activities within the forum, or purposefully availed himself of the

14 privilege to conduct forum-related activities, (2) the claim arises out of such forum-related

15 activities, and (3) jurisdiction comports with fair play and substantial justice. *See Boschetto*, 539

16 F.3d at 1016. Plaintiff has the burden of satisfying the first two prongs to demonstrate that the

17 defendant has sufficient minimum contacts with the forum. The defendant, then, needs to put

18 forth a "compelling case" that the court's exercise of jurisdiction is unreasonable. *Id.* (quoting

19 *Burger King Corp. v. Rudzewics*, 471 U.S. 462, 467-78 (1985)).

20     In this case, jurisdictional requirements can be met in either one of two ways. First,

21 because Cascade alleges RICO violations against all defendants, and no defendant challenged the

22 substantive RICO fraud allegation in Count V of the Amended Complaint, jurisdiction could be

23 exercised under the RICO subsection authorizing nationwide service of process, 18 U.S.C. §

24

1965(b), as per Fed. R. Civ. Proc. 4(k)(1)(C). Second, should the plaintiff fail to meet the jurisdictional requirements under RICO, the Court must determine each defendant's minimum contacts with the forum.

**1) Personal Jurisdiction under 18 U.S.C. § 1965(b)**

A federal court may assert personal jurisdiction over a defendant if it is authorized to serve process on that defendant. *Butcher's Union Local No. 498 v. SDC Invest., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). Authorization may be conferred by a federal statute; however, the exercise of personal jurisdiction "must not contravene any constitutionally protected right of the defendant." *Id.* Plaintiff correctly notes that an alleged RICO violation of § 1962(a), (b), (c), or (d) allows for federal service of process under 18 U.S.C. § 1965. Section 1965(b) reads:

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.[3]

*Id.* In analyzing section 1965(b), the Ninth Circuit stated: "[c]ongress intended the 'ends of justice' provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." *Butcher's Union,* 788 F.2d at 538. Importantly, section 1965(b) is not limited to a conspiracy claim under RICO; thus, because no defendant challenged the 1962(c) claim, nationwide jurisdiction under RICO is still available, irrespective of the Court's decision as to the motion to dismiss the 1962(d) conspiracy count. *See* fn. 2, *infra* (section 1964

---

[3] Section 1964(c) states that "any person injured in his business or property by reason of a violation of section 1962 . . . may sue therefore in any appropriate United States district court . . . ." Plaintiff has alleged injury consistent with this section in its 1962(c) and (d) claims.

incorporates any violation of section 1962 so long as plaintiff alleges injury to business or property).

According to the court in *Butcher's Union*, section 1965(b) requires the plaintiff to show (1) that the court can exercise personal jurisdiction over at least one alleged RICO defendant and (2) that there is no district that has jurisdiction over all of the RICO defendants. *See id.* In this case, KFI does not challenge this Court's exercise of personal jurisdiction. Even if it had, however, Cascade alleges enough facts for the Court to infer that KFI meets the minimum contacts threshold. *See* Dkt. # 4. Therefore, because the Court may exercise jurisdiction over KFI, Cascade meets the first prong of *Butcher's Union*.

As to the second prong, defendants argue that all are subject to personal jurisdiction in the State of New York with the exception of Mr. Watt. They note that Mr. Watt maintains insufficient contacts with United States to permit the exercise of personal jurisdiction over him in any U.S. state. Dkt. # 63, p. 10. This means that the resolution of Mr. Watt's jurisdictional status dictates whether or not the Court may exercise jurisdiction over all defendants pursuant to RICO. If the exercise of personal jurisdiction over Mr. Watt is improper, then this Court may not assert jurisdiction over any non-KFI defendant unless it determines that each defendant's minimum contacts with the State of Washington supports the exercise of personal jurisdiction. To best address this issue, the Court directed the parties to provide supplemental briefing as to jurisdiction over Mr. Watt under section 1965(b). Dkt. # 110.

After reviewing the supplemental memoranda, the Court agrees with the defendants that the exercise of personal jurisdiction over Mr. Watt would be improper. While RICO section 1965(b) provides for nationwide service of process if a plaintiff establishes that a foreign defendant has national contacts with the United States, under the court's reasoning in *Doe v.*

1 *Unocal Corp.*, 27 F. Supp. 2d 1174, 1182 (C.D. Cal. 2001), service must be made on a foreign
2 defendant in the United States. *Id.* at 1182-83 (stating that RICO does not authorize world-wide
3 service of process and that "it would be inappropriate for a federal court to effectively extend the
4 territorial reach of a federal statute by applying a national contacts test for personal jurisdiction
5 where service is not effected pursuant to that federal statute"). Because Cascade effected service
6 of process on Mr. Watt in England, Mr. Watt is not subject to personal jurisdiction in this forum
7 under 18 U.S.C. § 1965(b). Dkt. # 120, p. 4. Thus, as all remaining defendants are subject to
8 jurisdiction in New York, plaintiff fails to satisfy the test laid out in *Butcher's Union*.

9 **2) Minimum contacts in Washington**

10 Given that Cascade failed to demonstrate that personal jurisdiction is proper under 18
11 U.S.C. § 1965(b) for all the non-KFI defendants, the Court must consider each non-KFI
12 defendant's contacts with the forum. Cascade does not argue that general jurisdiction exists as to
13 any non-KFI defendant; therefore, to survive the 12(b)(2) motion, Cascade must show that each
14 defendant has sufficient minimum contacts with Washington to permit the Court's exercise of
15 personal jurisdiction. Furthermore, because the alleged claims sound in tort, Cascade must show
16 that defendants purposefully directed activities to the forum. *Schwarzenegger v. Fred Martin*
17 *Motor Company*, 374 F.3d 797, 802 (9th Cir. 2004) (distinguishing purposeful direction from
18 purposeful availment). The purposeful direction analysis follows the three-part "effects" test
19 outlined in *Calder v. Jones*, 465 U.S. 783, 104 (1984). *Id.* at 803. The *Calder* test requires (1)
20 the defendant committed an intentional act, (2) the act was expressly aimed at the forum state,
21 and (3) the act caused harm that defendant knew was likely to be felt in the forum state. *Id.* The
22 Court applies the effects test to each defendant, in turn, below.

23
24

### Mrs. Elalouf

All that Cascade alleges against Mrs. Elalouf is her general employment responsibilities. Because there is no mention of her contacts to Washington in either a personal or employment capacity, the Court shall grant the motion to dismiss for Diane Elalouf.

### Mr. Opperman

Although Cascade alleges that Mr. Opperman holds himself out as an independent KFI sales representative, Cascade offers no facts to discern whether Mr. Opperman made contacts or sales with customers in Washington. Thus, the Court shall grant the motion to dismiss for Mr. Opperman.[4]

### Mr. Watt

Cascade fails to allege any contacts between Mr. Watt, a British citizen and shareholder/director of Designer Yarns, a British company, and Washington. Therefore, the Court shall grant the motion to dismiss for Mr. Watt.

### Designer Yarns

Although Cascade alleges insufficient facts connecting Designer Yarns to Washington through direct business relationships, there is one contact that makes Designer Yarns amenable to suit in this forum. Specific jurisdiction may be based on one purposeful forum contact "as long as the cause of action arose from that contact and the assertion of jurisdiction would be reasonable." *Langlois v. Déjà Vu, Inc.*, 984 F. Supp. 1327, 1333 (W.D. Wash. 1997) (explaining that a single contact is sufficient if it is of such a quality and nature to make suit in the forum foreseeable). In 2006, Roy Klein sent a letter to Cascade in his capacity as an attorney

---

[4] Although Cascade presents a declaration highlighting Mr. Opperman's sales contacts within Washington (Dkt. # 113), it did not incorporate those into either the Amended Complaint or the responsive pleadings, declarations, and exhibits associated with these motions.

1  representing KFI, Designer Yarns, and Debbie Bliss.  According to the Amended Complaint, the

2  letter threatened Cascade with litigation by KFI, Designer Yarns, and Ms. Bliss, should Cascade

3  fail to issue an apology disclaiming the accuracy of the 2006 fiber content test results.  Applying

4  the Calder effects test, this letter was an intentional act, directed at Cascade, in Washington,

5  concerning the very same subject matter as this suit: whether or not the yarn contained the

6  labeled amount of cashmere.  Moreover, the threat to sue Cascade should have put Designer

7  Yarns on notice that Cascade might do the same at a later date. *See Bancroft & Masters, Inc. v.*

8  *Augusta National, Inc.*,  223 F.3d 1082 (9th Cir. 2000) (deciding that defendant's letter

9  challenging plaintiff's use of the www.masters.com domain name constituted an intentional act

10 expressly aimed at the plaintiffs who were harmed in California). Therefore, the Court shall deny

11 the motion to dismiss as to Designer Yarns.

Debbie Bliss

13       Cascade alleges contacts between Ms. Bliss in Washington such as her August Seattle-

14 area promotional tour.  Given that the tour took place a little more than two months after the

15 Amended Complaint was filed on May 24, 2010, defendants correctly assert that it cannot serve

16 as a basis for jurisdiction, as only contacts made prior to commencement of the suit qualify for

17 personal jurisdiction analysis. Dkt. # 63, p. 7; *Farmers Ins. Exchange v. Portage*, 907 F.2d 911,

18 913 (9th Cir. 1990).  Cascade further alleges that the Debbie Bliss yarns are sold by retailers

19 throughout Washington.  However, such contacts are insufficient to connect the sale of Debbie

20 Bliss brand yarn, imported and distributed by KFI, with the purposeful contacts by Debbie Bliss

21 as an individual.

1    Although Cascade makes no additional factual showing connecting Debbie Bliss to
2 Washington, the Court finds that Ms. Bliss, like Designer Yarns, directed a purposeful contact
3 via Mr. Klein's letter.  The Court shall therefore deny the motion to dismiss as to Debbie Bliss.

Sion Elalouf

5    In the Amended Complaint and responsive pleadings, Cascade cursorily labeled Mr.
6 Elalouf as KFI's alter ego.  The Court directed the parties to discuss, in greater depth, whether
7 the alter ego doctrine applies to Mr. Elalouf. Dkt. # 110.  After reviewing the parties'
8 supplemental memoranda, the Court concludes that there is no authority to support the
9 classification of Mr. Elalouf as an alter ego of KFI.  Therefore, the Court must evaluate Mr.
10 Elalouf's minimum contacts with the forum to exercise jurisdiction.

11    Defendants argue that a corporate entity's contacts are not imputed to an employee acting
12 on behalf of the corporation. *Kransco Mfg., Inc., v. Markwitz*, 656 F.2d 1376, 1379 (9th Cir.
13 1981).  *Calder* makes clear, however, that "status as employees does not somehow insulate
14 [defendants] from jurisdiction.  Each defendant's contacts with the forum State must be assessed
15 individually." 465 U.S. at 790.  Furthermore, in its discussion of *Calder*, one court has stated
16 "the individual employee's contacts with the forum state should be the focus of the examination.
17 . . . It is irrelevant whether those individual contacts were personal in nature, or while acting in
18 an official capacity." *Kukui Gardens Corp. v. Holco Capitol Group, Inc.*, 664 F. Supp. 2d 1103,
19 1112 n. 17 (D. Hawaii 2008).  Thus, Mr. Elalouf may not shield his personal acts, which were
20 directed at Cascade in Washington, behind his official title.

21    Here, Cascade alleges that Mr. Elalouf called Cascade's in-house counsel to discuss the
22 2006 test results and threatened Cascade with litigation. Dkt # 4, ¶ 44.  Moreover, Cascade
23 alleges that Mr. Elalouf directed Roy Klein to send his July 11, 2006 letter threatening Cascade
24

with litigation. Dkt. # 4, ¶ 47. Given that these communications were directed specifically towards Cascade, concerning the subject matter of this litigation, Cascade has made a prima facie showing of jurisdictional facts necessary to support personal jurisdiction over Mr. Elalouf. Therefore, the Court shall deny the motion to dismiss for Mr. Elalouf.

*B. 12(b)(6) Motion to Dismiss RICO Conspiracy*

While Congress enacted RICO to "combat organized crime," the Supreme Court rejected the idea that "RICO's pattern of racketeering concept requires an allegation and proof of an organized crime nexus." *Hellmann Worldwide Logistics, Inc., v. Harris*, 2009 WL 5197821 *3 (W.D. Wash. Dec. 21, 2009) (internal citations omitted).  In order to determine whether Cascade pleads sufficient facts to support a RICO conspiracy claim, the Court must determine (1) the appropriate pleading rule, and (2) whether the facts alleged, as against each defendant, support an inference of an agreement to violate RICO.

**1) Pleading standard for section 1962(d)**

In reviewing a Rule 12(b)(6) motion to dismiss, the court must determine whether a plaintiff has established facts which support a claim for relief. *Broam v. Bogan*, 320 F.3d 1023, 1033 (9th Cir. 2003).  Courts consider the complaint in its entirety, including documents incorporated by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Construing facts in the light most favorable to the plaintiff, the court should "accept as true all material allegations in the complaint [and] any reasonable inferences to be drawn from them." *Broam*, 320 F.3d at 1028 (citation omitted).  A complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1    A civil RICO allegation predicated on fraud, however, triggers the heightened pleading

2 requirements set forth in Federal Rule of Civil Procedure 9(b). *Smith v. Levine, Leichtmen*

3 *Capital Partners, Inc.*, 2010 WL 2787549 *7 (N.D. Cal. June 29, 2010). Rule 9(b) requires the

4 pleader to state "the time, place, and specific content of the false representations as well as the

5 identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc., v. Albright*, 862

6 F.2d 1388, 1992-93 (9th Cir. 1989) (quoting *Schreiber Distrib. Co.*, 806 F.2d at 1401). The

7 defendants contend that Rule 9(b) is the appropriate standard. Although Cascade does not

8 expressly contest this point and argues only that it has pled sufficient facts to meet 9(b)'s

9 requirements for fraud, the relevant case law does not permit the Court's application of 9(b)

10 standards to the *conspiracy* claim.

11    Defendants argue that the Amended Complaint fails to adequately "specify or

12 differentiate the participation of each of the Defendants in the alleged RICO conspiracy" alleged

13 in Count VI. Dkt. # 37, p. 6. The RICO violation averred to in Count VI falls under section

14 1962(d) which states: "It shall be unlawful for any person to conspire to violate any of the

15 provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). In this case, no

16 defendant moved to dismiss Count V, plaintiff's substantive RICO fraud allegation. Rather,

17 defendants attacked only plaintiff's section 1962(d) conspiracy claim. In *Kauhi v. Countrywide*

18 *Home Loans Inc.*, 2009 WL 3169150 *3 (W.D. Wash. Sept. 29, 2009) the court evaluated

19 plaintiff's RICO-related conspiracy claim under the Rule 8 standard while analyzing the

20 substantive RICO fraud claims under Rule (9)(b). *Id.* ("Thus, while these fraud claims will be

21 analyzed under Rule 9(b), the Court, pursuant to Rule 8, dismisses Plaintiffs' conspiracy . . .

22 claims for failure to state a claim for which relief can be granted."). Similarly, here, the

23

24

1  conspiracy allegation will be evaluated under the more liberal Rule 8(a) pleading standard rather
2  than the heightened requirements of Rule 9(b).

3  **2) The RICO conspiracy claim**

4  Under section 1962(d), plaintiffs must allege either (1) an agreement that violates RICO,
5  or (2) that defendants committed, agreed to commit, or participated in the commission of two
6  predicate offenses. *See Smith*, 2010 WL 2787549 at *8.  A violation of section 1962(d) is
7  demonstrated when "the factual allegations of the complaint, including the words, actions, and
8  relationship between the parties . . . raise[s] an inference that an agreement exists." *In re Park*
9  *West Galleries, Inc.*, 2010 WL 2639849 * 2 (W.D. Wash. June 25, 2010).  In light of the Court's
10 resolution of the 12(b)(2) motion to dismiss, the only remaining defendants are KFI, Sion
11 Elalouf, Debbie Bliss, and Designer Yarns. Thus, the analysis concerns only these remaining
12 parties.

13 The Court shall deny these defendants' motion to dismiss for the following reasons.
14 First, Cascade alleges that Designer Yarns was created by Sion Elalouf and others for the sole
15 purpose of branding a yarn line with the Debbie Bliss name.  Furthermore, Cascade alleges that
16 as of at least 2001, the Debbie Bliss Cashmerino lines contained no cashmere.  Second, Cascade
17 has test results from 2006 and 2010 showing that KFI's Debbie Bliss cashmere lines have no or
18 little cashmere, contrary to the amounts specified on the labels.  Third, once the 2006 test results
19 became public, an attorney acting on behalf of KFI, Designer Yarns, and Debbie Bliss wrote a
20 letter to Cascade threatening litigation should Cascade fail to apologize publicly for libel.
21 Fourth, Debbie Bliss issued a public letter to her customers, at Sion Elalouf's urging, assuring
22 her branded yarns contained the correct amount of cashmere.  Finally, Mr. Watt, as Designer
23 Yarns' manager, emailed Mr. Elalouf suggesting that Elalouf take an alternate approach to
24

attacking Cascade's test results: an approach that would give KFI "the moral high ground." Moreover, Mr. Watt and Mr. Elalouf, corresponded via email concerning new manufacturing of the Cashmerino lines, which, Cascade alleges, led directly to the reformulation of Cashmerino products such that they contained some, but not all, of the specified cashmere amount.

While defendants construe the Amended Complaint as "fail[ing] to differentiate its allegations of a RICO conspiracy as against each of the Defendants, or inform the Defendants separately of the allegations surrounding participation of each in the alleged fraud," the above facts describe specific communications made by individual defendants and the circumstances surrounding the creation, manufacture, and distribution of Designer Yarns and the Debbie Bliss brand. Dkt. # 37, p. 2. Taking these allegations as true, the Court can infer from the specific acts and relationships alleged in the Amended Complaint that an agreement existed between these parties. Furthermore, as no defendant challenged the RICO fraud claim, the Court must assume, at the pleading stage, that the 1962(c) claim has merit. Thus, the Court shall deny the 12(b)(6) motion for the remaining defendants.

## IV. Conclusion

Defendants' motion to dismiss the Amended Complaint for lack of personal jurisdiction is GRANTED as to defendants Diane Elalouf, Matt Watt, and Jay Opperman. For defendants Sion Elalouf, Designer Yarns, and Debbie Bliss, the motion is DENIED. In addition, defendants' motion to dismiss for failure to state a claim under RICO is GRANTED for defendants Diane Elalouf, Matt Watt, and Jay Opperman. The motion is DENIED for defendants KFI, Sion Elalouf, Designer Yarns, and Debbie Bliss.

Having reviewed the relevant pleadings, the declaration and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1     (1) Defendants' motion to dismiss for lack of personal jurisdiction (Dkt. # 34) is GRANTED in part and DENIED in part as set forth above.

3     (2) Defendants' motion to dismiss for failure to state a claim (Dkt. # 37) is GRANTED in part and DENIED in part as set forth above.

5     (3) The oral argument set for January 11, 2011 is STRICKEN.

6     (4) The Clerk is directed to forward a copy of this Order to all counsel of record.

8     Dated January 3, 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE