UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASCADE YARNS, INC., a Washington Corporation,<br><br>                Plaintiff,<br><br>   v.<br><br>KNITTING FEVER, INC., a New York Corporation, et al.,<br><br>                Defendants. | CASE NO. C10-861 RSM<br><br>ORDER GRANTING DEFENDANT FILATURA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION |

## INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2). (Dkt. #198.) One of the defendants in this case, Filatura Pettinata V.V.G. Di Stefano Vaccari & C. (S.A.S.), argues that it is not subject to personal jurisdiction in this Court because it lacks sufficient minimum contacts with the state of Washington. For the reasons set forth below, the Court agrees and GRANTS Defendant's motion.

## DISCUSSION

**A. Background**

Plaintiff Cascade Yarns, Inc. ("Cascade") brought this suit against Defendants Knitting Fever, Inc. ("KFI"), Designer Yarns, Ltd. ("Designer Yarns"), Filatura Pettinata V.V.G. Di Stefano Vaccari & C. (S.A.S.) ("Filatura"), Sion Elalouf, Debbie Bliss, and others, alleging several violations of the Lanham Act, 15 U.S.C. § 1125, and the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §1961 (RICO). Cascade, competitor of the defendants, contends that all of the defendants conspired to produce, market, and sell mislabeled yarn to consumers. (Dkt. #249.) More specifically, Cascade claims that Defendants misrepresented the amount of cashmere, mohair, silk, alpaca, camel, or milk protein fiber in the yarns at issue, and that a number of tests on these yarns contradict the fiber content stated on the yarns' labels. (Dkt. #249 at 3; Dkt. #249-1.)

Filatura is an Italian manufacturer of yarn, and Cascade alleges that Filatura manufactured the yarns at issue in this case. (Dkt. #249 at 4.) The parties agree that Filatura is organized under the laws of Italy with a principal place of business in Italy. (Dkt. #249 at 4; Dkt. #198 at 2.) Cascade bears the burden of showing that Filatura has sufficient contacts with Washington such that jurisdiction is appropriate. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990). Accordingly, Cascade has provided the following information relating to Filatura's contacts with Washington:

1) Lists of yarn stores in Washington that carry the Debbie Bliss line of products allegedly made by Filatura and distributed by KFI (Dkt. #116-2, #57-2);

2) Copies of invoices for yarn shipments from Filatura to Cascade in 2005 (Dkt. #117-1);

3) A list of shipments from Filatura to the United States between 2007 and 2010 (Dkt. #117-2);

4) A copy of a faxed letter from Roy Klein (counsel for KFI, Debbie Bliss, and Designer Yarns) to counsel for Cascade, which states among other things that Filatura is the spinner of the Cashmerino yarns at issue, and threatens suit against Cascade (Dkt. #116-2 at 3);

5) A copy of a faxed letter from a representative of Filatura to Sion Elalouf and David Watt, representatives of KFI and Designer Yarns, relating a meeting with Cascade representatives and discussing the testing of yarn products for fiber content (Dkt. #117-3).

## B. The Court Does Not Have Specific Jurisdiction Over Filatura

Because Cascade has alleged violations of RICO, jurisdiction over Filatura might be exercised under 18 U.S.C. §1965(b), which allows for nationwide service of process on a defendant as per Fed. R. Civ. Proc. 4(k)(1)(C), and hence jurisdiction in this Court. *See Butcher's Union Local No. 498 v. SDC Invest., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). However, this Court has already found that RICO jurisdiction does not apply in this case. *See* Dkt. #161 at 10-11. Moreover, Filatura was not served in the United States (Dkt. #99), which casts the RICO jurisdiction further into doubt. Thus Filatura must meet the constitutional criteria ordinarily required for personal jurisdiction in Washington. In Washington, the long-arm statute authorizing jurisdiction over non-resident defendants is co-extensive with the federal limits of jurisdiction. *Shute v. Carnival Cruise Lines*, 113 Wash.2d 763, 771, 783 P.2d 78 (1989). In the federal system, personal jurisdiction is proper in a forum state when a defendant has "minimum contacts" with the state and the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 315

(1945). Cascade has not alleged that this Court has general jurisdiction over Filatura; therefore this analysis will focus on specific jurisdiction.

The Ninth Circuit has set forth a three-prong test for determining a claim of specific jurisdiction:

> "(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Schwarzenegger v. Fred Martin Motor Co*. 374 F.3d 797, 802 (9th Cir. 2004), *citing Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987). Cascade's allegations of Filatura's contacts with Washington essentially boil down to three different theories: first, that Filatura's yarns are sold in Washington; second, that Filatura transacts business with Cascade, a Washington corporation; and third, that Filatura is a co-conspirator with the other defendants, who have already satisfied the minimum contacts test with respect to Washington.

1. *Cascade has not shown that Filatura shipped the yarns at issue directly to Washington.*

The first prong of the specific jurisdiction test requires the Court to consider whether the defendant has engaged in purposeful availment or purposeful direction. A purposeful direction analysis is more applicable in cases arising in tort where "the defendant's actions outside the forum state … are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger,* 374 F.3d at 803, *citing Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984). The purposeful direction analysis is appropriate for the allegation that Filatura manufactured the disputed yarn in Italy and sent it to the United States.

The purposeful direction analysis consists of another three-part test, based on the

Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). This "effects test" requires "that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts* 303 F.3d 1104, 1111 (9th Cir. 2002). The letter from Roy Klein, counsel for defendants KFI, Designer Yarns and Debbie Bliss, states that Filatura is the spinner of some of the yarns in question. Thus the parties seem to be in agreement that Filatura was involved in the manufacture of these yarns. Performing that task alone (regardless of knowledge of the fiber content) is enough to constitute an intentional act for the purposes of the first prong of the effects test. Cascade has also alleged[1] that Filatura shipped yarn to the United States which also satisfies the "intentional acts" requirement.

The next step in the effects test, however, presents a more difficult hurdle for Cascade as it requires a showing that Filatura expressly aimed its intentional acts at Washington. Cascade alleges that Filatura manufactured and sold the mislabeled yarn to consumers in Washington. (Dkt. #211 at 12.) However, the exhibits Cascade presents in support of that proposition do not establish any direct sales of the yarn at issue to Washington. They have provided a list of stores in Washington carrying Debbie Bliss yarns, and a list specifically showing which stores in Washington carry Debbie Bliss Cashmerino Aran, Cashmerino Baby, and Cashmerino DK, all of which are yarns listed in Cascade's complaint. (Dkt. #249 at 16.) Cascade has also provided the letter from Mr. Klein which describes Filatura as the spinner of the Cashmerino yarns, but it has

---

[1] In analyzing jurisdictional questions, the court looks to "whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir.1995). While the court will not let the plaintiff "simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger,* 374 F.3d at 800 (internal citations omitted). The jurisdictional analysis here hinges on affidavits and exhibits not contested by Filatura.

not provided anything to show that Filatura was responsible for those yarns being sold in the stores in Washington.

Cascade has also provided a list of Filatura's exports to the United States from 2007 to 2010, but none of the listed destinations for the exported goods is in Washington. The declaration accompanying the list states that the list shows that Filatura's exports include sales of the Cashmerino yarns to KFI. (Dkt. #117 at 2.) However, the list only shows a shipment of yarn to KFI in New York; it does not show the kind of yarn that KFI received; thus the exhibit does not actually demonstrate that Filatura exported the Cashmerino yarns. In sum, Cascade has provided evidence that Filatura has made the Cashmerino yarn, and that the Cashmerino yarn is sold in Washington (allegedly through KFI), but Cascade has not tied these ends together by establishing that Filatura was the entity that sent the yarn to Washington.

Cascade asserts the fact that Filatura made the yarn and that the yarn was sold in Washington is enough to provide evidence of express aiming, stating that Filatura is "essentially a supertanker in the stream of commerce, of yarn flowing to the United States." (Dkt #211 at 14.) Be that as it may, Cascade still has not connected this alleged "supertanker" with Washington. The mere act of manufacturing the yarn coupled with the eventual sale of the yarn in Washington does not satisfy the express aiming requirement. The Supreme Court has required other contacts in addition to a stream of commerce allegation to support personal jurisdiction: "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal*. 480 U.S. 102, 112 (1987). [2] Nor would it be sufficient if Cascade had alleged that Filatura could

---

[2] Though this quotation is taken from a part of the opinion that did not receive the support of a majority of the Court, the sentiment it expresses is nonetheless appropriate here. The Court in *Asahi* was unanimous as to the unreasonableness of haling a foreign defendant into court based on the manufacture of a product it knew might end

have foreseen that the yarn would wind up in Washington. *Calder*, 465 U.S. at 789 (*citing World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980), *and Rush v. Savchuk,* 444 U.S. 320, 328-329 (1980)). Without an allegation that Filatura specifically intended its yarn to be sold in Washington and end up in the hands of Washington consumers, Cascade has failed to show that Filatura's act of manufacturing the yarn was expressly aimed at Washington.

   2. *Filatura's business dealings with Cascade do not subject it to personal jurisdiction in Washington.*

Cascade also argues that this Court has jurisdiction over Filatura because Filatura is a competitor of Cascade and knew that Cascade's principal place of business was in Washington. (Dkt. #211 at 13.) Cascade has offered two pieces of evidence that support this: that Filatura met with Cascade in Italy, and that Filatura shipped yarn to Cascade in Washington. The letter Filatura sent to KFI and Designer Yarns mentions a meeting between Filatura and Cascade in Florence, Italy, in July 2006, and the letter Mr. Klein sent to Cascade mentions the same meeting.[3] Even if Filatura became aware of Cascade's business location as a result of this meeting, that fact alone will not suffice to establish personal jurisdiction; Cascade still must show purposeful direction or purposeful availment.[4]

---

up in the forum state. 480 U.S. at 116,121-122. The facts in *Asahi* showed the defendant made "regular and extensive sales of component parts to a manufacturer it knew was making regular sales of the final product in" the forum state. *Id.* at 121. Here, no such facts are alleged to connect Filatura to Washington through KFI. Even assuming *arguendo* that there were such facts, *Asahi* at a minimum stands for the proposition that jurisdiction over Filatura would be unreasonable in any case.

[3] This court previously held that this letter was enough to confer personal jurisdiction over defendants Debbie Bliss, Designer Yarns and Sion Elalouf. That analysis does not apply in this case because Mr. Klein represented himself to be counsel for those three defendants only, not Filatura.

[4] Cascade points to two unpublished opinions, *Precision Craft Log Structures, Inc. v. Cabin Kit Co., Inc.*, No. CV05-199-S-EJL, 2006 WL 538819 (D. Idaho Mar. 3, 2006,) and *The Bear Mill, Inc. v. Teddy Mountain, Inc.*, No. 2:07-CV-492-EJL-LMB, 2008 WL 2323483 (D. Idaho May 7, 2008), to support the proposition that personal jurisdiction is appropriate where the parties are competitors and the defendant is aware of the plaintiff's principal place of business. However, jurisdiction in both of those cases hinged on the fact that the claims were trademark disputes where the defendants were alleged to have deliberately infringed on the plaintiffs' marks. The kind of

Cascade and Filatura did at one point conduct business together. Cascade has provided a series of invoices documenting shipments of yarn directly from Filatura to Cascade in 2005; however, none of these invoices mentions the Cashmerino yarns or any other yarn listed in Cascade's complaint.[5] The shipments of yarn to Cascade in Washington qualify as intentional acts expressly aimed at Washington, but those shipments are not those alleged to have caused the harm in this case. Thus Cascade and Filatura's business dealings do not satisfy the purposeful direction requirement.

Nor does the fact that the companies have done business together constitute purposeful availment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) (holding that "an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts" to support personal jurisdiction). The existence of a contract between the two companies in 2005, for yarns not related to this complaint, does not by itself give rise to personal jurisdiction over Filatura.

3. *The conspiracy theory of jurisdiction does not provide a solid legal ground for personal jurisdiction.*

Cascade has alleged that Filatura is involved in a conspiracy with KFI and the other defendants, and that this should provide a basis for jurisdiction. (Dkt. #211 at 10.) However, the Ninth Circuit has not adopted the conspiracy theory of jurisdiction and has indicated that it is reluctant to do so. *Chirila v. Conforte*, 47 Fed. Appx. 838, 843 (9th Cir. 2002) (noting that the theory has been "criticized by commentators" and that the Ninth Circuit has also rejected a

---

deliberate action inherent in a claim for trademark infringement is distinct from actions that give rise to a claim for unfair competition (the primary claim here), where the complaint does not necessarily infer action deliberately aimed at the plaintiff.

[5] The yarns listed in the invoices are labeled "> 85% Synthetic," "Artificial," "Wool/Anml Hair," and "Malizia" (listed as " 60% Viscose 40% Polyester"), none of which are in the complaint.

similar theory for purposes of venue). Courts in this district have rejected the theory. *See Silver Valley Partners, LLC v. De Motte*, 400 F.Supp.2d 1262, 1268 (W.D.Wash., 2005); *Kreidler v. Pixler* 2006 WL 3539005 at *7, (W.D.Wash., December 7, 2006) (unpublished opinion); *see also LaSala v. Marfin Popular Bank Public Co., Ltd*.410 Fed.Appx. 474, 478 (3rd Cir. 2011) ("The availability of the conspiracy theory of jurisdiction…is a question of state law"); *Hewitt v. Hewitt*, 78 Wash.App. 447, 454 fn. 2, 896 P.2d 1312 ("Several courts have accepted the conspiracy/imputation theory of long-arm jurisdiction. ... Given constitutional principles governing the exercise of jurisdiction, we find these cases unpersuasive"). This Court rejects the theory as well.

None of Cascade's theories demonstrate that Filatura expressly aimed any intentional acts causing harm in Washington. Cascade therefore does not satisfy the effects test, and consequently has not made a showing of purposeful direction. A showing of purposeful direction is required to establish specific personal jurisdiction. *See Schwarzenegger*, 374 F.3d at 802. Cascade has thus failed to establish that this Court has jurisdiction over Filatura.[6]

## C. The Court Will Not Allow Jurisdictional Discovery

Cascade has requested, in the alternative, that it be given the opportunity to pursue jurisdictional discovery. Jurisdictional discovery is appropriate where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.* 788 F.2d 535 (9th Cir. 1986) (*quoting Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977). Here, the relevant exhibits are undisputed.

---

[6] Nor is Filatura subject to jurisdiction under Fed. R. Civ. Proc. 4(k)(2), which allows for personal jurisdiction over defendants if they are not subject to jurisdiction in any state. Filatura is subject to jurisdiction in New York (Dkt. #198 at 9), so it does not meet the requirements for that rule.

Furthermore, Cascade has not alleged that it would find anything further relevant to jurisdiction if given the opportunity for discovery. At this point, then, discovery would amount to little more than a fishing expedition. Jurisdictional discovery should not be granted "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). The Court therefore denies this discovery request.

## CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant Filatura's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. # 198) is GRANTED and Defendant Filatura is DISMISSED from this action.

(2) Plaintiff's request for jurisdictional discovery is DENIED.

(3) The Clerk is directed to forward a copy of this Order to all counsel of record.

Dated June 17, 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE