UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASCADE YARNS, INC., a Washington Corporation,<br><br>     Plaintiff,<br><br> v.<br><br>KNITTING FEVER, INC., a New York Corporation, et al.,<br><br>     Defendant. | CASE NO. C10-861RSM<br><br>ORDER ON MOTION FOR A PRELIMINARY INJUNCTION |

This matter is before the Court for consideration of a motion for a preliminary injunction by Plaintiff Cascade Yarns, Inc. ("Cascade"). Cascade moves to enjoin Defendant Knitting Fever, Inc. ("KFI") from marketing and labeling hand-knitting yarns that are falsely labeled as containing milk fibers when they actually contain acrylic fibers. Dkt. #256. Alternatively, Cascade argues that in the event that the yarn does contain milk protein fibers, KFI should still be enjoined from marketing and labeling the yarns as containing "Milk" because such a label deceives consumers. *Id*. In opposing the motion, KFI contends that Cascade lacks standing to assert claims involving milk fiber yarns and also that a preliminary injunction should not be

ORDER ON MOTION FOR A PRELIMINARY INJUNCTION - 1

granted because Cascade is unable to meet the requirements set forth in *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008). Dkt. # 271, p. 3, 5.

After consideration of the motion and the opposition, the July 13, 2011 oral argument, and the balance of the record, the Court denies the motion for reasons set forth below.

# **I. BACKGROUND**

Cascade is a supplier of yarns, including yarns that contain "a mix of natural and synthetic fibers including mixes of cotton and acrylic and wool and acrylic." Dkt. #256, p. 5. KFI is an importer and distributor of yarns, some of which include "blended yarns containing different types of wool and milk protein fibers." Dkt. #271, p. 2. KFI maintains, and Cascade does not dispute, that Cascade does not sell yarn containing milk protein fibers. *Id.*

On July 8, 2010, Cascade filed a motion to enjoin KFI from "[m]arketing and labeling of the subject yarns as containing specified quantities of wool and/or cashmere fibers when those products do not contain the fibers identified on the labels…" Dkt. # 10, p. 2 (footnote omitted). Because both parties agreed to sign Continuing Guarantees that their knitting-yarns were accurately labeled, the motion was resolved without involvement of the Court. Dkt. # 256, p. 3. However, Cascade now alleges that KFI has "continued to ship mislabeled cashmerino-type yarns." *Id.*

In late 2010, Cascade became aware that KFI was marketing and selling yarn that KFI "represented contained 'Milk' fiber." Dkt. # 256, p. 6. Cascade hired Professor Kenneth D. Langley to test some of KFI's yarns that purported to contain milk. Dkt. # 256, p. 7. Each of the tests resulted in a finding that the yarn did not contain milk protein fiber. *Id.* at 7-8. In response, KFI consulted with Dr. Maureen Reitman. Dkt. # 271, p. 7. Dr. Reitman tested the subject yarns and concluded that the yarns contained milk protein fiber. *Id.*

## II. DISCUSSION

**A. Standing**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use of false designations of origin, false or misleading descriptions, or false or misleading representations in advertising and sale of goods and services. *Smith v. Montoro*, 648 F.2d 602, 603 (9th Cir. 1981). Subsections (A) and (B) of § 43(a)(1) have different standing requirements in the Ninth Circuit. In this case, Cascade asserts standing under subsection (B), alleging that "KFI mislabels certain acrylic blend yarns as containing milk protein fiber..." Dkt. # 256, p. 11. Specifically, Cascade argues that it has standing to bring this motion because "KFI competes with Cascade in the marketplace for yarn customers." Dkt. # 275, p. 4. Conversely, KFI asserts that Cascade does not have standing because Cascade does not sell milk fiber yarns. Dkt. # 271, p. 2.

To have standing under subsection (B), Cascade must show: "(1) a commercial injury based on a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to [Cascade's] ability to compete with [KFI]." *Jack Russell Terrier Network of N. Cal. v. American Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005). *See also Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995); *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987).

First, Cascade must establish a commercial injury. A commercial injury exists when a business claims diversion of sales or damage to its goodwill. *See, e.g., Paradise Canyon, LLC v. Integra Investments, LLC*, No. 07-1701, 2008 WL 746919 (D. Nev. 2008); *Collegenet, Inc. v. XAP Corp.*, 442 F. Supp. 2d 1070, 1076 (D. Or. 2006) (reasoning that there were genuine issues of material fact as to whether the plaintiff suffered the necessary commercial injury when the plaintiff alleged to directly compete in the market with the defendant); *cf. Barrus*, 55 F.3d at 470

(finding that as consumers, the plaintiffs suffered no commercial injury and thus lacked standing); *Jack Russell*, 407 F.3d at 1037 (without discussing the commercial injury claimed by plaintiffs of economic harm, the court reasoned that the plaintiff did not have standing because it did not compete with the defendant). Here, Cascade is a business and alleges commercial injury through "loss of market share and…loss of goodwill in the marketplace." Dkt. #256, p. 19.

Second, Cascade must demonstrate a competitive injury. The "parties must be competitors[1] in the sense that they 'vie for the same dollars from the same consumer group,' and the alleged misrepresentation must at least theoretically effect a diversion of business from the plaintiff to the defendant." *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1120 (C.D. Cal. 2010) (quoting *TrafficSchool.com, Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063, 1070 (C.D. Cal. 2008)). In determining whether the parties are competitors, and thus compete for sales from the same consumer group, courts focus heavily on the function of the subject product or service.[2]

---

[1] The term "competitors" has further been defined as "[p]ersons endeavoring to do the same thing and each offering to perform the act, furnish the merchandise, or render the service better or cheaper than his rival." *Fuller Bros., Inc. v. Int'l Mktg., Inc.* 870 F. Supp. 299, 303 (D. Or. 1994); *See also Summit Tech. v. High-Line Med. Instruments, Co.,* 933 F. Supp. 918, 937 (C.D. Cal. 1996); *Kournikova v. General Media Communications, Inc.*, 278 F. Supp. 2d 1111 at 1117.

[2] *See, e.g.*, *Kournikova v. General Media Communications, Inc.*, 278 F. Supp. 2d 1111, 1118 (C.D. Cal. 2003) (holding that the parties were competitors because they both sold merchandise specifically featuring Anna Kournikova over the internet, in magazines, and in stores and thus "compete[d] for the same dollars from the same target audience-namely men."); *Western States Wholesale, Inc. v. Synthetic Industries, Inc.*, 206 F.R.D. 271, 276 (C.D. Cal. 2002) (concluding that the parties were competitors even though one party manufactured welded mesh wire and the other manufactured polypropylene mesh in part because both products were "aimed at controlling expansion of cracks in concrete"); *cf. Fuller Bros., Inc. v. Int'l Marketing, Inc.*, 870 F. Supp. 299, 303 (D. Or. 1994) (finding the parties were not competitors where plaintiff manufactured a liquid formula to extend the life of tires while defendant manufactured a dry tire formula. The court reasoned that the products did not perform the same function because the dry formula, unlike the liquid formula, was a tire balancing product); *Brosnan v. Tradeline Solutions, Inc.*, 681 F. Supp. 2d 1094, 1100 (N.D. Cal. 2010) (reasoning the parties were not competitors when the plaintiff's "Apex Credit Repair" business offered services such as

In this case, the composition of the "consumer group" has not been resolved. Cascade argues that the consumer group consists of yarn customers, while KFI insists the relevant consumer group encompasses those who purchase milk protein fiber yarns. Dkt. # 275, p. 4; Dkt. # 271, p. 4. Assuming, without deciding, that Cascade has standing, the Court finds that Cascade still cannot meet the elements required for a preliminary injunction.

**B. Preliminary Injunction**

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A party seeking temporary injunctive relief must establish a likelihood of success on the merits, a likelihood of irreparable injury if injunctive relief is not granted, a balance of hardships favoring the movant, and an advancement of the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008) (internal citations omitted). In the alternative, the moving party must demonstrate that "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2010) (*quoting Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

  1. <u>Mandatory v. Prohibitory Injunction</u>

The standard of review for an injunction changes if the movant is seeking a mandatory injunction, as opposed to a prohibitory injunction. Specifically, when a party seeks a mandatory preliminary injunction, "courts should be extremely cautious about issuing a preliminary injunction." *Martin v. Int'l Olympic Committee,* 740 F.2d 670, 675 (9th Cir. 1984); *see also Stanley v. Univ. of S. Cal.,* 13 F.3d 1313, 1319 (9th Cir. 1994).

---

correcting information on credit reports or findings mortgage lenders and Defendants' business only provided credit piggybacking, which improves a person's credit).

A prohibitory injunction is one that "forbids or restrains an act." *Black's Law Dictionary* (9th ed. 2009). Moreover, while a prohibitory injunction preserves the status quo, a mandatory injunction "'goes well beyond simply maintaining the status quo Pendent lite [and] is particularly disfavored[.]'" *Anderson v. U.S.,* 612 F.2d 1112, 1114 (9th Cir. 1979) (quoting *Martinez v. Mathews,* 544 F.2d 1233, 1243 (5th Cir. 1976)). KFI maintains that the injunction necessarily involves the affirmative act of relabeling the products, and insists that Cascade is seeking a mandatory injunction. Dkt. # 271, p. 5. However, the preliminary injunction sought would merely restrict KFI's production and sale of the subject yarns. Because it is seeking a prohibitory injunction, Cascade need not meet the heightened standard required for a mandatory injunction.

2. Likelihood of Success on the Merits

To succeed on the merits of its false advertising claim, Cascade must prove the following:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.[3]

*Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir. 1997).

*a. Falsity*

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the

---

[3] The parties do not dispute that the labels at issue entered interstate commerce.

statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms,* 108 F.3d at 1139.

Cascade asserts that: (1) conveying that KFI's yarns contain milk protein fiber was literally false because the yarns do not contain milk protein fiber; and (2) the statement that the yarns contain "Milk" is not a proper name for the fiber because it "deceives the consuming public into believing that 'Milk' is a natural fiber." Dkt. # 256, p. 2.

Cascade relies on a declaration by their expert, Professor Kenneth D. Langley. Dkt. # 276. Professor Langley tested the yarns "…according to [American Association of Textile Chemists and Colorists] protocols 20-2007 Fiber Analysis: Qualitative and 20A-2008: Quantitative[.]" Dkt. # 193, p. 5. Professor Langley declares that he observed no milk protein fiber in Ella Rae Milky Soft, KFI Baby Milk, or Ella Rae Latte. Dkt. # 193, p. 7.

In response, KFI argues that its labels are not literally false and relies on a declaration by their expert, Dr. Maureen Reitman. Dkt. # 271. Dr. Reitman declares that "Mr. Langley's microscopic analysis is not a suitable scientific basis for determining that milk protein fibers are absent in the subject yarns." Dkt. # 203, p. 23. Specifically, Dr. Reitman insists that the methodology employed by Professor Langley was "not a direct measure of the specific composition, and is not a sufficient method for determining that milk protein is absent from the fibers of the three yarns[.]" Dkt. # 272, p. 3. Dr. Reitman conducted a chemical analysis, called micro-FTIR, on the yarns. *Id*. at p. 4. She concluded that "[b]ased on [her] analysis and direct testing…it [was her] opinion that Ella Rae Milky Soft, KFI Baby Milk, [and] Ella Rae Latte…contain fibers derived from milk or milk protein." *Id*.

The parties' moving papers and arguments reveal disputes of fact that preclude the Court from determining whether Cascade is likely to prevail on the merits of a Lanham Act false

advertising claim. First, the parties offer expert declarations providing contrary opinions on the fiber content of the subject yarns. Second, the experts contest the appropriate testing method in determining fiber content. "In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson,* 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Industries, Inc. v. Tapeprinter, Inc.,* 326 F.2d 141, 143 (9th Cir. 1964)). As such, the Court declines to resolve these factual disputes on such a limited record, and finds that Cascade has not established literal falsity.

       b. *Consumer Deception*

Consumer deception may be presumed when an advertisement is literally or facially false. *Time Warner Cable, Inc. v. DirecTV, Inc.,* 497 F.3d 144, 153 (2d Cir. 2007); *Balance Dynamics Corp. v. Schmitt Indus.,* 204 F.3d 683, 693 (6th Cir. 2000); *cf. Southland Sod Farms,* 108 F.3d at 1140 (noting that if an advertisement is not literally false, a plaintiff must show the advertisement misled, confused, or deceived consumers). When an advertisement is not literally false, but is misleading, "proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." *William H. Morris Co. v. Group W, Inc.,* 66 F.3d 255, 258 (9th Cir. 1995).

Cascade argues that labeling the fiber "Milk" is not accurate because the proper name is either "Azlon" or "Polylactide". Dkt. # 256, p. 4. Cascade further maintains that using the word "Milk" is deceptive because it "implies [that] the milk protein fiber is a natural product" although it is not natural. *Id*. at 5. KFI counters by arguing that Cascade provided no support for its contention. Dkt. # 271, p. 11. The Court agrees with KFI. Cascade has failed to meet its burden of demonstrating that a significant portion of consumers have been misled by the word

"Milk." Accordingly, Cascade is not entitled to a preliminary injunction on this basis of consumer deception.

The Court concludes that Cascade has failed to meet its burden of either showing literal falsity or consumer deception. As such, Cascade's motion for a preliminary injunction under the Lanham Act is denied.

### 3. WPLA, TPIA, & Washington Consumer Protection Act Claim

Cascade argues that although the Wool Products Labeling Act of 1939 ("WPLA") and the Textile Products Identification Act ("TPIA") do not "provide a private right of action, section 43(a) of the Lanham Act creates a method by which Cascade can remedy KFI's improper conduct." Dkt. # 256, p. 18. However, because the Wool Products Labeling Act, 15 U.S.C. § 68, *et seq.* (1990) states that its provisions "shall be enforced by the Federal Trade Commission[,]" Cascade cannot assert standing to sue under the Lanham Act. *See Warren Corp. v. Goldwert Textile Sales, Inc.,* 581 F. Supp. 897, 899 (S.D.N.Y. 1984) (finding that the plaintiff could not "create a private right of action under the Wool Act, nullifying the Act's own provisions, by asserting its standing to sue under the Lanham Act"). *See also Spring Mills, Inc. v. Ultracashmere House, Ltd.,* 532 F. Supp. 1203, 1221 n. 30 (S.D.N.Y. 1982), *rev'd on other grounds,* 689 F.2d 1127 (2d Cir. 1982) (concluding that "[a]n action between private parties under the Lanham Act is not the proper forum for enforcing the Textile Fiber Products Identification Act"). Accordingly, Cascade must meet the elements required under the Lanham Act, as set forth above.

Cascade also argues that a preliminary injunction is proper under the Washington Consumer Protection Act ("CPA") because "Washington courts recognize…[that] the CPA is analogous to the Lanham Act." Dkt. # 256, p. 23 (citing *Sleep Country USA, Inc. v. Northwest*

*Pac., Inc.*, No. 02-1923, 2003 WL 23842534, *7 (W.D. Wash. 2003)). The Court agrees with Cascade and finds that Cascade's claims under the CPA are substantially congruous with its Lanham Act claims. Therefore, Cascade's motion for a preliminary injunction under the CPA is also denied.

### III.   CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Plaintiff's third motion for a preliminary injunction (Dkt. # 256) is DENIED.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

Dated August 8, 2011.

_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE