UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASCADE YARNS, INC., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> KNITTING FEVER, INC., et al., <br><br> Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs, <br><br> v. <br><br> ROBERT DUNBABIN, SR., et al., <br><br> Third-Party Defendants. | CASE NO. C10-861RSM <br><br> ORDER ON MOTION RE: CONTINUING GUARANTEES |
| CASCADE YARNS, INC., <br><br> Plaintiff, <br><br> v. <br><br> EMMEPIEFFE S.R.L., a foreign limited liability corporation, <br><br> Defendant. | |

This matter is before the Court for consideration of a motion by plaintiff Cascade Yarns, Inc., ("Cascade") to modify the Order to File Continuing Guarantees entered at Dkt. # 223 on March 29, 2011. Dkt. # 406. Plaintiff seeks relief from the prohibition on disclosure of the Continuing Guarantee provided by defendant Knitting Fever, Inc., ("Knitting Fever") to government authorities, as well as "de-

ORDER - 1

designation" of certain documents designated as "confidential" by various defendants so that they may also be disclosed. Plaintiff asserts that it has uncovered evidence of fraudulent labeling of yarns in discovery, in the form of a discrepancy between fiber content of yarn listed on a packing slip, and that on the yarn label. *Id*. Defendant Knitting Fever has opposed the motion, largely on the basis that it had insufficient time to investigate the matter before Cascade filed this motion. Dkt. # 431. After consideration of the memoranda and the documents submitted by both sides, the Court has determined that the motion should be granted in part.

DISCUSSION

The parties and the Court are familiar with the issues in this case and they need not be set forth in detail. Plaintiff has filed this suit regarding the labeling of certain yarns sold by Knitting Fever, asserting that laboratory tests indicate that the fiber content is not what is represented on the label. Knitting Fever has filed counter-claims asserting that Cascade sells or has sold improperly labeled yarns. On March 29, 2011, to resolve a motion for a preliminary injunction filed by plaintiff, the parties stipulated to file Continuing Guarantees regarding the labeling of their yarns with the Federal Trade Commission. Dkt. # 223. The Order provided that neither party may use the other's Continuing Guarantee "for any purpose other than in connection with the execution of this Stipulation, except on further order of the Court." Dkt. # 223. The Order further provides that neither party may publicly comment on the Continuing Guarantee provided by the other party. *Id*.

The motion now before the Court concerns a particular yarn, named Queensland Leché ("Leché"). This yarn is purchased by Knitting Fever from an Italian company, defendant Emmepieffe S.r.l. ("Emmepieffe"), and then sold to knitting stores throughout the United States. Customs brokerage services for the Knitting Fever yarns entering the United States are provided by Jet Air Service, Inc. ("Jet Air"). According to exhibits attached to the Fourth Amended Complaint filed July 12, 2011, the Leché label states the fiber composition as 40% Extrafine Merino Wool, 30% Microfiber, 20% Milk Protein, and 10% Silk ("40-30-20-10"). Fourth Amended Complaint, Dkt. # 322, Exhibit N. According to the same exhibit, Cascade's principle Robert Dunbabin purchased two balls of Leché in vanilla color on an unspecified date, and had them shipped to a testing laboratory in Tiverton, Rhode Island for

ORDER - 2

analysis. *Id*. The laboratory report lists the fiber content of the yarn as 51.2% Acrylic and 48.8% Wool. *Id*. The laboratory found no silk in this yarn.

During discovery, Cascade obtained various documents[1] related to the Knitting Fever yarn shipments from both Emmepieffe and Jet Air. Although the documents produced by Emmepieffe were labeled "confidential," the Court agrees with plaintiff that routine business documents such as packing slips and invoices are not confidential, and thus shall GRANT Cascade's request to "de-designate" these documents.[2]

Plaintiff filed with this motion a copy of a document provided by Emmeipeffe which appears to be a packing slip. Declaration of Robert Guite, Dkt. # 408, Exhibit B (Exhibit B document"). The document, in Italian, is dated 5/08/2010 (August 5, 2010), and lists the quantities of four types of yarn shipped to Knitting Fever, including thirteen color lots of Leché. The fiber content of the Leché is listed as 50% Merino Wool, 30% Microfiber, and 20% Milk ("50-30-20-0"); there is no mention of silk. *Id*. Plaintiff also filed a copy of a document obtained from Jet Air which appears to be an invoice for the same shipment. Declaration of Robert Guite, Dkt. # 407, Exhibit D ("Exhibit D document"). The invoice, number 755 dated August 2, 2010, is for the same four types of yarn listed on the Emmepieffe packing slip, including 826.5 kilograms of Leché. The fiber content of the Leché is stated as 40% Merino, 30% Microfiber, 20% Milk fiber, and 10% Silk, or the same 40-30-20-10 content listed on the Leché label. *Id*. The discrepancy between the fiber content listed for the Leché yarn on the Emmepieffe packing slip and the invoice led to the filing of this motion. Cascade asserts that this discrepancy demonstrates that the yarn is mislabeled and that the actual content is what the Emmepieffe packing slip stated (and which the laboratory test found, assuming that microfiber and milk fiber are both included in

---

[1] Plaintiff generally uses the term "invoice" to apply to these documents, but many appear to be packing slips and perhaps order forms. The Court understands the term "invoice" to mean a bill for payment sent by the seller to the buyer, and the term "packing slip" to mean a document shipped with the goods. Since these documents were obtained from the seller, Emmepieffe, and the customs broker, the Court will refer to them as "packing slips" to distinguish them from the actual invoices, which are clearly labeled as such. *See, e.g,* Exhibit D to the Declaration of Robert Guit, Dkt. # 407.

[2] Plaintiff filed a copy of one document produced by Emmepieffe under seal pursuant to the "confidential" designation. Declaration of Robert Guite, Dkt. # 408, Exhibit B. This document was unsealed earlier by Order of the Court, rendering the "confidential" designation moot. Dkt. # 442.

ORDER - 3

the "acrylic" component measured by the laboratory.)

Knitting Fever, in response to this motion, stated that it had never seen the Exhibit B document or packing slip; it had only received the Exhibit D document, Invoice # 755, from Emmepieffe, along with a different packing slip. This invoice, with the 40-30-20-10 fiber content, matches the Leché label. The packing slip produced by Knitting Fever does not list fiber content. Declaration of Jeffrey Denecke, Dkt. # 432, Exhibit 2. Defendant suggests that the 50-30-20-0 fiber content listed on the Exhibit B packing slip "may be nothing more than a clerical mistake, in which the composition of another yarn manufactured by Emmepieffe, called Melone, was used instead of the composition of Leché." Knitting Fever's Opposition, Dkt. # 431, p. 3.

To support this explanation, Knitting Fever presents the declaration of manager Jeffrey Denecke, stating

> I spoke with Piero Ferrero of Emmepieffe and he described the document attached as Exhibit D [sic] to the Declaration of Robert Guite as an internal packing slip list used by Emmepieffe. When Emmepieffe ships goods to knitting Fever, Emmepieffe provides a different version of the packing list to Knitting Fever.
>
> I understand from my communications with Mr. Ferrero that the composition of Leche stated on the document attached as Exhibit D [sic] to the Declaration of Robert Guite is a clerical mistake in which the composition of another yarn manufactured by Emmepieffe, called Melone, was used instead of the composition of Leche.

Declaration of Jeffrey Denecke, Dkt. # 432, ¶¶ 6, 7.

Cascade asks that these statements be stricken as inadmissible hearsay. Plaintiff's Reply, Dkt. # 447, p. 2 n. 2. To the extent that these statements are offered for the truth of the matter asserted (namely that the fiber content on the Exhibit B packing slip is a mistake and represents Melone not Leché), the Court agrees and these statements shall be stricken.

The explanation offered by Knitting Fever that the 50-30-20-0 fiber content on the Exhibit B packing slip is a mistake is not credible in light of additional documents filed by Cascade in its reply. These documents are invoices and packing slips produced in discovery by Jet Air and Emmepieffe, and bear dates of May 27, 2010; May 26, 2010; August 3, 2009; September 21, 2011; October 13, 2011; and October 14, 2011. Reply Declaration of Robert Guite, Dkt. # 448, Exhibit A; Dkt. # 449, Exhibits

ORDER - 4

1  E, F, G. These invoices and packing slips all list the fiber content of Leché yarn as "50% merino, 30%
2  microfiber, 20% milk" and no silk. *Id.*

3    Although the Leché label presented by Cascade is undated, and thus cannot be tied to any
4  particular shipment, the discrepancy between the 40-30-20-10 fiber content on the label and the 50-30-
5  20-0 fiber content on numerous invoices and packing slips produced by Jet Air and Emmepieffe raises a
6  genuine concern regarding the Continuing Guarantee filed by Knitting Fever. Accordingly, Cascade's
7  motion shall be GRANTED IN PART. The Order to File Continuing Guarantees, filed at Dkt. # 223, is
8  MODIFIED to STRIKE the provision that neither party may use the Continuing Guarantee provided by
9  the other for any purpose other than in connection with the execution of the Stipulation. The provision
10 that neither party may publicly comment shall remain in place; but shall not prevent Cascade from
11 disclosing the fact of the Continuing Guarantee privately to the appropriate authority. The motion is
12 also GRANTED to the extent that packing slips and invoices designated as "confidential" by any party
13 or non-party are hereby "de-designated" and may be disclosed to the same authority.

14   DATED this 10 day of April 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

28 ORDER - 5