UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASCADE YARNS, INC., | CASE NO. C10-861RSM |
| Plaintiff/Counterclaim Defendant, | ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS AS TO RICO CLAIMS |
| v. | |
| KNITTING FEVER, INC., et al., | |
| Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs, | |
| v. | |
| ROBERT DUNBABIN, SR., et al., | |
| Third-Party Defendants. | |
| CASCADE YARNS, INC., | |
| Plaintiff, | |
| v. | |
| EMMEPIEFFE S.R.L., a foreign limited liability corporation, | |
| Defendant. | |

This matter is before the Court for consideration of defendants' motion for judgment on the

pleadings regarding plaintiff's claims under the Racketeer Influenced and Corrupt Practices Act

("RICO"), 18 U.S.C. § 1964(c), (d). Dkt. # 274. The motion was originally directed to the two RICO

claims asserted in plaintiff's Third Amended Complaint, Dkt. # 249. Plaintiff subsequently filed, with

leave of Court, a Fourth Amended Complaint ("FAC"), asserting the same two RICO claims. Dkt. #

ORDER - 1

322. The motion will accordingly be construed as directed to the FAC. For the reasons set forth below, the motion shall be granted.

FACTUAL BACKGROUND

The relevant facts of this matter are well-known to the parties and need only be briefly summarized. Plaintiff Cascade Yarns, Inc., ("Cascade") sells luxury yarns that contain mixes of wool with other natural fibers, including kid mohair, silk, and cashmere, through retailers and boutiques around the country. Defendant Knitting Fever, Inc., ("KFI") is one of Cascade's chief competitors. Cascade alleges that since at least 2006 and continuing through the present, KFI falsely labeled the quantities of natural fibers in its yarns. Specifically, Cascade alleges that KFI's "Cashmerino" brand yarns contain no cashmere or less cashmere than the cashmere quantity listed on the yarn labels.

In 2006, Cascade became aware of KFI's success with its Cashmerino lines. Cascade sent a sample of a KFI Cashmerino brand yarn to the Cashmere and Camel Hair Manufacturers Institute (CCMI) for fiber content analysis. *Id.* CCMI sent the sample to K.D. Langley Fiber Services (Langley) to conduct the testing. On May 26, 2006, Langley's report concluded that the sample contained no cashmere. Soon after the release of these results, they became generally known in the industry. Sion Elalouf, KFI's chief executive, contacted Cascade's legal counsel concerning the test results soon after their industry release. A series of communications followed between KFI, the other defendants, and Cascade representatives contesting the test report. Although Cascade and KFI customers sent more samples of KFI yarns to testing facilities in 2006, and those reports were consistent in finding no cashmere fibers, Cascade did not pursue legal action until this suit.[1]

In the spring of 2010, Cascade again sent numerous KFI yarn samples for fiber content analysis. Dkt. # 4, pp. 16-19. This time, according to Langley's analysis, although various amounts of cashmere

---

[1] . However, in 2008, a Pennsylvania yarn store, The Knit With, filed a similar suit against KFI in Pennsylvania. Cascade was subpoenaed to testify in that case in late 2009. The case is still pending.

ORDER - 2

were present in the samples, the samples contained less cashmere than the amount listed on KFI's labels. *See* Dkt. # 4, Ex. D. Both the 2006 and 2010 fiber content tests form the basis of Cascade's allegations in the amended complaint.

On these facts, Cascade asserts two RICO claims against all defendants except Emmepieffe SRL. In Count Five of the FAC, Cascade alleges that

> [o]n information and belief, after 1998, and continuing through the present, Mr. Elaouf has knowingly and willfully conducted the affairs of the enterprise described by this complaint, including but not necessarily limited to directing the actions of KFI, through a pattern of racketeering activities specified by 18 U.S.C. § 1961. This pattern of racketeering activity consists of a[t] least two racketeering acts, including without limitations, the following: . . .

FAC, Dkt. # 322, ¶ 144. The complaint then alleges specific acts of mail fraud, wire fraud, money laundering, and domestic and international travel as the racketeering acts which constitute the pattern of racketeering activity. *Id*., ¶¶ 144-145. Plaintiff further alleges that

> Cascade's business has been injured by reason of Mr. Elalouf's violation of section 1962(c) as alleged in this complaint because, as a result of the racketeering activities, Cascade's customers were deceived into purchasing KFI's products to the exclusion of Cascade's similar products.

*Id*., ¶ 150.

In Count Six of the FAC, plaintiff alleges a conspiracy under RICO:

> On a date more certainly known to Defendants, Defendants came to a mutual understanding to accomplish the unlawful plan to sell yarn products with false representations as to the products' fiber content as described in this Complaint. . . .

> Defendants knowingly and willfully entered into Defendants' mutual understanding by indicating, through their words and/or actions, their agreement to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise described in this Complaint through a pattern of racketeering activity.

*Id*., ¶¶ 153, 156. Defendants have moved for judgment on the pleadings as to both RICO claims.

ORDER - 3

DISCUSSION

## I. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 1(2c). Because "Rules 12(b)(6) and 12(c) are substantially identical," a motion for judgment on the pleadings is analyzed under the standard applicable to a motion to dismiss for failure to state a claim.[2] *Strigliabotti v. Franklin Resources, Inc,* 398 F. Supp. 2d 1094, 1097 (N.D.Cal. 2005). *See, Aldabe v. Aldabe*, 616 F. 2d 1089, 1093 (9th Cir. 1980).

Judgment on the pleadings is appropriate if, assuming the truth of all materials facts pled in the complaint, the moving party is nonetheless entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co*., 896 F. 2d 1542, 1550 (9th Cir. 1989). In addition to considering the allegations of the complaint the Court may also take into account materials to which it can take judicial notice. *Heliotrope Gen., Inc., v. Ford Motor Co.,* 189 F. 3d 971, 981 (9th Cir.1999*).* A Rule 12(c) motion for judgment on the pleadings may consequently be granted if, after assessing the complaint as well as matters for which judicial notice is proper, it appears "beyond doubt that the [non-moving party] cannot prove any facts that would support his claim for relief ..." *Morgan v. County of Yolo*, 436 F. Supp. 2d 1152, 1155 (E.D.Cal.2006), (quoting *R.J. Corman Derailment Services, LLC, v. Int'l Union of Operating Engineers, Local 150, AFL-CIO*, 335 F. 3d 643, 647 (7th Cir.2003)).

## II. RICO Claim under 18 U.S.C. § 1962(c)

---

[2] The primary distinction between a Rule 12(b)(6) motion and a motion for judgment on the pleadings is one of timing. Rule 12(b)(6) motions are typically brought before the defendant files an answer, while pursuant to Rule 12(c), a motion for judgment on the pleadings can only be brought after the pleadings are closed. *Edwards v. City of Goldsboro*, 178 F. 3d 231, 243 (4th Cir.1999).

ORDER - 4

Count Five of the FAC pleads a RICO claim under § 1962(c), which "prohibits a person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise through a pattern of racketeering activity." *Sybersound Records, Inc., v. UAV Corp.*, 517 F. 3d 1137, 1146 (9th Cir.2008). The statute confers a right of action upon "any person injured in his business or property" by a RICO violation. *Id.*

To state a claim under § 1962(c), the plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Walter v. Drayson*, 538 F. 3d 1244, 1247 (9th Cir.2008) (quoting *Odom v. Microsoft Corp.*, 486 F. 3d 541, 547 (9th Cir.2007). In addition to these elements, a plaintiff must plead that the defendants' racketeering activities were both the "but for" and the proximate cause of a concrete financial injury. *Resolution Trust Corp. v. Keating*, 186 F. 3d 110, 1117 (9th Cir. 1999).

Defendants' motion for judgment on the pleadings is based on the contention that Cascade lacks standing to pursue a § 1962(c) claim because it cannot satisfy the proximate cause requirement. Defendants point to a Supreme Court case holding that between direct competitors, the use of proceeds from a fraud to attract more customers by lowering prices is insufficient to state a RICO claim. *Anza v. Ideal Supply Corp.*, 547 U.S. 451 (2006). The central question for evaluating proximate cause under RICO is whether the alleged violation led directly to the harm suffered. *Id.* at 461. "The requirement of [a] direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Id.* at 460.

The Ninth Circuit Court of Appeals has formulated a non-exhaustive three-factor test for determining whether a defendant's RICO violation was the proximate cause of a plaintiff's injury. These include

ORDER - 5

1
2
3
4

(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to the defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.

5
6
7
8
9
10

*Sybersound Records*, 517 F. 3d at 1148 (quoting *Mendoza v. Zirkle Fruit Co.*, 301 F. 3d 1163, 1168-69 (9th Cir.2002). Here, the "direct victims" of the alleged fraud are defendants' customers, not Cascade, and as stated in footnote 1, at least one of them is pursuing its claims in the United States District Court for the District of Pennsylvania. Further, the amount of Cascade's damages from the alleged fraud is not only difficult to ascertain but highly speculative.

11
12
13
14
15
16
17
18

Even prior to *Anza*, the rule in the Ninth Circuit was that "[f]inancial losses, in and of themselves, are insufficient to confer standing under RICO." *Living Designs, Inc., v. E.I.Dupont de Nemours and Co.*, 431 F. 3d 353, 364 (9th Cir. 2005). "RICO does not provide a cause of action for all types of injury to property interests, but only for injuries resulting in 'concrete financial loss.'" *Diaz v. Gates*, 420 F. 3d 897, 898 (9th Cir. 2005). "Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." *Id.* at 900.

19
20
21
22
23
24
25
26
27

On this authority, the Court concludes that Cascade does not have standing to assert a claim under § 1962(c) because it has not sufficiently alleged a concrete injury. Indeed, Cascade has conceded as much in its opposition to the motion, and asks that its RICO claim be deemed one under § 1962(a) instead. "While KFI's Motion for Judgment on the Pleadings does a fair job of analyzing Cascade's claims under the standing requirements to bring a claim under 18 U.S.C. § 1962(c) claim [sic], it, however, fails to address Cascade's claims under the requirements for a violation of 18 U.S.C. § 1962(a)." Cascade's Opposition, Dkt. # 308, pp. 1-2.

28

ORDER - 6

1    RICO §1962(a) makes it unlawful for

2
3    any person who has received any income derived, directly or indirectly, from a pattern of
     racketeering activity . . . to use or invest, directly or indirectly, any part of such income,
4    or the proceeds of such income, in acquisition of any interest in, or the establishment or
     operation of, any enterprise which is engaged in, or the activities of which affect, interstate
5    or foreign commerce

6    18 U.S.C. § 1962(a).  Cascade asserts that its pleading as currently framed "embraces these allegations,"

7    but asks that if the Court should find otherwise it should be allowed to amend its pleadings.
8
9        To establish a violation of § 1962(a) the plaintiff "must allege facts tending to show that he or

10   she was injured by the use or investment of racketeering income." *Sybersound Records*, 517 F. 3d at

11   1149 (quoting *Nugget Hydroelectric, L.P. v. Pacific Gas & Electric Co.,* 981 F. 2d 429, 437 (9th Cir.

12   1992).  Alleging that a defendant reinvested "proceeds from alleged racketeering activity back into the

13   enterprise to continue its racketeering activity is insufficient to show proximate causation." *Id.*

14   (Citations omitted).  As one district court has observed, holding otherwise would mean that " 'almost

15   every pattern of racketeering activity by a corporation would be actionable under § 1962(a), and the

16
17   distinction between § 1962(a) and § 1962(c) would be meaningless.'" *Westways World Travel Corp. v.*

18   *AMR corp.*, 182 F. Supp. 2d 952, 960 (C.D.Cal.2001) (quoting *Brittingham v. Mobil Corp.*, 943 F. 2d

19   297, 305 (3d Cir.1991), *overruled on other grounds*, *Jaguar Cars, Inc., v. Royal Oaks Motor Car Co.,*

20   *Inc.,* 46 F. 3d 258 (3d Cir.1995).  Therefore, plaintiffs must allege an injury that is "separate and distinct
21
22   from the injury flowing from the predicate act" in order to plead a violation of § 1962(a). *Sybersound*

23   *Records*, 517 F. 3d at 1149.

24       The Court finds that nowhere in the FAC has Cascade alleged a claim under § 1962(a).  Nor will

25   the Court parse through the facts alleged therein to construct a § 1962(a) claim by implication.  Finally,

26   the Court shall deny the request to amend the complaint to state such a claim, as such amendment is
27

28   ORDER - 7

both futile and untimely.

The futility of amendment arises from plaintiff's inability to show an injury from the investment that is separate and distinct from the injury flowing from the predicate act. Where a plaintiff alleges that its "competitors used the proceeds from their . . . mail fraud to undercut [] prices," thereby gaining a competitive advantage, it has "not alleged any injury separate and distinct from the injuries incurred from the predicate act itself." *Sybersound Records*, 517 F. 3d at 1149.

Cascade seeks to have the Court apply the rule set forth in *Simon v. Value Behavior Health*, 208 F. 3d 1073 (9th Cir. 2000) instead of the *Sybersound Records* analysis, but that case is inapposite. In *Simon*, the defendant "fraudulently denied health benefit claims to patients and reinvested that income to build a group of preferred medical providers who undertook to eliminate outside providers." *Sybersound Records*, 517, 517 F. 3d at 1150. The plaintiff, a competitor, was injured not by the fraudulent denial of benefits to patients (the predicate acts), but rather by the separate enterprise that was created with investment of the income from the fraudulent activity. *Id*. Here, Cascade seeks to allege that defendants derived an unfair competitive advantage by using the proceeds of their predicate acts (mail fraud, wire fraud, and money laundering) to undercut prices and increase profits, not to create a separate enterprise. As set forth above, the reinvestment of proceeds from the racketeering activity back into the enterprise is insufficient to show proximate causation and cannot serve as the basis for a claim under § 1962(a).

As for timeliness of the request to amend, the Court notes plaintiff sought leave to file the FAC on June 11, 2011, noting the motion for June 24, 2011. Dkt. # 264. The Court granted the motion on July 12, 2011, after briefing on the RICO motion was complete and after plaintiff was put on notice of the pleading deficiencies in the TAC. Plaintiff's opposition memorandum, filed July 5, 2011, argued

ORDER - 8

that facts already alleged in the TAC supported a claim under § 1962(a), and asked for an opportunity to "better articulate" this theory. Dkt. # 308, p. 8. But instead of renewing the motion for leave to file a FAC to include a request to amend the RICO claims, plaintiff simply re-filed the same deficient claims in the FAC. Under these circumstances, and in light of the fact that the Court has already deemed plaintiff's theory of injury insufficient to support a claim under § 1962(a), the Court shall grant the motion for judgment on the pleadings, without leave to amend.

### III. RICO Claim under 18 U.S.C. § 1962(d)

Count Six of the FAC asserts a claim of conspiracy among the defendants to cause injury to plaintiff's business and property under § 1962(d). This section states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Because plaintiff lacks standing to plead violations under § 1962(c), it cannot allege the existence of a conspiracy to violate RICO. *Sanford v. MemberWorks, Inc.,* 625 F. 3d 550, 559 (9th Cir. 2010). Where a plaintiff fails to establish a claim for a substantive RICO violation, "any claim for conspiracy to commit that violation must necessarily fail as well." *Hill v. Opus Corp.,* —F. Supp. 2d—, 2011 WL 7092348 at *24 (C.D.Cal. 2011). Cascade has not argued otherwise. Accordingly, the motion for judgment on the pleadings shall be granted as to the RICO conspiracy claim.

//

//

//

//

//

//

ORDER - 9

1

2                                CONCLUSION

3        Defendants' motion for judgment on the pleadings as to plaintiff's two RICO claims (Dkt. # 274)

4
     is GRANTED and these claims are DISMISSED, without leave to amend.
5

6

7        Dated this 29th day of June 2012.

8

9

10       _____

11       RICARDO S. MARTINEZ
         UNITED STATES DISTRICT JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER - 10