UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASCADE YARNS, INC., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> KNITTING FEVER, INC., et al., <br><br> Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs, <br><br> v. <br><br> ROBERT DUNBABIN, SR., et al., <br><br> Third-Party Defendants. | CASE NO. C10-861RSM <br><br> ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTERCLAIMS UNDER THE LANHAM ACT AND STATE LAW |
| CASCADE YARNS, INC., <br><br> Plaintiff, <br><br> v. <br><br> EMMEPIEFFE S.R.L., a foreign limited liability corporation, <br><br> Defendant. | |

This matter is before the Court for consideration of one of plaintiff's two motions for partial summary judgment as to defendants' counterclaims. This motion addresses defendants' counterclaims for unfair competition and false advertising under the Lanham Act, 15 U.S.C. § 1125(a) and common law, as they apply to Cascade's own yarns. Dkt. # 719. Defendants Knitting Fever, Inc., and KFI

ORDER - 1

(together, "KFI defendants" or "KFI") have opposed the motion. The Court deems it unnecessary to hear oral argument on this motion. After careful consideration of the record and the memoranda of the parties, the Court has determined that the motion shall be granted in part and denied in part, as set forth below.

## BACKGROUND

The background of this dispute is well known to the parties, and only the points relevant to this motion shall be summarized here. Plaintiff Cascade Yarns, Inc., ("Cascade") sells luxury yarns, some of them a blend of wool with other natural fibers, including kid mohair, silk, and cashmere. The yarns, bearing the Cascade brand label, are sold through retail yarn shops and boutiques around the United States. Defendant Knitting Fever, Inc., ("KFI") is one of Cascade's chief competitors. KFI is a distributor of a number of brands of luxury yarn, including the popular Debbie Bliss line.

Cascade alleges in the Fourth Amended Complaint that sometime between July 2000 and June 2001, Mr. Sion Elalouf, the controlling shareholder and chief executive of KFI, "discovered two versions of a yarn called Cashmerino—one of which contained cashmere and the one which did not contain any cashmere." Fourth Amended Complaint ("FAC"), Dkt. # 322, ¶ 28. Mr. Elalouf, with all his experience in the yarn trade, was "unable to distinguish between the cashmere and non-cashmere versions of the yarn." *Id*., ¶ 29. Indeed, apart from "expert fiber analysis—something to which the majority of KFI's and Cascade's customers do not have access—it is virtually impossible to confirm the presence of cashmere is [sic] a spun yarn." *Id*. According to the complaint, following this discovery of the two versions of Cashmerino, Mr. Elalouf entered into an agreement with defendant Designer Yarns, LTD., a British company, to "substitute the 0% cashmere version of the product for the Cashmerino spun of 12% cashmere." *Id*., ¶ 31. The "0% cashmere" version was then marketed in a new line of Debbie Bliss yarns to be launched by Designer Yarns and distributed in the United States by KFI. *Id*., ¶¶ 33-34. The "non-cashmere" Cashmerino, with a label indicating the fiber content of 55% merino wool, 33% microfiber, and 12% cashmere, was introduced to the market at the U.S. trade show in June 2001. *Id., ¶¶* 35-39.

In 2006, Cascade "became aware of the extent of KFI's enormous success with its Cashmerino

ORDER - 2

line of yarn products." *Id.*, ¶ 40.  Apparently suspicious of the accuracy of the label on the yarn, Cascade sent a sample of a KFI Cashmerino brand yarn to the Cashmere and Camel Hair Manufacturers Institute ("CCMI") for fiber content analysis. *Id.*  CCMI sent the sample to K.D. Langley Fiber Services ("Langley") to conduct the testing.  On May 26, 2006, Langley "issued a report and concluded that '[n]o cashmere fibers were observed.'" *Id.*, ¶ 41.  The test results "showing that KFI's Cashmerino yarn products did not contain any cashmere became known" at the National Needlework Association trade show that took place June 10 through June 12, 2006. *Id.*, ¶ 43.  Sion Elalouf, KFI's chief executive, contacted Cascade's legal counsel concerning the test results soon after their industry release.  A series of communications followed between KFI, the other defendants, and Cascade representatives, contesting the May 26 test report. *Id.*, ¶¶ 44-47.  Specifically, "according to Mr. Elalouf, the type of cashmere that KFI uses will not show up in fiber tests." *Id.*, ¶ 44.  Counsel for KFI asserted that "fiber tests for cashmere content in spun yarn are inherently unreliable," and included with his response copies of test reports "purporting to show that Debbie Bliss Cashmerino yarns contained cashmere." *Id.*, ¶ 47.

In September 2006, "amidst the growing controversy in the hand knitting yarn community," Debbie Bliss sent a letter to retailers who sold Cashmerino throughout the United States, "represent[ing] that the Debbie Bliss branded yarns contain cashmere." *Id.*, ¶ 53.  In the meantime, a Pennsylvania yarn retailer, The Knit With, sent samples of Debbie Bliss Cashmerino, Baby Cashmerino, and Cashmerino Aran to Langley for further testing.  All three yarns are labeled as containing 12% cashmere.  Langley reported on July 18, 2006, that "[n]o cashmere fibers were observed in any of the samples." *Id.*, ¶¶ 61-63; *Id.*, Exhibit A.  A separate July 25, 2006 quantitative analysis report by Langley described the content of the Cashmerino Aran as 57.2% wool and 43.8% acrylic, with "no cashmere fibers [] observed in the sample." *Id.*, Exhibit B.

In April and May 2010, shortly before initiating this lawsuit, Cascade sent additional KFI yarn samples to Langley for fiber analysis.  Langley found no cashmere at all in the Debbie Bliss Cashmerino Astrakan and Louisa Harding Kashmir Aran yarns, despite labels stating that each contained 10% cashmere. *Id.*, ¶¶ 70-71.  Other yarns, according to Langley's analysis, contained cashmere, but in substantially lesser amounts than listed on KFI's labels. *Id.*, ¶¶ 72, 74-76, 78, 79-81.

ORDER - 3

In subsequent tests, Langley found no cashmere in samples of Louisa Harding Kashmir Baby yarn, Debbie Bliss Cashmerino Chunky yarn, Debbie Bliss Baby Cashmerino, and another sample of Debbie Bliss Cashmerino Astrakan. *Id*., ¶¶ 82-85. Additional 2010 fiber test results from Langley are detailed in the FAC at ¶¶ 86-95. These test results from the K.D. Langley lab led to the filing of the original and successive amended complaints in this action, all alleging that KFI yarn is mislabeled as to fiber content, and that such mislabeling constitutes a fraud and a violation of the Lanham Act, 15 U.S.C. § 1125(a), as well as the Washington Consumer Protection Act, RCW 19.86 and common law.

After the 2006 report of "no cashmere" in Cashmerino and other yarns, KFI began sending samples of its yarns, together with samples of Cascade's yarns, to different laboratories for testing. Samples were sent to SGS Cashmere Labs in the United Kingdom, and also to KFI's expert Adam Varley of Vartest Laboratories in New York ("Varley"). The test results from these laboratories, which appear in the record as exhibits to the expert reports of Adam Varley, indicated that a number of Cascades yarns differed in varying degrees from the fiber content listed on the labels. Declaration of Joshua Slavitt, Dkt. # 742, Exhibits 1-4. Most striking among these were the results of tests on Cash Vero and Cash Vero DK, Cascade's yarns which are labeled with the same composition as KFI's Debbie Bliss Cashmerino, namely 55% merino wool, 33% microfiber, and 12% cashmere. In a chart prepared at the direction of Cascade's counsel, the Varley test results for cashmere content in Cash Vero yarns show values of 13.76%, 5.93%, and 5.95%; while the Cash Vero DK samples were found to contain 7.81%, 8.43%, 8.06%, 6.25%, and 5.96% cashmere. Declaration of Robert Guite, Dkt. # 726, Exhibit Q, pp. 2-3. Other Cascade yarns varied from the content stated on the label, but not as widely as the Cash Vero test results. *Id*. At around the same time, SGS Cashmere Labs in the UK tested some Cash Vero yarn and found only 7.5% cashmere in a sample of Cash Vero DK tested on October 20, 2010.[1]

---

[1] A subsequent test of Cash Vero by SGS on February 16, 2011 found 16.4% cashmere in the sample. Dkt. # 742, p. 49. Tests by SGS of Cascade's Pastaza yarn, which is labeled as 50% wool and 50% llama, yielded results of 62.3% wool and 37.7% llama in one test, and 50.6% llama and 49.4% wool in another done two months later. *Id*., pp. 58-59. Mr. Langley got similarly variable results for two different color lots of Pastaza: 51.4% llama and 48.6% wool for one sample; 64.9% llama and 35.1% wool for another (a variance opposite to what SGS found). Dkt. # 726, Exhibit Q, p. 6. This variability in test results, both between labs and within the same lab, reinforces the Court's skepticism

ORDER - 4

Declaration of Joshua Slavitt, Dkt. # 742, Exhibit 1-D, p. 50.

On January 18, 2011, KFI filed an answer to Cascade's amended complaint, asserting five counterclaims against Cascade and third-party defendants (the Dunbabin family members) for false advertising, unfair competition, defamation and tortious interference with business relations, all based on the fiber test results and certain statements made by Cascade on its website and in the press. Answer and Counterclaims, Dkt. # 182. Cascade has amended the complaint several times, and the action is now proceeding on the Fourth Amended Complaint ("FAC"). In answering the FAC, the KFI defendants reassert the five counterclaims: a First Counterclaim for unfair competition and false advertising under the Lanham Act; a Second Counterclaim for unfair competition at common law; a Third Counterclaim for defamation; a Fourth Counterclaim for tortious interference with existing contractual relationships; and a Fifth Counterclaims for tortious interference with business expectancy. Answer and Counterclaims, Dkt. # 327.

Cascade has now moved for partial summary judgment on KFI's First and Second Counterclaims with respect to Cascade's statements about Cascade's own yarns.[2] Dkt. # 719. Contemporaneously with filing this motion, the parties filed cross-motions for summary judgment on Cascade's four claims under the Lanham Act and state law in the FAC. Dkt. ## 715, 717, 724. Shortly thereafter, KFI filed a motion to exclude Cascade's expert on fiber testing an analysis, Kenneth D. Langley. Dkt. # 823. Additional motions by both sides to exclude each others' experts followed, but these were not ready for consideration until October 26, 2012. Dkt. ## 826, 838, 839, 840, 841. The Court has ruled on the motion to exclude the reports and testimony of Cascade's designated expert Kenneth D. Langley, and has found them inadmissible for lack of reliability, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert"*). Dkt. # 865. Recognizing the reach of that Order, and in response to Cascade's motion to exclude KFI's expert on fiber tests Adam Varley, KFI has

___

regarding the reliability of the fiber test results presented in this case.

[2] KFI's counterclaims for unfair competition and false advertising with respect to Cascade's statements about KFI's yarns are addressed in a separate motion for partial summary judgment. Dkt. # 722.

ORDER - 5

withdrawn the offer of Mr. Varley as expert witness. Dkt. # 869. Cascade's motion to exclude his expert report and testimony has now been granted.

## DISCUSSION

### I. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The evidence is viewed in the light most favorable to the non-moving party. *Id.* However, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F. 3d 1216, 1221 (9th Cir. 1995). It should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to prevent summary judgment. *Triton Energy Corp.*, 68 F. 3d at 1221.

### I. Analysis

In the First Counterclaim for unfair competition and false advertising under the Lanham Act, KFI alleges in part that

> [i]n promoting Cascade's own knitting yarns, the Third Party Defendants have made false and misleading statements about KFI's yarns, including but not limited to the statements alleged herein.
>
> In addition, Cascade, in promoting its own knitting yarns, has made false and misleading statements about the content and/or country of origin of its own yarns.
>
> The false and misleading statements of the Third Party Defendants about KFI's yarns and Cascade's false and misleading statements about its own yarns have deceived some KFI customers or have the tendency to deceive a substantial segment of KFI's customers.

ORDER - 6

> . . . .
>
> The acts of Cascade and the Third Party Defendants constitute willful, deliberate, false, and misleading representations of fact as to the nature and characteristics of KFI's yarns and its own yarns. The false and misleading statements of Cascade and the Third Party Defendants regarding the fiber content of KFI's yarns and its own yarns constitutes false advertising.

Answer to FAC and Counterclaims, Dkt. # 327, ¶¶ 186-188, 191. The counterclaim complaint also alleges materiality of the statements and injury therefrom. *Id*., ¶¶ 189-90.

In the Second Counterclaim for common law unfair competition, KFI alleges in part:

> As set forth above, the Third Party Defendants are making false and misleading statements about KFI's yarns and Cascade is making false and misleading statements about its own yarns, including but not limited to the statements alleged herein.
>
> The Third Party Defendants' false and misleading statements about KFI's yarns and Cascade's statements about its own yarns were made in bad faith.
>
> The Third Party Defendants' false and misleading statements about KFI's yarns and Cascade's statements about its own yarns have deceived some KFI customers or have the tendency to deceive a substantial segment of KFI's customers.

Answer and Counterclaims, Dkt. # 327, ¶¶ 194-196. As with the First Counterclaim, the Second Counterclaim also alleges materiality of the statements and injury therefrom. *Id*., ¶¶ 197-199.

**A. Lanham Act Counterclaim**

KFI's First Counterclaim for unfair competition and false advertising arise under section 43(a) of the Lanham Act, which states in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading representation of fact, which . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). The elements of this claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either

ORDER - 7

by direct diversion of sales from itself to defendant or by a lessening of the good will associated with its products. *Southland Sod Farms v. Stover Seed Co*., 108 F. 3d 1134, 1139 (9th Cir. 1997).

An advertising claim may be either literally false on its face, or literally true but confusing or misleading to consumers. *Id*. KFI's assertion of literal falsity as to Cascade's statements about its own yarns relies on discrepancies between the label and various test reports. The Court has previously excluded the Langley test reports as unreliable under *Daubert*. In so ruling, the Court also noted that "accuracy and reliability of the test results are not an isolated problem with K.D. Langley Fiber Services" and that the problem "appears to be industry-wide." Order, Dkt. # 865, p. 10. KFI has now withdrawn one of its own fiber test experts, namely Adam Varley, who performed the fiber tests upon which KFI's allegations of falsity in the labeling of Cascade's yarns are based. As a consequence, KFI now has no evidence that Cascade's yarns are or were mislabeled as to fiber content. The Lanham Act counterclaim based on false labeling as to fiber content thus fails at the first step. Cascade's motion for partial summary judgment on the Lanham Act counterclaim shall accordingly be granted as to allegations of false statements of fiber content on Cascade's yarn labels.

A different result obtains, however, as to Cascade's label statements on country of origin. In answering the FAC, KFI defendants alleged that "many of Cascade's yarn labels fail to identify a country of origin as required by law." Answer and Counterclaims, Dkt. # 327, ¶ 180. Further, "Luxury Mohair, Bamboo Cotton DK, Dream Chunky, Mirage, [and] Zig Zag 4 Ply do not identify a country of origin on their labels." *Id*., ¶ 184. In arguing for summary judgment as to this aspect of the counterclaim, Cascade states,

> There is nothing false about the labels for the King Cole yarns sold by Cascade as yarns distributed by KFI that identify only the name and address of the supplier are alleged by Mr. Deneke, KFI's Operations Manager, to be properly labeled. Declaration of Robert Guite ("Guite Decl."), Ex. MM at 312:9-313:11, 315:7-318:5. Mr. Elalouf agreed that this evidenced proper identification of the country of origin. Guite Decl., Ex. V at 107:4-109:3.
>
> Indeed, KFI has not (and cannot) establish that the purported lack of a country of origin is misleading and, in fact, its own labels for its Katia yarns are just like Cascade's in that they identify the name and address of the supplier.

Cascade's Motion for Partial Summary Judgment, Dkt. # 719, p. 2. This is a curious argument; Cascade

ORDER - 8

is in essence pointing a finger at KFI and asserting that "I did no wrong because you did the same thing." That argument is legally ineffective as proof that Cascade's yarns were properly labeled as to country of origin. Moreover, the testimony of Mr. Deneke and Mr. Elalouf in the cited sections was not as Cascade represents it, and did not contend that yarns that simply identify the address of the supplier are properly labeled as to country of origin.

Mr. Denecke was shown several copies of labels of Katia yarns which are distributed by KFI. As to each he confirmed his understanding that the country of origin was Spain, based on the statement on the label. But he did not confirm that the yarn was in fact "properly labeled" as to country of origin based on the supplier's address; that was simply his assumption.

> Q: Do you know if the yarn in front of you and depicted in Exhibit 7 is made in Spain?
>
> A: I can only comment on what it says on the ball of yarn.
>
> Q: The ball of yarn identifies that the company that distributes it is located in Spain, correct?
>
> A. Well, they sell it to us.

Deposition of Jeffrey Denecke, Exhibit MM to the Declaration of Robert Guite, Dkt. # 726-19, p. 313.

The discussion immediately following that response is not cited by Cascade and contradicts Cascade's representations of Mr. Denecke's testimony:

> Q: Is it your testimony that exhibit —that the label depicted in Exhibit 37 properly identifies the country of origin?

*Id.* Counsel for KFI objected that this question was beyond the scope of the allowed testimony, so Mr. Denecke did not answer that question. *Id.* Counsel then re-phrased and asked,

> Q: Do you have an understanding as to what is required by applicable U.S. law as to the labeling for country of origin?

*Id.*, p. 314. Again KFI counsel objected, and after clarification of the scope of the question, Mr. Denecke responded,

> A. I don't say that I necessarily have an understanding of the exact requirements.

*Id.*

ORDER - 9

Nor did Mr. Elalouf, in the cited section of his deposition, confirm that "identify[ing] only the name and address of the supplier" constitutes proper labeling as to country of origin. When asked whether KFI has an opinion "as to whether the address of the distributor is sufficient to identify the country of origin," he did not answer the question. Deposition of Sion Elalouf, Exhibit V to the Declaration of Robert Guites, Dkt. # 856-4, p. 107. What he did state was that following Mr. Denecke's deposition, they looked up records to find the country of origin for the yarns about which he was questioned, and found that the country of origin listed in those documents is Spain. *Id*., p. 108. Based on those records, he stated, "So it would appear to me that on those particular labels, the country of origin is listed. That's how I see it." *Id*., pp. 108-109. Thus Mr. Elalouf did not testify that listing the address of the supplier or distributor is sufficient on its own to meet legal requirements for country of origin as Cascade asserts.[3]

Cascade repeats this argument, along with the mischaracterization of Mr. Denecke's and Mr. Elalouf's testimony, later in the motion, and adds legal citations:

> There is, likewise, no evidence that labels for the King Cole yarns are false because the[y] only identify the country of the yarn's supplier. Indeed, Mr. Denecke and Mr. Elalouf testified that Knitting Fever's labels that only identify the country of the yarns's supplier (like the King-Cole-made yarns distributed by Cascade) properly identify the yarn's country of origin. In any event, even if the King Cole yarns sold by Cascade lacked a designated country of origin, there is no evidence that this would constitute [a] false or misleading statement of fact necessary to establish a Lanham Act claim. Nor is there any evidence that the labels of the King Cole yarns actually deceived or had the tendency to deceive a substantial segment of its audience, that the deception is material or that KFI had been or is likely to be injured as a result of the false statement.

Cascade's Motion for Partial Summary Judgment, Dkt. # 719, p. 9, citing *Jarrow Formulas, Inc., v. Nutrition Now, Inc.,* 304 F. 3d 829, 835 n. 4 (9th Cir. 2002) (internal citations to the record omitted).

The cited section of *Jarrow* is simply a footnote setting forth the elements of a prima facie case of a Lanham Act violation, citing to *Southland Sod Farms v. Stover Seed Co*., 108 F. 3d at 1139. Cascade also includes a footnote to *Cashmere & Camel Hair Manufacturers Institute v. Saks 5th*

---

[3] Even if Mr. Elalouf had testified in the way that Cascade represents, his testimony would not constitute evidence that Cascade's yarns were properly labeled as to country of origin. Mr. Elalouf is not an expert on the legal requirements for labeling.

ORDER - 10

*Avenue*, 284 F. 3d 302, 312 (1st Cir. 2002). The cited page of that case discusses materiality of a false representation of fiber content, which is element (3) of the *Southland Sod Farms* formulation. In the footnote, Cascade asserts that "unlike a yarn product's fiber content, its country of origin does not relate to its 'inherent quality or characteristic' and, therefore, materiality cannot be shown without additional evidence, which KFI lacks." Cascade's Motion for Partial Summary Judgment, Dkt. # 719, p. 9. This is a conclusory allegation on Cascade's part, and fails to demonstrate entitlement to summary judgment.

Rule 56 requires, in relevant part, that

[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including deposition, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1). Cascade, as the moving party on KFI's counterclaim under the Lanham Act, has the burden of showing that there is no dispute of fact as to an essential element of such claim, and of supporting that assertion by citing to particular parts of the record. As shown above, the cited portions of the depositions of Mr. Denecke and Mr. Sion do not state what Cascade alleges they do. Beyond citing to these depositions, Cascade has made only the conclusory allegation that KFI has no evidence as to elements (2), (3), and (4) of its Lanham Act counterclaim. However, KFI properly included allegations as to each element in the First Counterclaim, and the burden on Cascade, as the movant here, is to cite to the record to demonstrate that KFI has no evidence as to those elements. Fed.R.Civ.P. 56(c)(1)(A).

KFI has argued that failure to designate country of origin is cognizable under the Lanham Act, as a per se violation. KFI's Opposition, Dkt. # 741, p. 2 n. 2, citing *Baden Sports, Inc., v. Kabushiki Kaisah Molten & Molten USA, Inc.,* 2007 WL 703394 at *4 (W.D.Wash. Mar. 2, 2007). That decision relied in part on a patent case from the United States District Court for the Southern District of New York, holding that failure to designate country of origin in violation of the Tariff Act (19 U.S.C. § 1304)

ORDER - 11

violates section 43 of the Lanham Act as a matter of law.[4] *Id*., citing *Alto Products Corp. v. Ratek Industries, Ltd.,* 40 U.S.P.Q. 1738 (S.D.N.Y. 1996). This Court accordingly concluded that "failure to mark the country of origin is actionable under the Lanham Act." *Id.* at *5. Cascade has failed to argue why this reasoning should not apply here.

There are genuine issues of material fact as to whether certain Cascade labels failed to properly designate country of origin, and whether that failure constitutes a violation of the Lanham Act. Cascade's motion for summary judgment as to this aspect of KFI's Lanham Act claim must accordingly be denied.

**B. Unfair Competition at Common Law**

KFI's Second Counterclaim asserts a claim of unfair competition under common law. In moving for summary judgment on this counterclaim, Cascade has set forth the elements, asserting that KFI is required to show that "(1) in the marketing of goods and services (2) [Cascade] made a representation relating to its goods (3) that is likely to deceive or mislead prospective purchasers (4) to the likely detriment of KFI." Cascade's Motion for Partial Summary Judgment, Dkt. # 719, p. 11, citing *Witham v. Clallam County Public Hospital District 2*, 2009 U.S. Dist. LEXIS 123754, *10 (W.D.Wash. 2009). Cascade argues that KFI cannot establish any mislabeling as to the fiber content of Cascade's yarns, which is correct, and the reason that KFI's unfair competition counterclaim based on Cascade's alleged mislabeling of fiber content shall be dismissed on summary judgment. However, Cascade has failed to address the country-of-origin issue with respect to this counterclaim, other than to refer in reply to the same deposition testimony considered above. Cascade's Reply, Dkt. # 770, p. 8. The Court has already rejected Cascade's contention that "KFI conceded that labeling that only identifies the country of the yarn's supplier . . . properly identify [sic] the yarn's country of origin." *Id*. Therefore Cascade's motion for summary judgment on this aspect of the unfair competition claims shall be denied, for the reasons set forth in the Lanham Act counterclaim analysis.

---

[4] KFI has not specifically alleged a violation of the Tariff Act in the counterclaims, but has alleged that the specified yarns are not properly labeled as to country of origin.

ORDER - 12

CONCLUSION

Cascade's motion for summary judgment (Dkt. # 719) on defendants' First and Second Counterclaims as they apply to Cascade's own yarns is GRANTED as to the claim that any Cascade yarn is mislabeled as to fiber content, and that aspect of the two counterclaims is DISMISSED. The motion is DENIED as to Cascade's labeling of certain specified yarns (Luxury Mohair, Bamboo Cotton DK, Dream Chunky, Mirage, and Zig Zag 4 Ply) as to country of origin.

Dated this 31st day of October 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 13