1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASCADE YARNS, INC.,<br><br>        Plaintiff/Counterclaim<br>        Defendant,<br><br>       v.<br><br>KNITTING FEVER, INC., et al.,<br><br>        Defendants/Counterclaim<br>        Plaintiffs/Third-Party<br>        Plaintiffs,<br><br>       v.<br><br>ROBERT DUNBABIN, SR., et al.,<br><br>        Third-Party Defendants. | CASE NO. C10-861RSM<br><br>ORDER ON MOTION TO DISMISS BY<br>DEFENDANT EMMEPIEFFE S.R.L. |
| CASCADE YARNS, INC.,<br><br>        Plaintiff,<br><br>       v.<br><br>EMMEPIEFFE S.R.L., a foreign limited liability<br>corporation,<br><br>        Defendant. | |

     This matter is before the Court for consideration of a motion to dismiss all claims, together with a motion for attorneys' fees, filed by defendant Emmepieffie S.R.L., an Italian company. Dkt. # 905. Plaintiff Cascade Yarns, Inc., ("Cascade") has opposed the motion. For the reasons set forth below, the motion shall be granted in part.

ORDER - 1

**BACKGROUND AND DISCUSSION**

1

2    The parties are familiar with the facts of this matter, and they need only be briefly summarized

3    here.  Plaintiff Cascade initiated this lawsuit May 24, 2010, with a complaint under the Lanham Act for

4    unfair competition, false advertising, and other claims based on alleged false labeling of yarns.  Among

5    other allegations, Cascade asserted that certain cashmere-blend yarns distributed by Knitting Fever, Inc.,

6    ("KFI")  did not contain the amount of cashmere stated on the label.  Plaintiff subsequently amended the

7    complaint to allege that certain yarns labeled as containing milk fiber did not contain milk fiber.  *See*,

8    Fourth Amended Complaint, Dkt. # 322, ¶¶ 61 - 104.   The claims asserted in the complaint were based

9    primarily on fiber tests done by one testing laboratory, Langley Laboratories, which indicated that fiber

10   content of certain yarns sold by defendants was not as represented on the labels.

11    The Fourth Amended Complaint against defendant Knitting Fever, Inc., Designer Yarns, Ltd.,

12   and several individual defendants (together, "the KFI defendants"), along with Emmepieffe, sets forth

13   six separate causes of action, all arising from the allegations of mislabeled yarn:  Count I, unfair

14   competition under the Lanham Act, 15 U.S.C. § 1125(a);  Count II, false advertising under the Lanham

15   Act, 15 U.S.C. § 1125(a); Count III, unfair competition in violation of the Washington Consumer

16   Protection Act, RCW 19.86; Count IV, unfair competition at common law; Count V, injury to business

17   and property in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"); and

18   Count VI, conspiracy to cause injury to business and property under RICO.  Only Counts I through IV

19   were asserted against "all defendants," including defendant Emmepieffe.  Both RICO claims were

20   dismissed early in the proceedings.  Order, Dkt. # 701.

21    KFI responded with counterclaims against Cascade under the Lanham Act for unfair competition

22   and false advertising, based on allegations that fiber tests indicated that certain Cascade yarns were also

23   mislabeled.   Answer to Fourth Amended Complaint, Third Party Complaint, and Counterclaims, Dkt. #

24   327, ¶¶ 178 - 200.  Cascade responded with a third-party complaint against Emmepieffe, supplier of the

25   alleged mislabeled yarns, for indemnity, contribution, breach of warranty, and breach of contract,

26   asserting in effect that any mislabeling of Cascades's yarns supplied by Emmepieffe was the fault of

27   Emmepieffe.  Answer to Counterclaims and Third-party Complaint, Dkt. # 332.

28    ORDER - 2

On October 18, 2012, the Court granted the KFI defendants' motion to exclude the testimony and reports of plaintiff's expert on yarn fiber testing, Kenneth D. Langley. Dkt. # 865.  On October 29, 2012, the Court issued an Order on the parties' cross-motions for summary judgment as to plaintiff's four remaining claims in this action. Dkt. # 886.  The Court denied Cascade's motion and granted the KFI defendants' two summary judgment motions, resulting in the dismissal of plaintiff's claims against all defendants, except for the claims and third-party claims against Emmepieffe, who had not joined in the summary judgment motions.  *Id*.  On October 30, 2012, the Court granted Cascade's motion to exclude the testimony and reports of defendants' expert on yarn fiber testing, Adam Varley.  Dkt. # 887. This resulted in an  Order dismissing those of defendants' counterclaims against Cascade which are based on alleged mislabeling of Cascade's yarns as to fiber content.[1]   Dkt. # 891.

Emmepieffe has now moved for dismissal of all claims against it.  As to the claims in the third-party complaint (indemnity, contribution, breach of warranty, and breach of contract), summary dismissal is appropriate, as these claims have been rendered moot by the dismissal of KFI's false labeling counterclaims.  As to the claims in the Fourth Amended Complaint based on mislabeling of yarn, Emmepieffe argues these claims should be dismissed for lack of evidence, just as they were dismissed against other defendants.

Cascade argues in opposition that it has evidence, independent of the excluded fiber test results, that Emmepieffe's "Leché" milk fiber yarn is mislabeled.  Cascade also disputes the exclusion of Professor Langley as an expert on milk fiber yarns, asserting that the tests he performed on the Leché yarn were scientifically sound.[2]  Declaration of Kenneth Langley, Dkt. # 908.  This aspect of Cascade's opposition represents a late and improper motion for reconsideration of the Order excluding Professor Langley's test reports, and will not be considered here.

Apart from the allegations based on fiber test results, Cascade asserts as follows in an effort to

---

[1] Other counterclaims by KFI against Cascade for defamation and tortious interference in business relations remain pending.  These do not involve defendant Emmepieffe.

[2], Professor Langley test results for Leché, which was labeled as containing 40% extrafine merino wool, 30 % microfiber, 20% milk protein and 10 % silk, reported  51.2% acrylic and 48.8% wool; no silk and no mild proteein fiber.  Fourth Amended Complalint, Dkt. # 322, ¶ 101.

ORDER - 3

demonstrate that Leché is mislabeled:

> Moreover, and perhaps more importantly, the allegedly mislabeled fibers in the *Leche* yarn are not blended "animal" fibers as to which this Court expressed reliability concerns in its *in limine* ruling and not **just** the "milk" fibers as to which the Court found Professor Langley unqualified. . . . Instead, *Leche* yarn is a blend of natural and synthetic fibers that was **also** alleged to contain less **silk** (and more wool and acrylic) than labeled.  Dkt. # 322 at ¶ 101; Dkt. # 448, Ex.A and 449, Exs. E, F, and G (demonstrating that the packing invoices for *Leche* identify its fiber content as 50% merino, 30% microfiber [acrylic], 20% milk and no silk, while its label claims that it contains 10% silk and only 40% merino).

Cascade's Opposition, Dkt. # 907, pp. 5-6 (internal citations to docket omitted, emphasis in original).

Cascade contends that "KFI never sought to preclude Cascade from introducing Professor Langley's fiber content test results related to mislabeling of acrylic, wool, or silk and, of course, the Court never excluded such evidence."  *Id*., p. 6.  This is incorrect.  Although testing for silk fibers was not specifically addressed, Professor Langley was excluded as an expert for all purposes.[3]  Cascade failed to move for reconsideration of the Order on Motion to Exclude Test Reports and Testimony of Kenneth D. Langley, and may not now argue that his Leché test results are admissible evidence of mislabeling.

Beyond Professor Langley's test results, Cascade offers only the packing slips and invoices referenced above as Dkt. ## 448 and 449, Exhibits E, F, and G.  These were produced by Cascade in support of a motion by Cascade to modify a prior Court ruling on disclosure of Continuing Guarantees filed by KFI.  Dkt. # 406.   The packing slips, apparently created by Emmepieffe for yarn sold to KFI, list the number of bags of various yarns in the shipping container, along with the fiber content of each.  The Leché yarn is listed as containing 50% merino, 30% microfiber, and 20% milk.  Dkt. # 448-1; 449-1, Exhibits E, F, G.  Cascade produced these earlier as a "smoking gun" to demonstrate that Leché is in fact mislabeled.  The Court did indicate in the Order addressing Cascade's motion that the discrepancies between the fiber content on the packing slips and the fiber content listed on a single label for Leché

---

[3] The Leché yarn is still a "blended" yarn containing animal fibers, as to which Professor Langley's tests were found unreliable.  According to the American Association of Textile Chemists and Colorists ("AATCC"), whose test methods Professor Langley used, silk is an animal fiber.  Declaration of Joshua Slavitt, Dkt. # 739, Exhibit 3.  Moreover,  Cascade's argument on his Leché test results (51.2% acrylic and 48.8% wool) presumes that either wool or acrylic fibers were incorrectly labeled as silk.   It is equally plausible that the opposite is true–that silk fibers were incorrectly identified as either wool or acrylic.

ORDER - 4

yarn "raise[] a genuine concern" regarding the Continuing Guarantee filed by KFI.  Order, Dkt. # 612, p.

5.  However, the packing slips are not evidence of mislabeling of any Leché yarn, because the labels

themselves were never offered as evidence.

Emmepieffe has moved for dismissal of all claims against it as moot or for lack of evidence.  The

Court has found the third-party claims by Cascade against Emmepieffe moot in light of the dismissal of

the counterclaims upon which they were based.  Cascade concedes that Emmepieffe is entitled to

dismissal of the third-party claims.  Cascade's opposition, Dkt. # 907, p. 7 n. 4.  Having reviewed the

evidence of mislabeling of Emmepieffe's Leché yarn offered by Cascade in response to the motion, the

Court has found no evidence which creates a factual issue as to that labeling.  Emmepieffe's motion to

dismiss shall accordingly be granted.

Emmepieffe has requested an award of attorneys fees pursuant to § 35 of the Lanham Act.  This

section provides that "[t] court in exceptional circumstances may award reasonable attorney fees to the

prevailing party."  15 U.S.C. §1117(A).  An action may be considered exceptional when the plaintiff's

case is " 'groundless, unreasonable, vexatious, or pursued in bad faith.' "  *Secalt S.A. v. Wuxi Shenxi

Construction Machinery Company Ltd.*, 668 F. 3d 677, 687 (9th Cir. 2012) (quoting *Stephen W. Boney,

Inc., v. BoneyServs.*, 127 F. 3d 821, 827 (9th Cir. 1997).  The *Secalt* court noted that "the line

distinguishing exceptional cases from non-exceptional cases is far from clear" and that it is "especially

fuzzy where the *defendant* prevails due to plaintiff's failure of proof.*" Id.*  An action under the Lanham

Act may be exceptional where the plaintiff has "no reasonable or legal basis to believe in success on the

merits." *Id.*

This Court finds that Cascade's direct and third-party claims against Emmepieffe were not

groundless or so unreasonable as to render this an exceptional case.  The direct claims were based up

test reports which Cascade—and the Court—assumed to be valid, until their reliability was questioned

by KFI and found lacking.  It cannot be said that Cascade had no reasonable basis to believe it would

succeed on the merits, at least up to the point where its expert was excluded.  And while the

reasonableness of Cascade's third-party claims is less apparent, the Court declines to award Emmepieffe

prevailing party status for the purpose of exceptionality under the Lanham Act, as the third-party claims

ORDER - 5

were not actively litigated and simply melted away with the dismissal of KFI's counterclaims.  It is unfortunate that this small family-run company in Italy became embroiled in this acrimonious dispute between these competitors, but the unfairness of that involvement is not a legal basis for the award of fees. Counsel for Emmepieffe is to be commended, at least, for keeping those fees to a minimum.

## CONCLUSION

Emmepieffe's motion to dismiss (Dkt. # 905) is GRANTED IN PART.  The motion is GRANTED as to dismissal, and this defendant is DISMISSED from this action.  The motion is DENIED as to an award of fees under §35 of the Lanham Act.

Dated this 7th day of February 2013.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 6