UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASCADE YARNS, INC., a Washington corporation, <br><br> Plaintiff, <br><br> v. <br><br> KNITTING FEVER, INC., a New York corporation, et al., <br><br> Defendants. | CASE NO. C10-861RSM <br><br> ORDER ON MOTION FOR RECONSIDERATION |

This matter is before the Court for consideration of a motion for partial reconsideration filed by plaintiff Cascade Yarns, Inc. ("Cascade"). Dkt. # 900. Cascade requests that the Court reconsider its Order dated October 29, 2012, dismissing Cascade's claims for unfair competition, as to two specific yarns. Dkt. # 886. The Court directed defendants to file a response to the motion, and the matter has now been fully briefed and is ready for consideration. For the reasons set forth below, plaintiff's motion shall be denied.

DISCUSSION

Motions for reconsideration are disfavored. The Court "will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." Local Rule CR 7(h)(1). In the Order which Cascade seeks to challenge, the Court dismissed Cascade's Lanham Act and other claims for lack of evidence of mislabeling, following the disqualification of Cascade's expert

ORDER - 1

on fiber testing. Order on Cross Motions for Summary Judgment, Dkt. # 886.  In moving for reconsideration, Cascade contends that "it was manifest error for the Court to grant summary judgment of Cascade's Lanham Act claims without considering evidence in the record (other than fiber content testing evidence) demonstrating the mislabeling of *Leche* and *Silky Wool*." Cascade's Motion for Partial Reconsideration, Dkt. # 900, p. 2.  The two yarns shall be addressed separately.

For independent evidence regarding the mislabeling of *Leche* yarn, Cascade points to the earlier Order on Motion re: Continuing Guarantees (Dkt. # 612), arguing that "Cascade submitted evidence—and this Court earlier recognized—that *Leche* contained no silk, let alone the 10% claimed." Dkt. # 900, p. 3.  The earlier Order addressed a discrepancy in fiber content listed on packing slips and invoices for several shipments of *Leche* yarn which were obtained by Cascade during discovery.  Some matched the fiber content on the label and some did not.  According to exhibits attached to the Fourth Amended Complaint, filed July 12, 2011, the Leché label states the fiber composition as 40% Extrafine Merino Wool, 30% Microfiber, 20% Milk Protein, and 10% Silk ("40-30-20-10"). Order, Dkt. # 612, p. 2.  On a shipping document printed in Italian and dated August 5, 2010, the fiber content of *Leche* yarn is listed as 50% Merino Wool, 30% Microfiber, and 20% Milk ("50-30-20-0"); there is no mention of silk. *Id*., p. 3.  On an invoice dated August 2, 2010, which the Court noted "appears to be an invoice for the same shipment," the fiber content for the *Leche* yarn is stated as 40% Merino, 30% Microfiber, 20% Milk Fiber, and 10% Silk, or the same 40-30-20-10 content listed on the *Leche* label.  *Id*.

In ruling on Cascade's motion, the Court stated,

> Although the *Leche* label presented by Cascade is undated, and thus cannot be tied to any particular shipment, the discrepancy between the 40-30-20-10 fiber content on the label and the 50-30-20-0 fiber content on numerous invoices and packing slips produced by Jet Air and Emmepieffe raises a genuine concern regarding the Continuing Guarantee filed by Knitting Fever. Accordingly, Cascade's motion shall be GRANTED IN PART.

Order re: Motion for Continuing Guarantees, Dkt. # 612, p. 5.  Contrary to Cascade's assertion, this ruling does not constitute independent evidence that the *Leche* yarn was in fact mislabeled.  As the Court noted, there was no evidence tying the packing slips and invoices to an actual label.  While the discrepancy between a label, the invoices,  and packing slips  "raise[d] a genuine concern," this did not constitute a finding of fact that any *Leche* label was false.

ORDER - 2

Moreover, Cascade's motion regarding the continuing guarantee was based not only on the discrepancy between labels, packing slips, and invoices, but also on the now-excluded fiber tests. In introducing the motion, Cascade stated,

> One of the invoices was sent to KFI and lists the fiber composition consistent with Professor Langley's report. The other invoice was provided to the customs broker for Homeland Security. The fiber content of *Leche* identified on this invoice is inconsistent with Professor Langley's findings and the invoice sent to KFI but identical to the composition listed on the label itself.

Cascade's Motion to Modify Order re: Continuing Guarantees, Dkt. # 406, p. 2. Cascade asserted that the invoice stating that the *Leche* yarn contains 50% wool and no silk was "consistent with the fiber analysis conducted by Professor Langley which found *Leche* to be 48.8% wool and 0% silk. Dkt. No. 322-55." *Id*., p. 3. Cascade's citation is to the Langley laboratory fiber test report which was later excluded, although the exhibit number provided by Cascade is incorrect. The cited exhibit shows that the Langley laboratory reported the fiber content of *Leche* as 51.2% Acrylic and 48.8% Wool. Dkt. # 322-14, p. 2.

The Court's Order acknowledged Cascade's argument, noting that

> The discrepancy between the fiber content listed for the *Leche* yarn on the Emmepieffe packing slip and the invoice led to the filing of this motion. Cascade asserts that this discrepancy demonstrates that the yarn is mislabeled and that the actual content is what the Emmepieffe packing slip stated (and which the laboratory test found, assuming that microfiber and milk fiber are both included in the "acrylic" component measured by the laboratory).

Order on Motion re: Continuing Guarantees, Dkt. # 612, pp 3-4. The Court thus acknowledged that Cascade's argument was bolstered by the fiber test results, and their agreement with the fiber content as listed on the Emmepieffe packing slip. Cascade may not now point to this Order as evidence, independent of fiber testing, that the *Leche* yarn was mislabeled. Without the fiber test component of Cascade's argument, the only evidence in the record is that there were two different versions of the fiber content of *Leche* found in various packing slips and invoices. As either one of these versions could have been correct, this discrepancy does not alone constitute evidence of mislabeling. Cascade's motion for reconsideration as to the *Leche* yarn shall be denied.

With respect to *Silky Wool*, yarn, Cascade asserts that "Cascade submitted evidence other than

ORDER - 3

fiber testing demonstrating that *Silky Wool* contained undisclosed nylon fibers." Motion for Partial Reconsideration, Dkt. # 900, p. 4.  This argument refers to "admissions" by defendant Knitting Fever, Inc., ("KFI") in its answer.  Specifically, KFI stated,

> 108. Answering Defendants admit that in the spring of 2008 Robert A. Dunbabin, Jr. telephoned Mr. Elalouf alerting him to the discovery that the product called Elsabeth Lavold Silky Wool contained 20% or more of the synthetic fiber Nylon yet was labeled 65% wool and 35% silk, that Mr. Elalouf volunteered that the product was sourced from VVG, that Mr. Dunbabin expected him to correct this mislabeling, that Mr. Elalouf responded by asking if Cascade wanted KFI, Inc. to test all of its yarns, and that Mr. Dunbabin responded by stating that appropriate testing should be undertaken by KFI, Inc. Answering Defendants deny the balance of the allegations in paragraph 108 of the Fourth Amended Complaint.

> 109. Answering Defendants admit that less than two weeks later Mr. Elalouf, having confirmed that the product was mislabeled as a result of an unannounced change in the formulation of a component of the yarn by a supplier to the yarn manufacturer, telephoned Mr. Dunbabin and stated that the labeling issue concerning Elsabeth Lavold Silky Wool would be publicly corrected, and that KFI, Inc. informed stores that what had been sold to them as a natural fiber was actually a synthetic fiber blend. Answering Defendants deny the balance of the allegations in paragraph 109 of the Fourth Amended Complaint.

Defendants' Answer to Amended Complaint, Dkt. # 327.  Cascade contends that these answers constitute evidence, independent of fiber tests, that *Silky Wool* was in fact mislabeled.   Cascade previously moved for judgement on the pleadings on the basis of this same contention, and the motion was denied.  Dkt. # 861.

In responding to Cascade's motion, defendants note that Cascade itself also admitted that a number of its own yarns were mislabeled. Defendants argue that

> to the extent Defendants' admission that *Silky Wool* was mislabeled is sufficient to create an issue of fact as to falsity, the Court should also vacate its ruling with respect to Cascade's 220, 128, and 109 Tweed, Baby Folie, Bouton Colour, Eden, Sissi, Inspire, Bulky Leisure and Bulky Leisure HD, Mohair Kiss, Etoile, Fiordo, and King Cole Luxury Mohair.

KFI Defendants' Response, Dkt. # 924, p. 6.

While there is some logic behind defendants' proposal, the Court declines to recognize what is in essence an untimely motion for reconsideration by defendants.  Instead, the Court notes that the "admissions" by both parties were based on fiber test results which have subsequently been excluded from consideration as unreliable.   The Court therefore cannot accept either party's statements with

ORDER - 4

respect to their own yarns as evidence that the yarns were in fact mislabeled.

Cascade's motion for reconsideration (Dkt. # 900) is accordingly DENIED. The KFI defendants' motion to strike certain statements in Cascade's reply (Dkt. # 927) is also DENIED.

DATED this 11th day of April 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 5