UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASCADE YARNS, INC., a Washington Corporation<br><br>Plaintiff,<br><br>    v.<br><br>KNITTING FEVER, INC., KFI, INC., DESIGNER YARNS, LTD., SION ELALOUF, JAY OPPERMAN, DEBBIE BLISS, EMMEPIEFFE SRL, and DOES 1-50,<br><br>Defendants,<br><br>    v.<br><br>ROBERT A. DUNBABIN, SR., JEAN A. DUNBABIN, ROBERT A DUNBABIN, JR., and SHANNON M. DUNBABIN,<br><br>Third Party Defendants. | NO.  C10-861 RSM<br><br><br>ORDER ON MOTIONS |

THIS MATTER comes before the Court upon numerous motions by Plaintiff Cascade

Yarns, Inc ("Cascade") and one by Defendants Knitting Fever, Inc., KFI Inc., Sion Elalouf, and

Jay Opperman (collectively, "KFI"): KFI's Motion for Summary Judgment (Dkt. # 1049) as well

as Cascade's Motion for Judgment on the Pleadings (Dkt. # 1055), Motion for Summary

Judgment (Dkt. # 1090), Motion for Relief from Deadlines (Dkt. # 1115), Motion to Seal (Dkt. #

1124), Motion for Evidentiary Sanctions (Dkt. # 1131), and Motion to Strike (Dkt. # 1132). The

Court heard oral argument on the pending motions and received limited supplemental briefing by

KFI in response to legal authority newly raised by Cascade. Having considered the parties' filings and supportive exhibits, oral arguments, and the relevant remainder of the extensive record in this case, the Court denies Cascade's motions and grants summary judgment in favor of KFI in part for the reasons stated herein.

## BACKGROUND

The extensive factual and procedural history of this lawsuit has been well-documented (*see, e.g.*, Dkt. ## 987, 962, 891) and only those details relevant to the instant disputes shall be summarized herein. Cascade, a seller of luxury yarns, commenced this lawsuit on May 24, 2010. Cascade's initial complaint alleged that certain yarns sold by one of its competitors, KFI, were mislabeled as to fiber content, and that such mislabeling constitutes false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and the Washington Consumer Protection Act ("CPA"), RCW 19.86. Dkt. # 2. KFI counterclaimed against Cascade and its principals as third-party defendants for defamation and false advertising and also claimed that certain Cascade yarns were mislabeled as to fiber content and/or country of origin. Dkt. # 182.

On October 29, 2012, after excluding the report and testimony by Plaintiff's fiber expert for lack of reliability (Dkt. # 865), the Court granted Defendants' motions for summary judgment and dismissed all claims asserted by Cascade. Dkt. # 886. The Court subsequently granted in part Cascade's several motions for summary judgment, dismissing KFI's unfair competition counterclaims based on alleged mislabeling as to fiber content (Dkt. # 891) and all counterclaims concerning Cascade's allegedly false statements except those based on KFI's milk fiber yarns (Dkt. # 962). As a consequence, the only claims remaining in this lawsuit were (1) KFI's counterclaims under the Lanham Act and Washington common law based on country-of-origin

mislabeling of certain Cascade yarns ("country of origin claims"), and (2) KFI's counterclaims, arising exclusively from Cascade's "Milk Protein Fiber Hype" posting on its website, for unfair competition under the Lanham Act and Washington common law, defamation, and tortious interference with contract and business expectancies ("defamation claims").

Shortly thereafter, Cascade filed an entirely new action, *Cascade Yarns, Inc. v. Knitting Fever, Inc. et al.*, C13-674RSM ("*Cascade II*"), in which it asserted claims under the Lanham Act and state law based on the country of origin mislabeling of certain Katia and Mondial yarns sold by KFI. *Cascade II*, Dkt. ## 1, 14. Finding the two actions to involve mirror-image claims and crediting Cascade's representation that consolidation would occasion only a brief delay, the Court granted Cascade's motion to consolidate the lawsuits. Dkt. # 987. After granting Plaintiff's request for issuance of Letters Rogatory (Dkt. # 1005), the Court modified the scheduling order and moved the trial date on multiple occasions at Cascade's request to accommodate its professed needs for international discovery. *See, e.g.*, Dkt. ## 998, 1017, 1070.

The currently pending dispositive motions – essentially cross-motions for summary judgment – pertain exclusively to Plaintiff's *Cascade II* claims against KFI under the Lanham Act, the CPA, and Washington common law for false advertising related to the country of origin labels on KFI's Katia and Mondial yarns. *See* Dkt. ## 1049, 1055, 1090. On January 30, 2015, the Court entered an Order granting KFI's request to exclude expert reports and testimony of Dr. Radhakrishnaiah Parachuru and Mr. Larry Stewart, on which Cascade relied for these claims, as lacking in adequate scientific basis and relevance, respectively. Dkt. # 1112. The Court also denied Cascade's motion to exclude expert opinions, testimony, and evidence related to KFI's

defamation counterclaims, as well as its request to exclude alleged hearsay evidence offered by KFI relating to the country of origin of its Katia and Mondial yarns. *Id.*

Meanwhile, the Letters Rogatory issued by this Court were considered by tribunals in Spain and Italy. The Spanish tribunal initially ordered discovery of Katia to proceed but, following KFI's filing of a motion for reconsideration, subsequently denied the relief that Cascade sought in consideration of Spain's reservations in accordance with Article 23 of the Hague Convention.[1] *See* Dkt. # 1115-7, ¶ 12. On the eve of this Court's decision on pending summary judgment motions, the Italian tribunal ordered Mondial to produce a witness for examination. *See* Dkt. # 1113. KFI had previously admitted that three of its Mondial-produced yarns – Mondial Giava, Papillon, and Pizzo Lux — were sold by KFI in limited quantities in 2012 without labels properly reflecting their Chinese origins. *See Cascade II*, Dkt. # 27 ("KFI's Answer"), ¶¶ 27, 47. Cascade now asserts that Mondial's designated witness, Roberto Consolati, testified on February 4, 2015 that another supposed Italian yarn briefly sold by KFI in the United States, Mondial Vello D'Oro, was mislabeled as to its Turkish origin. Dkt. # 1115-1, ¶ 3.

In consideration of the Italian tribunal's grant of limited discovery, the parties stipulated to extend pending dispositive motions deadlines. Dkt. # 1113. Pursuant to the parties' agreement, the Court ordered the parties to file supplemental briefs to their summary judgment motions on March 16, 2015 and responses on March 23, 2015. Dkt. # 1114. Meanwhile, Cascade filed a Writ of Appeal of the Spanish tribunal's order on January 30, which it estimates will take six to eight months to resolve. *See* Dkt. # 1115-7, ¶ 14. Cascade's Motion for Relief from Deadlines moves

---

[1] On October 16, 2014, the Court denied Cascade's Motion for Temporary Restraining Order and Anti-Suit Injunction, instructing the parties to respect the decisions of the Italian and Spanish authorities on document and witness production. Dkt. # 1082.

the Court to suspend all deadlines pending the Spanish Court of Appeal's determination. Dkt. # 1115.

Finally, on March 26, 2015, Cascade filed a Motion for Imposition of Evidentiary Sanctions. Dkt. # 1131. Following the filing of *Cascade II* in April 2013, Cascade requested extensive documentary production related to the sale of accused Katia and Mondial yarns from KFI. Cascade now alleges that in the emails produced by Mondial attendant to Consolati's February 2015 deposition, it discovered two email exchanges that contained sales projections for five Mondial yarns, which were not included in KFI's earlier documentary productions and which KFI admits it no longer has in its possession. *See* Dkt. ## 1122-4, 1122-5, 1117. Arguing that it can have no idea how many other such emails were destroyed by KFI that are now relevant to Cascade's country of origin claims, Cascade asks the Court to draw an adverse inference against KFI at trial on Cascade's false advertising claims.

This case is currently set for trial before a jury on May 18, 2015. *See* Dkt. # 1109. On April 13, 2015, the Court heard oral argument on the pending motions, all of which are addressed in the instant Order.

## DISCUSSION

### I.  Dispositive Motions

The parties' dispositive motions seek judgment on Cascade's claims under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Washington state law based on KFI's alleged mislabeling of certain Katia and Mondial yarns as to their country of origin. KFI seeks dismissal of both the Lanham Act and state law claims on the grounds that Cascade is barred from seeking monetary recovery on account of its failure to proffer evidence of actual injury and that it is barred from

injunctive relief on account of its unclean hands and KFI's voluntary cessation of mislabeling. Dkt. # 1049. Through its Motion for Partial Judgment on the Pleadings, Cascade seeks a determination as to liability on its Lanham Act and CPA claims for the sale of three Mondial yarns that KFI admits were improperly labeled as to country of origin in 2012. *See* Dkt. # 1055. Cascade also moves for entry of partial summary judgment establishing KFI's liability as to all the impugned Katia and Mondial yarns. *See* Dkt. # 1090.

### A.  Legal Standards

Summary Judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In order to defeat summary judgment, the nonmoving party must "produce[] enough evidence to create a genuine issue of material fact." *Nissan Fire*, 969 F.2d at 1103. By contrast, the moving party is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment should be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Id.* at 323. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to prevent summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

Material facts are those that may affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a motion for

summary judgment, the court does "not weigh the evidence or determine the truth of the matter but only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco*, 41 F.3d 547, 549 (9th Cir. 1994) (internal citations omitted). Inferences drawn from underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F.3d 337, 345 (9th Cir. 1995).

A motion for judgment on the pleadings is appropriately filed "[a]fter the pleadings are closed—but early enough not to delay trial…." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is functionally equivalent to a Rule 12(b)(6) motion and analyzed under the standard applicable to a motion to dismiss for failure to state a claim. *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2012 WL 2565067, \*2 (W.D. Wash. 2012). However, where, as here, the court looks beyond the pleadings to resolve an issue, it converts a Rule 12(c) motion into one for summary judgment under Rule 56, considered in accordance with the legal standards applicable thereto. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

**B. Lanham Act Claims under 15 U.S.C. § 1125(a)**

Cascade's Amended Complaint states two counts under 15 U.S.C. § 1125(a) for unfair competition and false advertising, respectively, arising out of KFI's allegedly false and misleading statements about the country of origin of certain Katia and Mondial yarns imported and sold by KFI in the United States. *See* Case No. 13-675, Dkt. # 14 ("FAC"), ¶¶ 53-64. KFI correctly argues that these two asserted causes of action are duplicative, as the Lanham Act

contains no general cause of action for "unfair competition." Rather, the Act "applies to two

different types of unfair competition in interstate commerce[:]" "passing off" goods under the

name or mark of another and "false advertising." *Lamothe v. Atl. Recording Co.*, 847 F.2d 1403,

1406 (9th Cir. 1988). As Cascade has made no allegations embracing a "passing off" claim, the

Court considers both Counts I and II as a single claim for false advertising.

Cascade's false advertising claim arises under Section 43(a) of the Lanham Act, which

provides in relevant part:

> Any person who, on or in connection with any goods or services, or any container
> for goods, uses in commerce any…false or misleading representation of fact,
> which…(B) in commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or another person's
> goods, services, or commercial activities, shall be liable in a civil action by any
> person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). The elements of this claim are: (1) a false statement of fact by the

defendant in a commercial advertisement about its own or another's product; (2) the statement

actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the

deception is material, in that it is likely to influence the purchasing decision; (4) the defendant

caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely

to be injured as a result of the false statement, either by direct diversion of sales from itself to the

defendant or by a lessening of the goodwill associated with its products. *Southland Sod Farms v.

Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (internal citations omitted).

**(1) Evidence of Actual Injury**

KFI principally contends that Cascade's false advertising claims must fail because

Cascade has been unable to introduce any evidence of injury in order to satisfy the fifth element

of these claims. KFI points out that while Cascade has alleged a direct diversion of its sales and

loss of goodwill associated with its products arising from KFI's sale of mislabeled yarns, it has failed to proffer any evidence on summary judgment to substantiate these allegations or to disclose any viable damages theory or computation in its initial disclosures or discovery responses. Further, KFI asserts that Cascade's international discovery of Mondial revealed no evidence of actual injury, and that no such evidence could be revealed through discovery of Katia. As Cascade is the entity in possession of evidence going to its losses, KFI contends that a reversal of the Spanish tribunal's decision, which would permit discovery into this third-party yarn source, has no bearing on Cascade's ability to satisfy the injury prong.

Cascade on response and through its moving papers asserts that it is not required to demonstrate "actual injury" and that it is entitled to recovery under a theory of "disgorgement" without any direct evidence of injury. *See, e.g.*, Dkt. # 1054, pp. 12-13. Cascade further argues that its evidence of KFI's past sales of four mislabeled Mondial yarns establishes a "*per se* Lanham Act claim,*" pursuant to which the Court should reserve the question of appropriate relief for trial. Dkt. # 1123, p. 3 & n. 3.

KFI is correct that Cascade is required to make a showing of actual injury in order to recover monetary damages. The Ninth Circuit addressed this very question in *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197 (9th Cir. 1989), in which it clarified that, in instances in which a defendant's advertisement does not directly compare its product with the plaintiff's product, the plaintiff is entitled to a presumption that consumers were directly deceived but *not* a presumption that a plaintiff was damaged as a result of the deception. *Id.* at 209-10. The court explained that in situations where no direct comparison is involved, numerous competitors participate in the market, or the products are aimed at different market segments, "injury to a

particular competitor may be a small fraction of the defendant's sales, profits or advertising expenses." *Id.* at 209 n. 8. Because injury under these circumstances is likely to be slight, "actual evidence of some injury *resulting from the deception* is an essential element of the plaintiff's case." *Id.* at 210 (emphasis in original). Otherwise, "a plaintiff might enjoy a windfall from a speculative award of damages by simply being a competitor in the same market." *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1334 (8th Cir. 1997).

Cascade argues that the Ninth Circuit later abrogated its holding in *Harper House*, and yet the cases on which Cascade relies for this proposition only reinforce the requirement to show causation and injury in order to recover monetary damages in this case. Cascade cites to *Southland Sod Farms v. Stover Seed Co.*, in which the Ninth Circuit stated that "inability to show actual damages does not alone preclude a recovery under section 1117." 108 F.3d at 1146. However, *Southland Sod*, unlike the instance case, involved a false advertisement that made a direct comparison to the plaintiff's product. The Ninth Circuit therein concluded that in cases of direct comparative advertising, the presumption that plaintiff's goodwill has suffered harm is justified and the plaintiff can recover even without a showing of actual damages. *Id.*; *Nat. Products, Inc. v. Gamber-Johnson LLC*, 699 F.Supp.2d 1232, 1241 (W.D. Wash. 2010). Such a presumption remains inappropriate where no comparative advertising is involved, lest an award issue that is punitive rather than compensatory. *See* 15 U.S.C. § 1117(a) (allowing an award of profits only to the extent the award "shall constitute compensation and not a penalty"). The trial court must dismiss a non-comparative false advertising claim where the plaintiff fails to produce proof of past injury or causation because it has "no way to determine with any degree of

certainty what award would be compensatory." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011).

Cascade's objections notwithstanding, this non-comparative false advertising case is controlled by *Harper House*, and a showing of some evidence of actual injury is required for Cascade's Lanham Act claims to survive the summary judgment stage. To this extent, Cascade does not deny that it has failed to produce any evidence of causation or injury and nowhere indicates that further discovery will enable it to produce this information. Cascade has disclosed no damages expert, failed to disclose any computation of damages as required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii), adduced no evidence of damages through its discovery of Mondial, and raised no suggestion that discovery of Katia (if permitted) would somehow enable it to make such a showing. In response to KFI's interrogatories seeking a factual basis for its claims of lost sales and goodwill, Cascade merely states it is a competitor of KFI's such that the "dollars that [] stores spend on KFI's products are dollars that were not available to purchase the products of Cascade." *See* Dkt. # 1050, Ex. 3 (Responses to Interrogatories No.'s 13 & 14). In a market indisputably crowded with competitors, the fact that these companies are two among them does not mean that every dollar KFI may have unjustifiably earned was snatched from Cascade's hands nor does it provide the Court any way to calibrate an appropriately compensatory award of damages.

No more availing are Cascade's repeated reminders that this Court has referenced the failure to designate the country of origin as a "*per se* Lanham Act violation." Dkt. # 1055, p. 8 (citing Dkt. # 891, p. 12). The fact that failure to designate country of origin may be actionable under the Lanham Act does not mean that any competitor in the market is entitled to recover.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The four district court cases that Plaintiff cited at oral argument are all clearly distinguishable from the case at hand and only underscore Plaintiff's need to proffer evidence of actual damages to avoid dismissal of its claims on summary judgment. In two of these cases, the plaintiff managed to avoid summary judgment specifically because it had managed to introduce evidence sufficient to show that it had suffered some actual injury resulting from the defendant's false statements. *See Skydive Ariz., Inc. v. Quattrochi*, 2009 U.S. Dist. LEXIS 128418, *88 (D. Ariz. 2009) (finding the evidence sufficient to establish that plaintiff had lost both profits and consumer goodwill as a result of defendant's false statements); *Wyatt Tech. Corp. v. Malvern Instruments Incorporation*, 2009 U.S. Dist. LEXIS 66097, *48 (C.D. Cal.) (allowing testimonial evidence of actual injury to be heard at trial). The third case, *Del Webb*, concerns a false advertisement that explicitly referenced plaintiff's services and was therefore appropriately found to be controlled by *Southland Sod* rather than *Harper House. See Del Webb Cmtys., Inc. v. Partington*, 2009 U.S. Dist. LEXIS 85616, *46 (D. Nev. 2009). Regardless, the plaintiff in *Del Webb* also made the showing of actual injury that is absent in this case. *See id.* (concluding that plaintiff "has shown injury and carried its burden on summary judgment that it was injured by the [] Defendants' Lanham Act violations"). Finally, the court in *Allen v. Ghoulish Gallery*, 2007 U.S. Dist. LEXIS 86224, *28 (S.D. Cal. 2007), located sufficient evidence of a lessening of the goodwill associated with plaintiff's products where defendant made material misrepresentations about its products in a marketplace consisting of only four competitors. This Court can adduce no such linkage in the crowded marketplace of yarns.

Despite the many rounds of briefing and unusually prolonged discovery period, Cascade has proven itself unable to make any showing that it has been injured by KFI's failure to

appropriately designate the country of origin on the small batches of impugned Mondial yarns

that it sold. The Court agrees with KFI that evidence of Cascade's lost profits or lessening of

consumer goodwill, if any such evidence existed, would be  in Cascade's possession, and that

further international discovery can have no bearing on its ability to make this evidentiary

showing. Cascade's failure to introduce any evidence of injury through its Mondial discovery

underscores the point. Cascade's inability to show injury is accordingly fatal to its Lanham Act

claims for monetary damages and, possible discovery of Katia notwithstanding, they shall be

dismissed.[2]

### (2) Availability of Injunctive Relief

The possibility of injunctive relief presents a somewhat more difficult question. There is

no requirement that a competitor prove injury when suing to enjoin conduct that violates Section

43(a) of the Lanham Act. *Southland Sod*, 108 F.3d at 1145 (quoting *Harper House*, 889 F.2d at

210). Thus, Cascade's failure to raise a triable issue of fact as to causation and injury does not

affect the viability of its Lanham Act claim to the extent that Cascade seeks injunctive relief. In

order to make out a claim for injunctive relief, Cascade must still make a satisfactory showing as

to the remaining elements of a false advertising claim. The Court accordingly examines KFI's

argument that, except for the three Mondial yarns that it has admitted were mislabeled in 2012

---

[2] The Court finds unavailing KFI's related argument that Cascade lacks standing to maintain an action under the Lanham Act. Cascade's allegations of lost profits and damage to its business reputation satisfy the requirements of Article III standing, and as a direct competitor alleging diversion of sales, Cascade meets the prudential standing requirements that its claim fall within the "zone of interests" protected by the Act and that its alleged injuries be proximately caused by the Act's violation. *See Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 & 1391 (2014); *Pom Wonderful LLC v. Coca-Cola Co.*, 134 S.Ct. 2228, 2235 ("Competitors are within the class that may invoke the Lanham Act because they may suffer 'an injury to a commercial interest in sales or business reputation proximately caused by [a] defendant's misrepresentations.'") (quoting *Lexmark*, 134 S.Ct. at 1395). Nonetheless, that Cascade has "*alleged* an adequate basis to proceed under § 1125(a)" does not entitle it to "obtain relief without *evidence* of injury proximately caused by [KFI's] alleged misrepresentation." *Lexmark*, 134 S.Ct. at 1395 (emphasis in original).

and the Vello D'Oro yarn recently impugned, Cascade can make no showing that any of its Katia or Mondial yarns are or have been falsely or misleadingly labeled as to country of origin.

As an initial matter, the Court disagrees with KFI that it need not reach Cascade's injunctive relief claims because they are barred by Cascade's own unclean hands. KFI points out that Cascade admitted to having briefly sold four King Cole yarns that were not properly labeled as to country of origin. *See, e.g.*, Dkt. # 716. Ex. 12, p. 214:4-10. Although KFI rightly argues, as this Court has already indicated, that KFI's admitted misconduct is precisely mirrored by Cascade's, KFI has offered no authority for the proposition that Cascade's unclean hands should foreclose the possibility of injunctive relief. Authority points instead in the opposite direction. *See FLIR Systems, Inc. v. Sierra Media, Inc.*, 965 F.Supp. 2d 1184, 1198-99 (D. Or. 2013) (quoting 6 *McCarthy on Trademarks & Unfair Competition* § 31:53 (4th ed. 2013)) (declining to bar Lanham Act claim for injunctive relief on the basis of plaintiff's unclean hands). Indeed, there is good reason to permit an injunction action to proceed where a monetary action would be barred: in the former case the Court must take into account the public's interest in being freed from deceptive practices in addition to a litigant's interest in being compensated where harmed by them. *See id.* at 1198 ("[W]here the law invoked by the plaintiff is really for the protection of the public, unclean hands is not a defense."); *see also U-Haul Intern., Inc. v. Jartran, Inc.*, 522 F.Supp. 1238, 1255 (D. Ariz. 1981) (declining to find Lanham Act claim for injunctive relief precluded by unclean hands defense upon taking into account the "public interest aspects" of the proceeding and the "general disfavor" of the defense).[3] The Court accordingly proceeds to consider Cascade's evidence of mislabeling as to each impugned KFI yarn in turn.

---

[3] Although KFI's country of origin counterclaims based on Cascade's sale of four mislabeled King Cole yarns are not before the Court at this time, the Court presumes that KFI will honor its representation at oral argument that it

ORDER ON MOTIONS - 14

1

2

### (a) **Katia Yarns**

Cascade has failed to introduce any admissible evidence into the record that raises a genuine issue of material fact as to whether the Katia yarns are being or have been sold without proper country of origin labels. Cascade's sole evidence to this effect presented in support of its position on summary judgment came in the form of two expert reports, both of which the Court has stricken pursuant to Federal Rule of Evidence 702. *See* Dkt. # 1112. Cascade's allegations that Katia yarns are mislabeled as to country of origin are now based on nothing more than speculative assertions, which the Court is required to discard at this stage. *See Anheuser-Bush*, 60 F.3d at 345. On the other hand, KFI has presented testimony by Katia's General Manager (Dkt. # 1052), apostilled Certificates of Origin (Dkt. # 1050, Ex. 4), and invoices (Dkt. # 1090-2, Ex. D) all attesting to the Spanish origin of these yarns. As Cascade has been unable to counter this evidence with any of its own or to carry its burden to produce evidence on this essential element of its case, *Celotex Corp.*, 477 U.S. at 322, it focuses its efforts instead on prolonging the discovery period.

Nonetheless, the Court is not persuaded that summary judgment should be continued any longer – not to mention for the eight months that Cascade requests — to allow Cascade to appeal the Spanish tribunal's decision denying discovery. First, the Spanish court has already spoken on its Article 23 reservations, rejecting the very arguments that Cascade is advancing now on appeal. The Court fails to discern any reason to suspect that the Spanish system would reverse its position. Second, in contrast to its presentation of evidence regarding Mondial yarns, Cascade's

---

will voluntarily dismiss these claims given the Court's holdings herein. While unclean hands may not bar an injunctive remedy, it remains a viable defense by Cascade to KFI's monetary damages claims for country of origin mislabeling should KFI choose instead to pursue them. KFI will also need to make the showing of actual damages that the Court has found Cascade unable to put forward.

failure to adduce any evidence of mislabeling of Katia yarns undercuts its argument that good cause exists to grant such a bold continuance request. For the sake of the efficient administration of justice, Cascade's fishing expedition into Katia yarns must at this point be brought to a close. Accordingly, Casade's Lanham Act claims for injunctive relief as to KFI's sale of Katia yarns shall be denied, as shall Cascade's request to again continue pretrial deadlines.

### (b) Mondial Giava, Papillon, and Pizzo Lux Yarns

As to the Mondial Giava, Papillon, and Pizzo Lux yarns, KFI has admitted that the three yarns were sold in the latter part of 2012 when first imported by KFI without being properly labeled as made in China. KFI's Answer at ¶¶ 27, 47; *see also* Dkt. # 1090, Ex. A at pp. 97-98; *id.* at Ex. F. At the same time, the parties do not dispute that the three yarns bore corrected labels by the end of 2012 (*see* Dkt. # 1090, Ex. F), and Cascade has neither introduced evidence nor alleged that any mislabeling of these three yarns took place from 2013 to the present. As Cascade has failed to introduce any evidence of actual injury resulting from the admitted mislabeling, the sole question as to these three yarns is whether injunctive relief is available to prevent mislabeling from reoccurring in the future.

Standing alone, the fact that KFI has ceased mislabeling the yarns does not moot Cascade's claim for injunctive relief. In *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132 (9th Cir. 1986), the Ninth Circuit held that in order for cessation of unlawful conduct to moot claims for injunctive relief, the defendant bears the burden to show that its reform is irrefutable and total. *Id.* at 1135; *see also Friends of the Earth, Inc. v. Laidlaw Envt'l Services, Inc.*, 528 U.S. 167, 190 (2000). This Court has found that injunctive relief may be appropriate despite

cessation where a jury could find that the defendant published false statements willfully. *Campagnolo S.r.L. v. Full Speed Ahead, Inc.*, 2010 WL 1903431, * 10 (W.D. Wash. 2010).

There is no such evidence of willful violation here. KFI voluntarily introduced the evidence of mislabeling occurring during a brief period after the yarns' release into the U.S. market in fall 2012, prior to the filing of *Cascade II*, and the yarns have admittedly borne proper labels since. *See* KFI's Answer at ¶ 47. Under these circumstances, the Court finds that KFI has met its burden to show that its reform was irrefutable and total, and KFI has provided ample assurance that it will not again sell these three Mondial yarns without properly designating their Chinese origin. *See* Dkt. # 1090, Ex. F (December 2012 letter from Mondial confirming that articles with a Mondial label will henceforth specify proper country of origin). The Court need not waste judicial resources in fashioning an entirely superfluous remedy. The claim for injunctive relief as to these three yarns is accordingly moot. *See Telecredit Service Corp. v. Electronic Transaction Corp.*, 974 F.2d 1343, * 1 (9th Cir. 1992) (unpublished opinion) (finding claim for injunctive relief moot where defendant provided ample assurance that it would not again use the infringing advertisement).

### (c) Mondial Vello D'Oro Yarn

The sole yarn remaining for this Court's consideration is Mondial's Vello d'Oro yarn. As to this yarn alone, the Court finds there to be a genuine issue of material fact as to its continued mislabeling. Mr. Consolati's admission that Vello d'Oro is made in Turkey rather than Italy raises a question as to whether its label properly reflected its origin. *See* Dkt. # 1115-3, p. 5. The sole Vello d'Oro label in evidence is partially obscured by the retailer's price sticker such that the Court is unable to discern whether it actually failed to indicate the yarn's asserted Turkish

origin. Although KFI attests that the yarn was sold in only negligible quantities from August

through September 2012 (Dkt. # 1121, ¶¶ 3-4), KFI continues to list the yarn on its website as

available for limited sale without assurance that any past mislabeling has been irrefutably

addressed (*see* Dkt. # 1126-2).  The Court is thus unable to conclude, as it does for Mondial

Giava, Papillon, and Pizzo Lux yarns, that mislabeling of this yarn is neither ongoing nor

unlikely to recur in the future. Consequently, as to KFI's Mondial Vello d'Oro yarn alone,

Cascade will be permitted to put on evidence at trial in support of its claim for injunctive relief

under the Lanham Act. As one for equitable relief, this claim shall be decided by the Court rather

than the jury. *See Tull v. U.S.*, 481 U.S. 412, 418 (1987).

### C.  Consumer Protection Act and Common law Claims for Unfair Competition

Cascade's claims under the CPA and for common law unfair competition are

"substantially congruous" with its Lanham Act claims. *Campagnolo*, 2010 WL 1903431, *11.

Under Washington law, a plaintiff bears the burden to prove the following elements in order to

establish a violation of the Consumer Protection Act: (1) an unfair or deceptive practice; (2)

occurring in trade or commerce; (3) affecting the public interest; (4) that injures the plaintiff in

his or her business or property; and (5) a causal link between the unfair or deceptive act and the

injury suffered. *Hangman Ridge Training Stables, Inc. v. Safecto Title Ins. Co.*, 105 Wn. 2d 778,

719 P.2d 531 (1986). As with a claim under the Lanham Act, monetary damages need not be

proven where a plaintiff seeks solely injunctive relief. *See Nordstrom, Inc. v. Tampourlos*, 17

Wash.2d 735, 740, 733 P.2d 208 (1987). Accordingly, the Court grants summary judgment in

favor of KFI as to Cascade's claims for monetary damages under Washington law for the same

reasons provided as to Cascade's Lanham Act claims. The Court also denies injunctive relief for

Cascade's state law claims based on the alleged mislabeling of Katia yarns, as Cascade is unable to show that KFI engaged in any unfair or deceptive practices in its marketing or sale of these yarns, and as to the Mondial Giava, Papillon, and Pizzo Lux yarns, as KFI has demonstrated to the Court's satisfaction that these claims are moot. The Court denies summary judgment for KFI solely as to Cascade's state law claims for injunctive relief based on the alleged mislabeling of Mondial Vello d'Oro yarns.  As with Cascade's remaining Lanham Act claims, these state law claims shall be tried to the Court.

## II. Additional Motions

Remaining before the Court are Cascade's Motion for Relief from Deadlines (Dkt. # 1115), Motion to Seal (Dkt. # 1124), Motion for Evidentiary Sanctions (Dkt. # 1131), and Motion to Strike (Dkt. # 1130). The first of these is moot as to Cascade's claims for monetary relief relating to Katia yarns and shall be denied as to its claims for injunctive relief for the reasons set forth above. Cascade's unopposed Motion to Seal is filed pursuant to the parties' Stipulated Protective Order (Dkt. # 331, ¶ 4) and Local Civil Rule 5(g) and shall be granted. Cascade's request for an adverse inference instruction to be given to the jury is rendered moot by this Court's decision herein to grant summary judgment in favor of KFI on Cascade's claims for monetary relief. Further, Cascade has made no argument that evidentiary sanctions are warranted as to its claims for injunctive relief, and the Court finds that an adverse inference would be inappropriate in this context. Finally, Cascade's request to strike a portion of a footnote in Cascade's supplemental brief shall be denied. The subject matter of the footnote – whether KFI deleted two emails threads – is entirely inapposite to summary judgment and not considered as

admissible evidence for this purpose. Thus whether the offending statement possesses an adequate basis in personal knowledge is irrelevant.

## CONCLUSION

For the reasons stated above, the Court hereby FINDS and ORDERS as follows:

(1) Defendants' Motion for Summary Judgment (Dkt. # 1049) is GRANTED in part and DENIED in part. Cascade's claims based on KFI's sale of Katia yarns, both as to injunctive and monetary relief, are DISMISSED with prejudice. Cascade's claims for monetary damages based on KFI's sale of Mondial yarns are also DISMISSED with prejudice, as are Cascade's claims for injunctive relief as to Mondial Giava, Papillon, and Pizzo Lux yarns. Summary judgment is denied solely as to Cascade's Lanham Act and state law claims for injunctive relief regarding KFI's sale of Mondial Vello d'Oro yarn. Cascade is permitted to try these claims alone to the Court at the upcoming trial.

(2) Plaintiff's Motion for Partial Judgment on the Pleadings (Dkt. # 1055) and Motion for Partial Summary Judgment (Dkt. # 1090) are both DENIED.

(3) Plaintiff's Motion for Relief from Deadlines (Dkt. # 1115) is DENIED.

(4) Plaintiff's Motion to Seal (Dkt. # 1124) is GRANTED. Cascade's Memorandum filed at Dkt. # 1123 may remain under seal.

(5) Plaintiff's Motion for Evidentiary Sanctions (Dkt. # 1131) is DENIED.

(6) Plaintiff's Motion to Strike (Dkt. # 1130) is DENIED.

//

//

//

ORDER ON MOTIONS - 20

Dated this 15th day of April 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE