UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASCADE YARNS, INC., a Washington Corporation,<br><br>    Plaintiff,<br><br> v.<br><br>KNITTING FEVER, INC., KFI, INC., DESIGNER YARNS, LTD., SION ELALOUF, JAY OPPERMAN, DEBBIE BLISS, EMMEPIEFFE SRL, and DOES 1-50,<br><br>    Defendants,<br><br> v.<br><br>ROBERT A. DUNBABIN, SR., JEAN A. DUNBABIN, ROBERT A DUNBABIN, JR., and SHANNON M. DUNBABIN,<br><br>    Third Party Defendants. | NO. C10-861 RSM<br><br>TRIAL ORDER |

  Trial in this case took place from May 18 through May 20, 2015 on false advertising, defamation, and tortious interference claims by Defendants/Counterclaim Plaintiffs Knitting Fever, Inc. and KFI, Inc. (collectively, "KFI") and a single claim for injunctive relief by Plaintiff/Counterclaim Defendant Cascade Yarns, Inc ("Cascade"). KFI's counterclaims were tried to a jury and Cascade's injunctive relief claim to the Court. On May 20, 2015, following the close of KFI's presentation of evidence to the jury, the Court heard oral argument on and issued a ruling from the bench granting Counterclaim Defendants' Motion for Judgment as a Matter of

TRIAL ORDER - 1

Law pursuant to Federal Rule of Civil Procedure 50(a). Dkt. # 1173. The basis for the Court's Order, as well as it findings of fact and conclusions of law on the claim in equity, are provided herein.

**PROCEDURAL BACKGROUND**

Cascade, a seller of luxury yarns, commenced this lawsuit on May 24, 2010 against one of its yarn retail competitors, KFI. Cascade's original complaint alleged that certain of KFI's yarns were mislabeled as to fiber content, and that this mislabeling constituted false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and the Washington Consumer Protection Act ("CPA"), RCW 19.86. Dkt. # 2. KFI counterclaimed against Cascade and its principals Robert, Sr., Robert, Jr., Jean, and Shannon Dunbabin (collectively, "Cascade Defendants") for defamation and false advertising based on Cascade's alleged mislabeling of certain of its own yarns as to fiber content and/or country of origin. Dkt. # 182.

Through consecutive rulings on summary judgment, the Court dismissed all claims asserted by Cascade. It also dismissed all counterclaims by KFI with the exception of those based on Cascade's posting on its website of an announcement about KFI's "milk fiber" yarns and those based on Cascade's alleged mislabeling of yarns as to country of origin. Dkt. ## 891, 962. Shortly thereafter, Cascade filed an entirely new action, *Cascade Yarns, Inc. v. Knitting Fever, Inc., et al.*, C13-674RSM, in which it asserted claims under the Lanham Act and Washington common law based on the country-of-origin mislabeling of certain Katia and Mondial yarns sold by KFI. The Court consolidated the two actions and moved the trial date on multiple occasions to accommodate Cascade's pursuit of international discovery into Katia and Mondial, located in Spain and Italy, respectively. *See* Dkt. ## 987, 998, 1005, 1017, 1070.

TRIAL ORDER - 2

On April 15, 2015, the Court entered an Order on Motions in which it dismissed Cascade's claims based on KFI's sale of Katia yarns, both as to injunctive and monetary relief, and dismissed Cascade's claims for monetary damages based on KFI's sale of Mondial yarns. The Court also dismissed Cascade's claims for injunctive relief as to all Mondial yarns except as to KFI's sale of its Mondial Vello d'Oro yarn, which it permitted Cascade to try to the Court. Dkt. # 1140. Following the Court's ruling, KFI agreed to voluntarily dismiss its country of origin claims and claim for tortious interference with contractual relationships. *See* Pretrial Order, Dkt. # 1176.

As a consequence, this case went to jury trial on May 18, 2015 solely on KFI's counterclaims for unfair competition under the Lanham Act and Washington common law, defamation, and tortious interference with business expectancies. All of these claims arose out of Cascade's posting on its website in spring 2011 of an announcement concerning certain milk fiber yarns sold by KFI under the headline "Milk Protein Fiber Hype." Cascade also included a link from the homepage of its website to this announcement. The announcement contained the following statement:

> There has been a lot of hype recently about a fiber advertised as "Milk Protein Fiber." Given the substantial price that "milk" yarns command, it made sense to investigate what this "milk" fiber actually is. We were surprised to learn that three "milk" yarns sourced from Knitting Fever were nothing more than common acrylic blends. Acrylic is an inexpensive fiber, which is often added to make yarns soft and affordable. Beyond the lack of milk, two of these yarns did not contain either the cashmere or alpaca, listed on their labels.
>
> We presented this information to KFI, first to their attorneys informally, then later to the Court. KFI raised questions regarding the testing methodology of our expert, but chose not to have these yarns actually tested. So far, KFI asserts that the yarns, listed below, contain milk, alpaca and cashmere, purely because the salesmen who sold it to KFI says [sic] that they do. We attached the documents from Cascade's fiber expert, as well as the response from KFI's plastics expert.
>
> 1) Ella Rae Milky Soft: advertised as a 50/50 cotton milk protein blend is actually cotton and acrylic.

TRIAL ORDER - 3

    2) Laines du Nord (KFI) Baby Milk: advertised as 63% wool, 30% milk fiber, and 7% cashmere is actually 68% wool and 32% acrylic.

    A. Retails for $6.60 for a 25 gram skein or $26.40 per 100 grams.
    B. Cascade Pacific 60% acrylic 40% wool (merino) retails for $6.50 per 100 grams.

    3) Ella Rae Latte: advertised as 30% alpaca, 30% milk, and 40% microfiber actually contains neither milk nor alpaca and is 69% acrylic and 31% wool.

    A. Retails between $9.00 to $10.00 for 50 gram skein or $18-$20 per 100 grams.
    B. Again Cascade Pacific retails for $6.50 and has a third more wool.

Cascade removed the posting, and with it the link from its website homepage, sometime in 2012. *See* Pretrial Order at pp. 3-4 (listed as facts not in dispute).

After KFI rested its case on May 19, 2015, Cascade moved orally for judgment as a matter of law on all of KFI's counterclaims. On May 20, 2015, the Court received into evidence a Declaration in lieu of live testimony from Sion Elalouf, founder of KFI, relating to Cascade's remaining claims for injunctive relief under the Lanham Act and Washington common law. The Court then heard oral argument from both parties on Cascade's Rule 50(a) Motion, which it granted in a ruling from the bench. This written Order provides the basis for the Court's ruling, as well as its findings of fact and conclusions of law on Cascade's injunctive relief claims.

## ANALYSIS

### I. Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a) permits the Court to grant a motion for judgment as a matter of law on any claim upon finding that "a reasonable jury would not have a legally sufficient basis to find for the party" on an issue upon which the claim depends. Fed. R. Civ. P. (a)(1). "Rule 50(a) thus allows a court to remove issues – claims, defenses, or entire cases—from the jury when there is no legally sufficient evidentiary basis to support a particular outcome."

TRIAL ORDER - 4

*Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 926 (9th Cir. 2007) (internal quotations and alterations omitted).

A motion for judgment as a matter of law is "properly granted only if no reasonable juror could find in the non-moving party's favor." *Torres v. City of Los* Angeles, 548 F.3d 1197, 1205 (9th Cir. 2008) (internal quotations and alterations omitted). In making this determination, the Court is to view all evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor. *Id.* "If conflicting inferences may be drawn from the facts, the case must go to the jury." *Id.* (internal quotations omitted). Before the Court may grant judgment as a matter of law, a party must be "fully heard" on the issue in question, Fed. R. Civ. P. 50(a)(1), and the motion must "specify the judgment sought and the law and facts that entitle the movant to the judgment," Fed. R. Civ. P. 50(a)(2). *Summers*, 508 F.3d at 926.

**A. Claims against Robert Dunbabin, Sr., Jean Dunbabin, and Shannon Dunbabin**

First, Cascade argues that all claims should be dismissed against Robert Dunbabin, Sr., Jean Dunbabin, and Shannon Dunbabin as KFI failed to present any evidence to the jury that they authorized, directed, or knowingly participated in the publication of the milk fiber yarn posting. The Court agrees.

An officer of a corporation who takes no part in a tort committed by the corporation is not personally liable to third parties for that tort. *Messenger v. Fry*, 176 Wash.291, 295, 28 P.2d 1023 (1934). Nor is that officer liable for acts of other officers or agents of the corporation in committing it unless she "specifically directed the particular act to be done, or participated, or co-operated therein." *Id.* An officer may thus be liable in tort if she knew "that false and fraudulent misrepresentations were being made for and on behalf of the corporation," or if she

"exercise[d] such close control, direction and management of the corporation that the law as a matter of elemental justice ought to charge [her] with knowledge of such fraud." *Johnson v. Harrigan-Peach Land Dev. Co.*, 79 Wash.2d 745, 754, 489 P.2d 923 (1971).

In putting on its case, KFI declined to call any member of the Dunbabin family to the stand. The sole evidence it put forward regarding any individual member of the family came in the form of a brief excerpt from a Rule 30(b)(6) deposition of Robert Dunbabin, Sr., in which he attested that all four members of the Dunbabin family constituted the management of this closely held, family-run business. On the other hand, Robert Dunbabin, Jr. testified in Cascade's case that he was the sole author of the posting, that no other member of the Dunbabin family played any part in its creation or publication, and that the other three Dunbabins had largely relinquished their role in managing the company by the time the posting was made.

Drawing all inferences in favor of KFI, the Court fails to locate any evidence in this record that would permit the jury to find that any of the Dunbabins, other than Robert Jr., either directly participated in the publication of the milk fiber yarn posting or subsequently adopted the alleged misrepresentations. *Cf. Johnson*, 79 Wash. 2d at 753. Nor is there any evidence that Robert Sr., Jean, or Shannon Dunbabin "occupied positions of such close control, management and direction" over Cascade, its website, or its advertising campaigns that the law should "charge them with knowledge of such fraud and misrepresentation" so as to render them liable for an act in which they played no direct part. *Id.* at 754. As KFI failed to meet its burden to put forward evidence sufficient for the jury to find these three Dunbabins liable for the posting, the Court enters judgment dismissing all claims against them.

**B. Lanham Act Claim**

**1) Legal Standards**

To prevail on its claim for false advertising under § 43(a) of the Lanham Act, KFI must prove the following elements: (1) Cascade Defendants made a false or misleading statement in a commercial advertisement about their own or another's product, (2) the statement actually deceived or had the tendency to deceive a substantial segment of its audience, (3) the statement was material, (4) Cascade Defendants caused the statement to enter interstate commerce, and (5) KFI has been or is likely to be injured as a result of the statement, either by direct diversion of sales from itself to Cascade or by a lessening of goodwill associated with Cascade's products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

To demonstrate falsity, KFI must show that the statement was literally false on its face or by necessary implication or that the statement was literally true but likely to mislead, confuse, or deceive the consuming public. *Id.* Whether or not an advertisement is "literally false" is a question of fact for the jury to determine. *Nat'l Products, Inc. v. Gamber-Johnson LLC*, 699 F.Supp.2d 1232, 1237 (W.D. Wash. 2010). If any of Cascade's statements in its advertisement were explicitly or impliedly based on product testing, KFI may prove falsity by demonstrating that such tests are not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made. *Id.*

To constitute commercial advertising, KFI must show that the impugned statement was (1) commercial speech, (2) by a competitor, (3) made for the purpose of influencing purchasers to buy products or services. *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 183 F.3d 725, 735 (9th Cir. 1999). While the representations need not be made in a "classic advertising campaign," they must be disseminated sufficiently to the relevant purchasing public to constitute advertising

or promotion within that industry. *Id.* Commercial speech "is defined as speech that does no more than propose a commercial transaction." *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (internal quotation omitted); *see also Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003). Although commercial speech does not retain its commercial character if inextricably intertwined with protected speech, where the two components can be easily separated, the speech remains actionable. *Id.*

Statements that are literally or deliberately false create a presumption of deception and reliance. *See Nat'l Products, Inc.*, 699 F.Supp.2d at 1337; *Johnson & Johnson-Merck v. Rhone-Poulenc*, 19 F.3d 125, 129 (3d Cir. 1994) ("If a plaintiff proves a challenged claim is literally false, a court may grant relief without considering whether the buying public was misled."); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) ("When an advertisement is shown to be literally or facially false, consumer deception is presumed, and the court may grant relief without reference to the advertisement's actual impact on the buying public."); *U-Haul Int'l, Inc v. Jartran, Inc.*, 793 F.2d 1034, 1040-41 (9th Cir. 1986) ("Publication of deliberately false comparative claims gives rise to a presumption of actual deception and reliance.") (internal quotations omitted). Further, KFI is entitled to a presumption of injury if it proves that: (1) the statement was a comparative advertisement, meaning that it directly compared Cascade's product with KFI's, and (2) Cascade made a deliberately false or misleading statement. *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir. 1997).

Should KFI successfully establish a violation of § 43(a), the Lanham act entitles it to recover, "subject to the principles of equity,…(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. §1117(a). In order to recover either its

TRIAL ORDER - 8

actual losses or a disgorgement remedy, KFI bears the burden to prove an evidentiary basis to justify any monetary recovery. *Porous Media Corp.*, 110 F.3d at 1336; *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994) ("Items alleged as either unjust enrichment to the defendant or damages suffered by the plaintiff must, of course, have been caused by the infringement itself; in addition the amount must be provable, although some uncertainty in making this calculation is allowed."). That is, in order to recover its damages in the form of loss of sales, profits, or goodwill, KFI must establish a causal link between its injury and Cascade's deception. *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989). Similarly, in order to recover Cascade's profits under a theory of unjust enrichment, KFI must show that Cascade's sales were "attributable to the infringing conduct." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993).

While the district court has considerable discretion in fashioning appropriate monetary relief based on the totality of the circumstances, it must ensure that any award constitutes "compensation" for the plaintiff's losses or defendant's unjust enrichment rather than a "penalty" for the defendant's conduct. *Southland Sod*, 108 F.3d at 1146; *Badger Meter*, 13 F.3d at 1157-58 (affirming district judge's discretionary decision not to award unjust enrichment damages because, without proof of causation, they would constitute a penalty); 15 U.S.C. § 1117(a).

**2) Shortcomings in KFI's Case**

The Court agrees with Cascade that KFI failed to put evidence before the jury on multiple issues on which KFI's claim for monetary relief under the Lanham Act depends. KFI at trial leant heavily on its theory that Cascade's milk fiber posting constituted a comparative advertisement by virtue of its references to Cascade's Pacific yarns, and that KFI was therefore

TRIAL ORDER - 9

entitled to various rebuttable presumptions on the elements of its Lanham Act claim. Assuming without deciding that Cascade's milk fiber posting constituted commercial advertising that was comparative in nature, KFI still failed to carry its burden to put the requisite evidence before the jury.

First, neither party disputes that a presumption of injury is only available where KFI proves that Cascade's "comparative advertisement" was deliberately deceptive. *See Porous Media*, 110 F.3d at 1336; *Southland Sod*, 108 F.3d at 1146. Thus, even if KFI could avail itself of a rebuttable presumption of consumer deception by showing that Cascade's statements were literally false, it would have to show that Cascade intentionally misled consumers in order to prevail on its Lanham Act claim absent proof of actual injury.

This KFI has not done. KFI's case consisted entirely of the testimony of its founder (Sion Elalouf), its Director of Operations (Jeffrey Denecke), and a fiber analysis expert (Dr. Maureen Reitman), as well as a brief deposition designation of Robert Dunbabin, Sr. pertaining only to the closely held nature of Cascade. None of these witnesses testified in any way to the mental state of Robert Dunbabin, Jr. or of any other Cascade Defendant in authoring, publishing, and disseminating the milk fiber posting. Mr. Dunbabin, Jr., who was not called by KFI, testified in Cascade's case that he relied on the reports of a fiber analyst, Kenneth Langley, in releasing the posting, which he consequently believed to contain only true statements. This testimony was unrefuted. It was KFI's burden to show deliberate falsity in order to avail itself of a presumption of injury, and this was a burden that KFI did not meet.

Further, KFI failed to put any direct evidence on the stand showing that it was injured by the milk fiber yarn post. While KFI was permitted to introduce a summary chart illustrating its

declining revenues since 2011, it put forward no evidence, as discussed below, causally linking a drop in its business to the actions by Cascade at issue in this case. Because KFI failed to provide an evidentiary basis to meet the final prong of its Lanham Act claim or to avail itself of a rebuttable presumption of injury in lieu of direct evidence, Rule 50(a) permits KFI's Lanham Act claim to be removed from the jury.

Similarly, KFI's case was fundamentally flawed in several respects with regards to its pursuit of monetary damages. First, upon questioning by the Court at trial, KFI conceded that it failed to include any computation of damages in its Rule 26 initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring a party to provide to the other parties, without awaiting a discovery request, "a computation of each category of damages claimed by the disclosing party --- who must also make available for inspection and copying…the documents or other evidentiary material…on which each computation is based, including materials bearing on the nature and extent of injuries suffered"). Rule 37(c)(1) prohibits a party from using evidence at trial that was not properly disclosed as required under Rule 26(a). This sanction is "self-executing," and no showing of bad faith or willfulness is required. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). KFI made no attempt to show that its failure to comply with Rule 26(a) was justified or harmless, and offered no authority for its theory that it was exempted from Rule 26 disclosure requirements by virtue of the comparative nature of Cascade's milk fiber yarn posting.

Even when permitted to put its damages evidence into the record, KFI failed to make any showing through which the jury could have identified the requisite causal link to the milk fiber yarn posting. KFI's damages evidence consisted entirely of a demonstrative exhibit illustrating

TRIAL ORDER - 11

its declining revenues and a demonstrative exhibit summarizing Cascade's revenues from the sales of its Pacific yarns from 2011 to the present. As to the former, KFI failed to provide any evidentiary basis – through expert testimony or otherwise – from which the jury could have linked these losses to the milk fiber yarn posting. Indeed, Mr. Denecke himself testified on cross-examination to Cascade's extensive posting on its website since 2010 of pleadings from this litigation that were wholly unrelated to the milk fiber yarn issue. The jury would have no way to find that KFI's damages were attributable to the milk fiber posting and not to the public airing of unrelated grievances throughout the course of this litigation, or to any number of economic or other causes.

Similarly, KFI failed to put any evidence into the record to show that Cascade's profits from its Pacific yarn sales were attributable to the milk fiber posting. Absent such evidence, the jury would be forced to award wholly speculative relief, which KFI itself concedes through its proposed jury instructions the finder of fact is not permitted to do. *See* WPI 30.01.01. As the Court finds that, under these circumstances, any award would constitute an impermissible penalty rather than compensation, the Court finds it appropriate to preclude KFI's Lanham Act claim from going to the jury. *See* 15 U.S.C. § 1117(a) (Any sum awarded under the Lanham Act "shall constitute compensation and not a penalty").

C. Common Law Unfair Competition Claim

Both parties concede that the elements of KFI's claim for unfair competition under Washington common law are identical to the elements of a claim for false or misleading advertising under the Lanham Act. *See Campagnolo S.r.L. v. Full Speed Ahead, Inc.*, 2010 WL 1903431, *11 (W.D. Wash. 2010). As the Court finds that KFI failed to put into evidence a

TRIAL ORDER - 12

legally sufficient basis for its Lanham Act claim, judgment as a matter of law is entered against it on its common law unfair competition claim as well.

### D. Defamation Claim

#### 1) Legal Standards

To prevail on its claim for defamation, KFI has the burden to prove the following elements: (1) Cascade Defendants made a false statement, (2) the statement was unprivileged, (3) Cascade Defendants were at fault, and (4) the statement proximately caused KFI to suffer damages. *See Mark v. Seattle Times*, 96 Wash.2d 473, 486, 635 P.2d 1081 (1981).

The third and fourth elements of a defamation claim – fault and damages – depend on the nature of the plaintiff and the subject matter of the defamatory statement. In pretrial rulings, the Court determined that KFI is a "private figure" for the purpose of its defamation claim, as it has not "thrust [itself]" into the forefront of a public controversy in order to "influence the resolution of the issues involved." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 352 (1974). The Court also determined that the milk fiber yarn post involved a matter of "public concern," in light of the public's interest in the accuracy of product labeling as well as in consumer warnings of fraudulent or deceptive business practices. As such, under Washington law, KFI need only show that Cascade acted with negligence to recover actual damages. *See Taskett v. KING Broad Co.*, 86 Wash.2d 439, 440, 546 P.2d 81 (1976), *Momah v.* Bharti, 144 Wash. App. 731, 741-42, 182 P.3d 455 (Wash. Ct. App. 2008) (distinguishing the holding in *Alpine Industries Computers, Inc. v. Cowles Pub. Co.*, 114 Wash.App. 371, 57 P.3d 1178 (Wash. Ct. App. 2002)). By contrast, KFI must prove actual malice in order to recover presumed damages. *Gertz*, 418 U.S. at 349-50; *Dun & Bradstreet v. Greenmoss Builders, Inc.*, 472 U.S. 749, 763 (1985) (Burger, J., concurring).

**2) Shortcomings in KFI's Case**

KFI's defamation claim fails on multiple grounds. First, several of the statements within the milk fiber yarn posting that KFI claims constitute defamation are not actionable. KFI sought to have the jury determine that Cascade's use of the words "scam" and "hype" in the milk fiber posting and in the hyperlinks to it were defamatory. *See* Dkt. # 1168. In *McCabe v. Rattiner*, 814 F.2d 839, 842 (1st Cir. 1987), the First Circuit addressed the use of the word "scam" in a headline about sales practices and concluded that it did not have a sufficiently precise meaning to support a defamation claim: "The lack of precision makes the assertion 'X is a scam' incapable of being proven true or false." *Id.* Judge Zilly adopted the First Circuit's analysis in determining that the phrase "ripped-off" constituted protected speech. *See Paterson v. Little, Brown & Co.*, 502 F.Supp.2d 1125, 1135 (W.D. Wash. 2007). This Court too determines that Cascade's references to KFI's sale of milk fiber yarns as a "scam" and KFI's promotion of these yarns as "hype" lack sufficient precision to be provably true or false and cannot therefore support a defamation claim.

As to the fourth element of its defamation claim, KFI sought only presumed damages and must therefore show that the Cascade Defendants acted with actual malice in publishing the allegedly defamatory statements. Whether evidence in a record supports a finding of actual malice is a question of law. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989). A showing of "actual malice" requires either knowledge that a statement was false or reckless disregard for whether or not it was false. *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964).

Here, KFI failed to put any evidence into the record at trial showing that Cascade Defendants either knew that the statements in the milk fiber posting were false or that they acted with reckless disregard as to their falsity. Dr. Reitman's testimony could permit the jury to determine the falsity of Cascade's statements that KFI's yarns lacked milk fiber protein. Yet, neither proof of falsity, nor proof of failure to investigate before publishing, are sufficient to show malice. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 (1984) ("[T]here is a significant difference between proof of actual malice and mere proof of falsity[.]"); *Harte-Hankes*, 491 U.S. at 688 ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."). Presumed damages are consequently not available to KFI.

For the reasons set forth with respect to its Lanham Act claim, KFI also failed to offer evidence at trial sufficient to show that it suffered any actual losses proximately caused by Cascade's milk fiber yarn posting. Consequently, judgment as a matter of law is appropriately entered against KFI on its common law defamation claim.

**E. Tortious Interference with Business Expectancies Claim**

To prevail on its claim for tortious interference with business expectancy, KFI must prove: (1) the existence of a valid contractual relationship or business expectancy, (2) Defendants' knowledge of that expectancy, (3) intentional interference inducing or causing a breach of that relationship or expectancy, (4) Defendants' improper purpose or improper means, and (5) resultant damages. *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wash.2d 133, 157, 930 P.2d 288 (1997); WPI 352.02.01.

At trial, KFI failed to meet its burden to produce evidence of the first, second, and fifth elements of its tortious interference claim. KFI was required to specifically identify both the existence of and Cascade Defendants' knowledge of prospective business relationships with which KFI contends Defendants interfered. *See Manna Funding, LLC v. Kittitas Cnty.*, 173 Wash.App. 879, 898-99, 295 P.3d 1197 (Wash. Ct. App. 2013) (affirming grant of summary judgment dismissing tortious interference claim for failure to produce evidence of the first two elements). KFI failed to do so at trial. In putting on its case, it declined to identify any of its customers who were deterred by the milk fiber yarn posting, or to show that Cascade Defendants had knowledge of these business relationships. Nor, as set forth above, did it show any ascertainable damages proximately caused by Defendants' alleged wrongful interference.[1] *See* WPI 352.02.01. As with KFI's other claims, the jury could have based an award on nothing other than speculation and conjecture. This the jury is not permitted to do. *See* WPI 30.01.01.

As KFI failed to produce evidence in putting on its case from which the jury could have identified damages traceable to Cascade Defendants' intentional interference with known business expectancies, the Court finds it inappropriate to permit this claim to go to a jury. And as no reasonable jury could have found in KFI's favor on any of its claims, Rule 50(a) supports the entry of judgment against it on all of them as a matter of law.

**II. Findings of Fact and Conclusions of Law on Cascade's Injunctive Relief Claims**

---

[1] At oral argument on Cascade Defendants' Motion, KFI pointed to an email admitted on cross-examination of Robert Dunbabin, Jr., in which a customer thanked Mr. Dunbabin for helping her to avoid $200 of contemplated purchases of milk fiber yarns. This single hearsay-containing email is insufficient to support KFI's claim. It was admitted to contradict Mr. Dunbabin's testimony about the extent to which the milk fiber yarn posting was viewed but not for the truth of the matter asserted therein.

TRIAL ORDER - 16

Remaining only are Cascade's claims for injunctive relief under the Lanham Act and Washington common law based on KFI's alleged failure to properly label its Mondial Vello d'Oro yarn as to country of origin. As the Court previously explained in ruling on summary judgment, Cascade is not required to prove injury when suing for injunctive relief as it is when suing for monetary damages. *See Southland* Sod, 108 F.3d at 1145 (quoting *Harper* House, 889 F.2d at 210). Ninth Circuit law further provides that in order for cessation of unlawful conduct to moot a claim for injunctive relief, the defendant bears the burden to show that its reform is irrefutable and total. *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986).

Although KFI had introduced uncontradicted evidence on summary judgment showing that it has ceased sale of three other impugned Mondial yarns in 2012, the Court was unable at the dispositive motions stage to identify similar assurances with respect to the Vello d'Oro yarn. *See* Dkt. # 1140. In particular, the evidence showed that KFI continued to list the yarn on its website as available for limited sale without assurance that any past mislabeling had been irrefutably redressed. *See* Dkt. # 1126-2.

At trial, KFI introduced into evidence a declaration by Sion Elalouf, in which Mr. Elalouf attests that KFI sold a total of only $1,600 of Vello d'Oro yarn in 2012 with no sales since. *See* Dkt. # 1174 (Elalouf Decl.), ¶¶ 3, 5. Mr. Elalouf further attests that the yarn, though discontinued, was listed on KFI's website under the heading "Limited Availability" only to enable consumers to obtain contact information for retailers who previously purchased it from KFI and may have residual stock. *Id.* at ¶ 7. Even so, Mr. Elalouf attests that the listing of Vello d'Oro yarns has since been entirely removed from KFI's website. *Id.* at ¶ 9.

TRIAL ORDER - 17

Under these circumstances, the Court finds ample assurances that KFI has made no sales of the Vello d'Oro yarns since 2012 and will engage in no future sales of improperly labeled Vello d'Oro yarns. As the Court finds that KFI has shown its reforms to be irrefutable and total, the Court determines that Cascade's claims to enjoin KFI's sale of Vello d'Oro yarns are moot. Cascade's remaining claims in this case shall accordingly be dismissed.

## CONCLUSION

Having fully considered the evidence presented at trial and the arguments of counsel, the Court hereby ORDERS that Cascade Defendants' Motion for Judgment as a Matter of Law is GRANTED. Judgment shall be entered against the Knitting Fever, Inc. and KFI, Inc. on their remaining counterclaims, and these counterclaims shall be DISMISSED from this case.

The Court further finds and ORDERS that the remaining claims by Cascade Yarns, Inc. for injunctive relief are MOOT. Judgment shall be entered against Cascade on these Lanham Act and common law unfair competition claims, which shall also be DISMISSED from this case.

As all claims remaining in this case have been dismissed, this case shall be CLOSED.

DATED this 27th day of May 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE